William E. Kennedy (CSB #158214)
LAW OFFICES OF WILLIAM E. KENNEDY
2797 Park Avenue, Suite 201
Santa Clara, California 95050
(408) 241-1000 phone
(408) 241-1500 fax
willkennedy@pacbell.net

Chris Brancart (CSB #128475)
BRANCART & BRANCART
P.O. Box 686
Pescadero, CA 94060
(650) 879-0141 phone
(650) 879-1103 fax
cbrancart@brancart.com

Noah Zinner (CSB # 247581)
HOUSING AND ECONOMICS RIGHTS ADVOCATES
P.O. Box 29435
Oakland, California 94612
(510) 271-8443 phone
(510) 868-4521 fax
nzinner@heraca.org

Attorneys for Plaintiff Mercedes Herrera and the Proposed Classes

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERCEDES HERRERA,<br><br>  Plaintiff,<br><br>  v.<br><br>LCS FINANCIAL SERVICES CORPORATION and OCWEN LOAN SERVICING L.L.C.,<br><br>  Defendants. | Case No. C09-02843 TEH<br><br>**OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING L.L.C.'S MOTION TO DISMISS**<br><br>Date:     August 31, 2009<br>Time:    10:00 a.m.<br>Courtroom: 12<br>Judge:    Hon. Thelton E. Henderson |

## I. INTRODUCTION

In her class action complaint, Mercedes Herrera alleges that Ocwen Loan Servicing, LLC ("Ocwen") and LCS Financial Services Corporation ("LCS"), a debt collection company, attempted to collect tens of thousands of dollars from her on a non-existent debt, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), and California's analogous Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code § 1788, *et seq.* ("CFDCPA").

The Complaint alleges that Defendants' collection efforts were based on a mortgage that Ms. Herrera used to purchase her now foreclosed home. Complaint ¶ 15 ("Compl.") However, California law unequivocally eliminates any outstanding indebtedness for purchase money mortgages after a foreclosure sale. California Code of Civil Procedure § 580b (hereinafter "§ 580b") provides that a purchase money mortgage on a primary residence is a non-recourse loan. A non-recourse loan is one where, if the mortgage debt is not paid off in a foreclosure sale, the mortgagor (Ms. Herrera) has no liability to the mortgagee (Defendants) for the unpaid amount. *Id*. ¶ 14.

Ms. Herrera's home was sold through California's non-judicial foreclosure by her first mortgagee on June 19, 2008. Compl. ¶ 13. After the foreclosure, Ocwen, which was servicing her loan at the time of foreclosure, sent letters to Ms. Herrera demanding payment on what Ocwen claimed to be a remaining balance of $86,142.16. *Id*. ¶ 16. However, as the Complaint alleges, Ms. Herrera owed no debt whatsoever to Ocwen at the time because the loan was subject to § 580b. Defendant LCS subsequently sent Ms. Herrera collection letters on the same non-existent debt. *Id*. ¶ 16. By seeking to collect money from Ms. Herrera and misleading her into thinking that she still owed a debt, Defendants violated a number of provisions of the federal FDCPA, and the state CFDCPA.[1]

Because of the unprecedented drop in home values and the current economic crisis, thousands of California families are facing circumstances similar to Ms. Herrera's. Code of Civil Procedure § 580b was intended precisely for the sort of economic pressures California is facing today. It was designed both to reduce the financial strain on families going through foreclosure and to serve as a disincentive for

---

[1] Only the CFDCPA applies to defendant Ocwen. Unlike the federal FDCPA, the CFDCPA applies to mortgage servicers and other entities collecting their own debts. Cal. Civ. Code § 1788.2(c). However, the CFDCPA incorporates all relevant provisions of the federal FDCPA. Cal. Civ. Code § 1788.17.

1

OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING L.L.C.'S MOTION TO DISMISS - -

mortgage lenders to lend irresponsibly by eliminating personal liability for home buyers and shifting the risk of a deficiency to the mortgage lender.  See *Roseleaf v. Chierighino*, 59 Cal. 2d 35, 42 (1963).

## II. PLAINTIFF'S CLAIM UNDER THE CFDCPA SHOULD NOT BE DISMISSED.

### A. California Code of Civil Procedure §580b Eliminates the Outstanding Indebtedness on a Purchase Money Mortgage after Foreclosure.

