BRIAN P. BROOKS (S.B. #172151)
bbrooks@omm.com
ELIZABETH LEMOND MCKEEN
(S.B. #216690) emckeen@omm.com
JILLIAN B. ALLEN (S.B. #239197)
jallen@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone:  (949) 760-9600
Facsimile:   (949) 823-6994

Attorneys for Defendant
OCWEN LOAN SERVICING, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MERCEDES HERRERA,<br><br>  Plaintiff,<br><br>v.<br><br>LCS FINANCIAL SERVICES CORPORATION and OCWEN LOAN SERVICING LLC,<br><br>  Defendants. | Case No.  C09-02843 TEH<br><br>**DEFENDANT OCWEN LOAN SERVICING, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date:  August 31, 2009<br>Time:              10:00 a.m.<br>Courtroom:    12<br>Judge:            Hon. Thelton E. Henderson |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Plaintiff's brief in opposition to defendant Ocwen Loan Servicing, LLC's ("Ocwen") motion to dismiss proves Ocwen's point – that plaintiff's claim under the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788.17 (the "CFDCPA") depends on the proposition that California Code of Civil Procedure § 580b not only prohibits lenders from obtaining a deficiency judgment for a defaulted second-lien mortgage loan after a first mortgage has been foreclosed, but actually "eliminates" the very existence of the second mortgage.

According to plaintiff, Ocwen acted unfairly in communicating with plaintiff about her second mortgage loan for the sole reason that, "due to the provision of § 580b, [it] did not exist." (Opposition to Motion to Dismiss ("Opp.") at 7:23-24). Yet plaintiff identifies not a single case or other authority for the proposition that she "owed no debt whatsoever to Ocwen … because the loan was subject to 580b." (Opp. at 1:17-18.) The reason for this is clear: Section 580b does not eliminate the fact of a mortgagor's default or the existence of his debt.

As discussed in Ocwen's motion to dismiss, Section 580b bars a mortgagee from obtaining a deficiency judgment against a mortgagor following a foreclosure sale. *See* Cal. Code Civ. Proc. § 580b. In each of the authorities interpreting Section 580b cited by plaintiff, a mortgagee had done just that – sought a deficiency judgment. Ocwen did not do that. Plaintiff's authorities thus do no more than confirm that certain judicial remedies are unavailable to mortgagees following a foreclosure. Nothing in the authorities cited by plaintiff suggest that the mere request by a mortgagee (unaccompanied by any threat of judicial action that would be precluded by Section 580b) for payment of a defaulted debt is an unfair debt collection practice.

Plaintiff does not deny that she borrowed and never repaid an $86,000 second mortgage. Nor does she contend that Ocwen threatened to file a collection suit or to take other legal action against her. In these circumstances, nothing Ocwen is alleged to have done violates Section 580b or, by extension, the CFDCPA. Plaintiff's complaint should therefore be dismissed.

**II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST OCWEN FOR VIOLATION OF CALIFORNIA'S ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT.**

   **A.   California Code of Civil Procedure Section 580b Prohibits Mortgagees From Obtaining Deficiency Judgments, But Does Not Eliminate A Mortgagor's Debt.**

Plaintiff's rhetoric to one side, research reveals no case that has held that Section 580b "substantively 'obliterates' the debt itself following a

foreclosure." (Opp. at 2:9-10.) Indeed, while plaintiff asserts that "long-settled and substantial precedent" recognizes the nullifying effect of Section 580b on defaulted debt following a foreclosure (Opp. at 4:15-16), she fails to cite even one case holding that a mortgagee is prohibited from attempting to collect the mortgage balance from a defaulting borrower. Rather, the cases upon which she relies confirm only what Ocwen does not dispute: Section 580b deprives a mortgagee of the legal right to sue a borrower for any deficiency owed on a purchase money mortgage following a foreclosure sale.