Defendant Ocwen's Motion to Dismiss is based entirely on a mistaken interpretation of § 580b. Defendant claims that Section 580b does not eliminate plaintiff's debt; it merely bars mortgagees from obtaining a deficiency judgment following a foreclosure.  Memorandum of Points and Authorities in Support Of Defendant Ocwen's Motion to Dismiss, filed July 27, 2009, Docket No. 11, at 4-6 ("MTD"). This contention is simply false.  The statute does not just offer a procedural bar to legal action by a mortgagee.  Rather, § 580b substantively "obliterates" the debt itself following a foreclosure sale. *Catchpole v. Narramore*, 102 Ariz. 248, 428 P.2d 105 (1967) (construing Cal. Code Civ. Proc. § 580b).

Section 580b obliterates this debt by eliminating *personal liability* for all covered purchase money mortgages.  *Stone v. Lobsien*, 112 Cal. App. 2d 750, 756 (1952).  Without personal liability, the ~~mortgagor's~~ mortgagee's only recourse on its debt is through foreclosure on the secured property.  See e.g. *Brown v. Jensen*, 41 Cal. 2d 193, 197 (Cal. 1953), citing *Mortgage Guarantee Co. v. Sampsell*, 51 Cal. App. 2d 180, 185 (1942) ("[F]or a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt").  See also *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000) ("Under 580b, a vendor taking back a purchase money trust deed may look only to the security for recovery of the debt; no deficiency judgment will lie following a sale under the trust deed.")  After the property has been sold in foreclosure, and the security extinguished, neither *in personam* nor *in rem* liability remain.  There is simply no liability, no debt.

This is well-settled law.  In *Brown v. Jensen*, 41 Cal. 2d 193 (1953), the California Supreme Court clearly established that a mortgagee has recourse only in the secured property.  In that case, a couple had taken out two loans in order to purchase a home.  The buyers' first loan foreclosed, but there was not enough money in the foreclosure sale to pay off the second lender, in this case the same person who had sold the home.  *Id*. at 195.  After the foreclosure, the second mortgage holder sued the homebuyers for the balance of the unpaid loan. In finding for the defendant borrowers, the Court held

2

that, because of § 580b, the second mortgage holder had assumed the risk that the security for the loan (the home) would become inadequate. *Id*. at 197. The Court defined the § 580b term "deficiency judgment after sale of the security" broadly and held that the bar on deficiencies did not just apply to loans that had been sold, judicially or non-judicially, in foreclosure. Rather, the bar applied to any "situation where a sale would be an idle act, where, as here, the security has been exhausted." *Id*. at 198.

> The section states that in no event shall there be a deficiency judgment, that is, whether there is a sale under the power of sale or sale under foreclosure, or no sale because the security has become valueless or is exhausted. The purpose of the "after sale" reference in the section is that the security be exhausted and that result follows after a sale under the first trust deed.

*Id*.

Similarly, in *Stone v. Lobsien*, 112 Cal. App. 2d 750 (1952), an action by a homeowner for quiet title, the California Court of Appeal held that no debt could lie following a homeowner's default on a purchase money mortgage. In deciding for the homeowner, the court found that the defendant's promise to pay off any resulting liability under the mortgage was valueless because *there could be no resulting liability* and that the defendant therefore had no claim to title. *Id.* at 756.

> The documents signed by appellant—the note and deed of trust—imposed no personal liability on appellant. This was a purchase money deed of trust, and, in this state, there is no personal liability imposed on the vendee of a purchase money deed of trust.

*Id*.

Ocwen's claim that the debt still "exist[ed]" after the foreclosure sale and that § 580b only bars it from obtaining a legal judgment for a deficiency is therefore specious. (MTD at 2:21-22). Ms. Herrera's "debt" to Ocwen did not "exist" in any legally recognizable form. Ms. Herrera never had any personal liability to Ocwen or its predecessors. *Brown*, 41 Cal. 2d at 197 ("With purchase money trust deeds… the character of the transaction must necessarily be determined at the time the trust deed is executed. Its nature is then fixed for all time and as so fixed no deficiency judgment may be obtained regardless of whether the security later becomes valueless."). Following the foreclosure sale of her home, the security was extinguished along with her *in rem* liability. Therefore, after the foreclosure sale of her home, Ms. Herrera had no liability. The debt did not exist. As a court recently explained when considering the legal status of a § 580b mortgage:

> In effect, when a debtor signs a promissory note, he does not make an unconditional promise to

3

> pay the debt; he only makes a conditional promise to pay any deficiency after a judicial sale of the property if the amount received at the sale does not satisfy the debt. In the case of a purchase money mortgage, he makes a conditional promise to pay the creditor with any sale of the property.