*Catchpole v. Narramore*, 102 Ariz. 248 (1967), cited by plaintiff, illustrates the point. There, the Arizona Supreme Court did not, as plaintiff suggests, decide whether Section 580b eliminates the very existence of a borrower's debt. The sole issue presented was the choice-of-law question whether an Arizona court was required to apply California's anti-deficiency statute to preclude an action to recover the amount due on a note secured by California property given that Arizona had no similar statute. In applying Section 580b to the dispute, the Arizona court simply held that the statute eliminated the lender's "right to a deficiency judgment" – not the debt itself. *Id.* at 250. *Catchpole* admittedly is the source of the rhetoric about "obliteration" that plaintiff invokes here, but even then *Catchpole* does not hold that Section 580b "obliterates" the underlying debt, but only the borrower's "liability" for the debt. *Id.* at 251. Because Ocwen is not alleged to have sought to enforce any alleged "liability" for debt against plaintiff, *Catchpole* simply does not apply.

The California authorities cited by plaintiff are to the same effect, holding no more than that Section 580b prohibits lenders from suing for a deficiency judgment. In *Lawler v. Jacobs,* 83 Cal. App. 4th 723 (2000), a vendor sued for the deficiency upon the defendants' default and the senior lender's foreclosure sale. Reversing judgment in favor of plaintiff vendor, the court held that "[t]he language of Cal. Civ. Proc. Code §580b is explicit and unambiguous: A

- 3 -   REPLY IN SUPPORT OF MOTION татN TO DISMISS COMPLAINT C09-02843

vendor cannot obtain a deficiency judgment against a purchaser in a purchase money secured land transaction." *Id*. at 736.  Likewise, in *Stone v. Lobsien*, 112 Cal. App. 2d 750 (1952), the court noted that the defendant's promise to pay off the transferee's liability on a note and deed of trust was of "very little ***legal significance***" because, pursuant to Section 580b, "[i]n the event of a default, ***no deficiency judgment*** could have been taken against" the vendee of a purchase money deed of trust.  *Id*. at 756 (emphasis added).  *Brown v. Jensen,* 41 Cal. 2d 193 (1953), similarly involved an action for deficiency judgment.  There, as plaintiff herself notes, "the second mortgage holder sued the homebuyers for the balance of the unpaid loan." (Opp. at 2:26-27.)  But Ocwen has not sought a deficiency judgment against plaintiff, and thus *Brown*'s holding that Section 580b prohibited a seller's (and trust deed holder's) action for deficiency judgment says nothing about the merits of plaintiff's complaint here.  *See Brown,* 41 Cal. 2d at 197.

        The California authorities that speak directly to the applicability of Section 580b outside the context of actions for deficiency judgment are essentially sidestepped by plaintiff.  Plaintiff concedes, for example, that *Hodges v. Mark*, 49 Cal. App. 4th 651, 657 (1996) holds that "Code Civ. Proc. § 580b prohibits only a deficiency judgment in the strict sense, *i.e*., a personal judgment against the debtor." (Opp. at 5:23-6:1.)  And while plaintiff suggests that the *Hodges* court's "use of the term 'strict' was meant by the court only to make clear that § 580b does not bar foreclosure on additional security given for the property" (Opp. at 6:7-8), nothing in the court's actual opinion supports that assertion.  Other California authority underscores that Section 580b means only what it says – that "deficiency judgments are prohibited by the purchase money mortgagee so long as a purchase money mortgage or deed of trust is in effect on the original property."  *DeBerard Properties v. Lim*, 20 Cal. 4th 659, 663 (1999).  Since Ocwen is not alleged to have sought or threatened an action for deficiency judgment, no authority presented to this Court suggests that Ocwen's conduct violated Section 580b.

Plaintiff's misreading of the Fair Credit Reporting Act precedents discussed in Ocwen's opening brief amplifies the point. As noted in Ocwen's opening brief, a furnisher of information to consumer reporting agencies is statutorily obligated to furnish information that is accurate. That is why mortgagees are generally permitted to report foreclosures and associated deficiencies to consumer reporting agencies. *See Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 892 (5th Cir. 1998). This does not change merely because there is a legal impediment (for example, an antideficiency statute such as Section 580b) to collecting the obligation represented by the loan. *See, e.g., Vlasic v. Equifax Credit Info. Serv.*, 2004 U.S. Dist. LEXIS 8361, *8 (N.D. Ill. May 10, 2004) (pendency of bankruptcy petition did not preclude mortgagee from reporting foreclosure to consumer reporting agencies); *Hansford v. Bank of America*, 2008 U.S. Dist. LEXIS 65502, at *32-33 (E.D. Pa. Aug. 26, 2008) (same).[1] The standard under the FCRA is directly analogous to the standard applicable under the CFDCPA: in each case a violation depends on conveying inaccurate information, whether in the form of inaccurate information concerning the status of a debt to a consumer reporting agency (in the case of the FCRA) or false information concerning the status or amount of a debt to the borrower (in the case of the CFDCPA). While it arguably would have been misleading for a mortgagee to represent to plaintiff that it would take legal action to enforce the debt (because Section 580b precludes such legal action), it was no more misleading for Ocwen to inform the borrower of the debt's existence and to ask for voluntary repayment than it would be for Ocwen to report