*Prestige Ltd. Pship. v. East Bay Car Wash Partners (In re Prestige Ltd. Pship.)*, 223 B.R. 203, 210 (Bankr. N.D. Cal. 1998) (citations omitted).

The broad protections of § 580b are explained, in part, by its purpose. This purpose is particularly relevant to California's current economic conditions.

> Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security… If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability.

*Roseleaf*, 59 Cal. 2d at 42. Cited by *United States v. Haddon Haciendas Co.* 541 F.2d 777, 782 (9th Cir. 1976). Ocwen should not be permitted to circumvent or ignore important protections for borrowers in financial distress.

**B.     No Relevant Case Law Supports Ocwen's Position.**

While there is long-settled and substantial precedent to support the fact that no liability attaches to § 580b mortgages following foreclosure, Ocwen cites only handful of cases which allegedly support its position. Each of these cases is inapposite.

Ocwen cites to *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890 (5th Cir.1998) and *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114 (D. Nev. 2008). MTD 5:23-27. These cases, Ocwen argues, stand for the proposition that a mortgage servicer can continue to report a mortgage default or deficiency balance on a mortgagor's credit report without violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.S. § 1681 *et seq*. MTD 5:18-23. Since the creditor may report this information under the FCRA, Ocwen argues, than the debt must exist and Ocwen must be permitted to collect it,

albeit voluntarily.**2** MTD 6: 3-15.

*Sepulvado* and *Johnson*, however, are entirely irrelevant to this line of reasoning. *Sepulvado* was decided in the 5th Circuit under Texas law, which does not have an anti-deficiency statute analogous to § 580b. *Sepulvado*, 158 F.3d at 896. Since the Texas plaintiffs' deficiency after foreclosure was not obliterated by an anti-deficiency statute like § 580b, they did therefore have a deficiency debt, and the court held that it was not necessarily misleading for the defendants to report it. *Id*.

*Johnson*, decided under Nevada law, has no discussion of mortgage deficiencies whatsoever, much less a discussion of § 580b or any analogous statute. It has presumably been cited to support the totally unrelated premise that a mortgagee can report late mortgage payments as delinquent. *Johnson,* 558 F. Supp. 2d at 1116. This has no bearing on the instant case.

*Sepulvado* and *Johnson* in no way offer support to the argument for which they are cited, and neither addresses the effects of § 580b or any analogous statute. These cases concern debts that exist, while the instant case concerns a debt that does not. While the FCRA is not at issue in the instant case, Plaintiff would dispute Ocwen's entirely unsupported conclusion that the FCRA permits a creditor to report a balance due on an obliterated post-foreclosure § 580b mortgage. MTD 6; 3-5. 15 USCS § 1681s-2(a)(1)(A)  ("A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.").

In its Motion to Dismiss, Ocwen acknowledges that § 580b prevents a mortgagee from recovering a deficiency judgment against a mortgagor but states that § 580b does not "preclude a mortgagee from attempting to collect the mortgage balance by other means, including voluntary repayment by the defaulting borrower." MTD 5: 7-9. To support this proposition, Ocwen cites *Hodges v. Mark*, 49 Cal. App. 4th 651, 657 (1996): "Code Civ. Proc. § 580b prohibits only a deficiency judgment in the strict

---

**2** Ocwen's claim that its letters requested payment only on a "voluntary" basis strains credulity. MTD 5:13. The letters, which are attached to Ocwen's motion, contain no language which would indicate that the payments are not mandatory. To the contrary, the July 1, 2008 letter states "[o]n or before August 01, 2008, you must submit payment . . ." MTD, Exh. A. A least sophisticated consumer would not interpret these demands for payment to be optional. See *Dunlap v. Credit Protection Ass'n L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005)("The impact of language alleged to violate the FDCPA is judged under the "least sophisticated debtor standard.")