---

[1] In this respect, the bankruptcy analogy urged by plaintiff (*see* Opp. at 7:12-16) actually undermines her position. Of course, the difference between the Bankruptcy Code and Section 580b is that the Bankruptcy Code prohibits not only judicial proceedings to enforce a debt, but also some (though not all) extrajudicial communications with the borrower about the debt. *Cf. Turner v. J.V.D.B. & Assocs.*, 483 F. Supp. 2d 631, 635 (N.D. Ill. 2007) (discussing standard for ascertaining what debt-related communications with bankruptcy debtor are allowable). Section 580b, by contrast, prohibits only judicial proceedings (or, by extension under the CFDCPA, threats of judicial proceedings) to enforce a debt. Plaintiff's own authority highlights this distinction. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) (finding federal fair debt violation "because of the automatic stay").

1 the debt as delinquent to the consumer reporting agencies.

2 Indeed, the rule urged by plaintiff would imperil the interest of
3 mortgage borrowers in protecting their credit ratings. A borrower who defaulted
4 and underwent foreclosure on her first mortgage might well prefer to pay off her
5 smaller second mortgage and thus limit the damage to her credit score, rather than
6 have both loans reflected as defaulted on her credit report. But if plaintiff were
7 correct that the law prohibited mortgagees like Ocwen from providing a repayment
8 opportunity, borrowers would be more likely to have to suffer the long-term
9 consequences of more severely impaired credit caused by their nonpayment of both
10 mortgages. Nothing in Section 580b or background legal principles requires that
11 result, and the Court should not endorse it here.

12 **B. Ocwen's Requests For Voluntary Payment Of Plaintiff's Defaulted Mortgage Loan Was Not Unfair Merely Because Her Repayment Obligation Was Not Legally Enforceable Due To Section 580b.**
13

14 While plaintiff may be correct that Section 580b precluded Ocwen
15 from enforcing her loan obligations against her by means of judicial process, that
16 does not mean that it was an unfair debt collection practice for Ocwen to
17 correspond with plaintiff seeking voluntary repayment of the loan. As explained in
18 Ocwen's opening brief, numerous courts have held that a creditor can seek
19 voluntary repayment of a debt that is not legally enforceable without violating the
20 state or federal fair debt collection practices laws. *See, e.g., Abels v. JBC Legal*
21 *Group, P.C.*, 428 F. Supp. 2d 1023, 1027 (N.D. Cal. 2005) ("an attempt to collect
22 on the time-barred debts, standing alone, is not a violation of the federal FDCPA.");
23 *Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir. 2001) ("no
24 violation of the FDCPA has occurred when a debt collector attempts to collect on a
25 potentially time-barred debt that is otherwise valid."); *Walker v. Cash Flow*
26 *Consultants, Inc.*, 200 F.R.D 613, 616 (N.D. Ill. 2001) (same). Plaintiff asks for a
27 different result here on the purported ground that statutes of limitations and other
28 barriers to judicial enforcement of debts represent merely a "procedural defense to

1  judicial enforcement of a debt," while Section 580b "'obliterates' the underlying
2  debt" itself.  (Opp. at 6:17-19.)  That argument is unpersuasive.