5

OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING L.L.C.'S MOTION TO DISMISS - -

sense, i.e., a personal judgment against the debtor." MTD 5:10-11.  The implicit suggestion in this quote selection is that the term "strict" refers to the term "judgment" and that § 580b bars formal judgments and nothing more.

In fact, the only issue in the *Hodges* case was whether the lender could foreclose on additional security for a purchase loan in the form of a deed of trust on a second property.  *Hodges* does not address whether following such a foreclosure, personal liability would lie against the borrower.  The use of the term "strict" was meant by the court only to make clear that § 580b does not bar foreclosure on additional security given for the property.  This is made clear from the full text of the paragraph that Ocwen chose only to excerpt:

> The controlling principle here is best summarized by Witkin:  "C.C.P. 580b prohibits only a deficiency judgment in the strict sense, i.e., a personal judgment against the debtor. It does not prevent the creditor from realizing on additional security, such as a chattel mortgage . . . . [Citations.]"  (3 Witkin, Summary of Cal. Law (9th ed. 1987)  Secured Transactions in Real Property, § 162, p. 661, italics in original.)  Here Mark had every right to foreclose on the additional security of the plaintiffs' residence and duplex.

*Hodges*, 49 Cal. App. 4th at 657.

**C.    Ocwen's Analogy to a Debt Barred by the Statute of Limitations is Erroneous.**

Ocwen argues that the effect of § 580b is identical to the effect of the statute of limitations:  that it eliminates the remedy, but not the debt.  For the reasons set forth above, this argument is erroneous.  Section 580b does not merely establish a procedural defense to judicial enforcement of a debt, it "obliterates" the underlying debt.  *Catchpole,* 102 Ariz. at 251.

> We are not of the view that § 580b is procedural.  In California the right to a deficiency judgment has been taken from the creditor if the debt arises out of a purchase money note secured by a mortgage or deed of trust.  While superficially § 580b is directed to the seller's remedy, it affects a substantive right-that of the seller to recoup the balance due on the purchase price of real property.  The statute does not simply govern applicable procedures; it obliterates the debtor's liability.

*Catchpole* at 250-251 (citations omitted), *cited and reaffirmed by Baker v. Gardner*, 160 Ariz. 98, 102-103 (1988) ("Our interpretation of the California law's objective conforms with later California cases" such as *Spangler v. Memel*, 7 Cal.3d 603 (1972)).

The statute of limitations is a waivable defense to judgment of an extant debt.  *Abels v. JBC Legal*

*Group, P.C.*, 428 F.Supp.2d 1023, 1027 (N.D.Cal. 2005). It arises as a bar to a debtor's liability only after it is asserted as a defense to a claim of liability. See *Abels*, 428 F.Supp.2d at 1027. In contrast, § 580b "obliterates" the debt itself, *Catchpole*, 102 Ariz. at 251, and is operative as a bar to personal liability from the inception of the mortgage. *Brown*, 41 Cal. 2d at 197.

Furthermore, California case law has long recognized the statute of limitations to be "procedural" and § 580b to be "substantive." *Koch v. Rodlin Enterprises*, 223 Cal.App.3d 1591, 1596 (1990):

> Termination of an action by a statute of limitations is deemed a technical or procedural, rather than a substantive, termination. . . . In *Stuart v. Lilves, supra,* the prior judgment was not based on a procedural defect but on the substantive provisions of section 580b, which prohibit any judgment for the failure of a purchaser of a residential dwelling to repay the purchase money loan. "That statute affects the substantive right of the seller to recoup the unpaid balance of the purchase price."

*Id.* at 1596-97.

A debt discharged in bankruptcy is a more apt analogy to an extinguished § 580b mortgage. Post-bankruptcy debtors may have their personal liability for a secured debt discharged, while the creditor retains its right against the security. 11 U.S.C.S. § 524. A creditor's rights under a § 580b mortgage are similar. An attempt to collect a debt discharged in bankruptcy leads to liability under the Bankruptcy Code and/or the FDCPA.[3]

> A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is "false" in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not. A debt collector's false statement is presumptively wrongful under the Fair Debt Collection Practices Act…

*Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. Ill. 2004).