3          As an initial matter, plaintiff's premise – that a statute of limitations
4  defense is merely "procedural" – is highly debatable.  *See, e.g., Schwestka v.*
5  *Hocevar*, 1994 U.S. Dist. LEXIS 6730, *2 (N.D. Cal. May 16, 1994) ("The statute
6  of limitations issue is considered a substantive issue."); *Sade Shoe Co. v. Oschin &*
7  *Snyder*, 217 Cal. App. 3d 1509, 1513 (1990) ("The statute of limitations is not a
8  procedural right but a substantive defense.").  The mere fact that a 40-year-old
9  Arizona decision used the word "procedural" in dicta provides but scant support for
10 plaintiff's position on this point.  More fundamentally, plaintiff provides no
11 substantive response to the case law holding that, where an underlying debt
12 obligation is statutorily uncollectible, there is no fair debt collection violation in
13 seeking voluntary repayment; a violation occurs only if the creditor threatens legal
14 action that is statutorily unavailable.  *See, e.g., Freyermuth,* 248 F.3d at 771 ("***in***
15 ***the absence of a threat of litigation or actual litigation***, no violation of the
16 [federal] FDCPA has occurred when a debt collector attempts to collect on a
17 potentially time-barred debt that is otherwise valid.") (emphasis added); *Reese v.*
18 *Arrow Fin. Servs., LLC,* 202 F.R.D. 83, 92 (D. Conn. 2001) ("[w]here debt
19 collectors have not threatened collection action, courts have not found Fair Debt
20 Collection Practices Act (FDCPA) violations based solely on the mailing of a
21 collection letter that does not affirmatively disclose that a debt is time barred or the
22 consequences of making payment or acknowledging the debt.")

23         In view of these authorities, it is clear that a request for voluntary
24 payment cannot violate the CFDCPA merely because the underlying debt is subject
25 to Section 580b.  Plaintiff does, of course, dispute that Ocwen's requests were for
26 voluntary payment (*see* Opp. at 5 n.2), but Ocwen's actual correspondence, which
27 is deemed incorporated by reference in plaintiff's complaint, shows otherwise.
28 These letters state that they represent "an attempt to collect a debt" and that

"*[u]nless [plaintiff] dispute[s] the validity of the debt or any portion thereof* … the debt will be assumed to be valid by OCWEN."  The letters also invite plaintiff to request from Ocwen verification of the debt," underscoring the possibility that a borrower might have grounds for disputing the debt or for seeking verification of it – none of which would be consistent with a demand for mandatory payment.  (*See* Motion to Dismiss, Exh. A (emphasis added).)  *Cf.  Khosroabadi v N. Shore Agency*, 439 F Supp 2d 1118, 1124 (S.D. Cal. 2006) (holding that a letter which stated the amount owed by debtor, to whom it was owed, and provided notice that if not disputed within 30 days, the debt would be assumed valid, from the standpoint of a least sophisticated debtor, was not was false, deceptive, misleading, or unfair within meaning of federal Fair Debt Collection Practices Act).

In short, research reveals no case that has ever held that a request for voluntary payment of a second mortgage not subject to judicial collection under Section 580b constitutes a violation of federal or state fair debt collection practices statutes.  There are numerous reasons why this Court should not be the first to adopt such a rule, not the least of which is the interest of borrowers in avoiding the long-term impact on their credit ratings of two defaulted mortgages rather than one.

### III.   CONCLUSION

For the reasons set forth above and more fully in Ocwen's Motion to Dismiss, plaintiff's claim against Ocwen should be dismissed with prejudice.

Dated:  August 17, 2009

BRIAN P. BROOKS
ELIZABETH LEMOND MCKEEN
JILLIAN B. ALLEN
O'MELVENY & MYERS LLP

By: /s/ Elizabeth Lemond McKeen
   Elizabeth Lemond Mckeen
Attorneys for Defendant
OCWEN LOAN SERVICING, LLC

# PROOF OF SERVICE

I, Adonna Powell, declare that I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 610 Newport Center Drive, 17th Floor, Newport Beach, California 92660-6429. On August 17, 2009 I served the within document[s]:

**DEFENDANT OCWEN LOAN SERVICING, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

☒ The following parties in this matter have been served electronically by filing via the CM/ECF system:

**Service List**

Christopher Brancart cbrancart@brancart.com, ebrancart@brancart.com, jdee@brancart.com

William Eric Kennedy willkennedy@pacbell.net

Kimberly Elizbeth Lewellen klewellen@ecplslaw.com, restrella@ecplslaw.com, mgutierrez@ecplslaw.com, mellis@ecplslaw.com

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Newport Beach, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S Postal Service on the same day with postage thereon fully prepaid in the ordinary court of business. The following Parties have been served via U.S. mail:

**Service List**

Noah Zinner
Housing and Economic Rights Advocates
P.O. Box 29435
Oakland, CA 94604

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on August 17, 2009, at Newport Beach, California.

_____
Adonna Powell