**D.   Ocwen Violated the CFDCPA by Sending Ms. Herrera Collection Letters that Falsely Asserted that She Owed Ocwen Money.**

Ocwen's efforts to collect on Ms. Herrera's purchase money mortgage after the foreclosure sale of her home represented an attempt to collect a debt which, due to the provisions of § 580b, did not exist. Ocwen's collection attempts therefore violated 15 U.S.C. §1692f(1), which prohibits the collection of

---

[3] A majority of federal Circuits have not addressed the treatment of post-bankruptcy debts under the FDCPA because they have found that the FDCPA is preempted by the Bankruptcy Code. The 7th Circuit is an exception. See e.g. *Randolph v. IMBS, Inc.*, 368 F.3d at 733, *supra*.

1 any amount, "unless such amount is expressly authorized by the agreement creating the debt or permitted
2 by law." For the same reason described above, Ocwen also violated the following provisions of the
3 FDCPA:
4     1. 15 U.S.C. § 1692e, which prohibits any false, deceptive or misleading representation or means
5     in connection with the collection of any debt;
6     2. 15 U.S.C. § 1692e(2)(A), which prohibits misrepresentation of the character, amount, or legal
7     status of the debt;
8     3. 15 U.S.C. § 1692(10), which prohibits the use of any false representation or deceptive means
9     to collect or attempt to collect any debt; and
10     4. 15 U.S.C. § 1692f, which prohibits any unfair or unconscionable means to collect or attempt to
11     collect any debt.
12     Pursuant to Cal. Civil Code § 1788.17, the FDCPA provisions listed above have been
13 incorporated into state law as part of the CFDCPA. Accordingly, each of Ocwen's violations of the
14 FDCPA constitutes a violation of the CFDCPA.

15 **III.   CONCLUSION**

16     It is clear that the defendants' aim is to take advantage of borrowers who, like the Plaintiff, are
17 not aware of their rights under § 580b, and will believe that if an established lender or debt collector is
18 demanding money from them, the debt must be valid. Such a practice is deceptive, and in violation of
19 the debt collection statutes cited above. For the foregoing reasons, Ocwen's motion to dismiss should be
20 denied.

21 Respectfully submitted,

22 Dated:  August 10, 2009.

23                                   LAW OFFICES OF WILLIAM E. KENNEDY
                                  BRANCART & BRANCART
24
                                  HOUSING AND ECONOMIC RIGHTS
25                                   ADVOCATES

26                                   By:   /s/ Christopher Brancart
                                        Christopher Brancart
27                                         Brancart & Brancart

28                                   Attorneys for Plaintiff MERCEDES HERRERA

# CERTIFICATE OF SERVICE

On August 10, 2009, I served a true and correct copy of the following documents entitled:

**OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING LLC'S MOTION TO DISMISS**

upon the following person(s):

Brian P. Brooks
Elizabeth Lemond McKeen
Jillian B. Allen
O'Melveny & Myers LLP
610 Newport Center Drive, 17th Fl.
Newport Beach, CA 92660
fax: 949-823-6994
*attorneys for defendant Ocwen*

Kimberly E. Lewellen
Ellis, Coleman, Poirier,
 LaVoie & Steinheimer LLP
555 University Avenue, Ste. 200 East
Sacramento, CA 95825
fax: 916-283-8821
*attorneys for defendant LCS Financial*

William E. Kennedy
Law Office of William E. Kennedy
2797 Park Avenue, Ste. 201
Santa Clara, CA 95050
fax: 408-241-1500
*attorneys for plaintiffs*

Noah Zinner
Housing and Economic Rights Advocates
PO Box 29435
Oakland, CA 94604
fax: 510-868-4521
*attorneys for plaintiffs*

| | |
|---|---|
| X | **BY ELECTRONIC MAIL:** By transmitting the above document(s) to the email address of the person designated above, or by electronically filing the documents on the Court's ECF system. |
| X | **BY MAIL**: By placing a copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid, in the United States mail at Loma Mar, California, addressed as set forth above. |
| | **BY HAND DELIVERY**: By causing such document(s) to be delivered by hand to the above person(s) at the address(es) set forth above. |
| | **BY THIRD-PARTY COMMERCIAL CARRIER (OVERNIGHT DELIVERY)**: By delivering a copy thereof to a third-party commercial carrier, addressed as set forth above, for delivery on the next business day. |
| | **BY FACSIMILE**: By transmitting the above document(s) to the facsimile number(s) of the addressee(s) designated above. |

I certify that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 10, 2009, Loma Mar, California.

/s/ Christopher Brancart
Christopher Brancart