IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERCEDES HERRERA,

            Plaintiff,

   v.

LCS FINANCIAL SERVICES CORPORATION and OCWEN LOAN SERVICING L.L.C.,

            Defendants.

NO. C09-02843 TEH

ORDER GRANTING DEFENDANT OCWEN LOAN SERVICING L.L.C.'S MOTION TO DISMISS WITH LEAVE TO AMEND COMPLAINT

This matter came before the Court on August 31, 2009, on the Motion to Dismiss of Defendant Ocwen Loan Servicing L.L.C. ("Ocwen"). For the reasons set forth below, the Motion is GRANTED. Plaintiff's second cause of action against Ocwen is DISMISSED with leave to file an amended complaint by September 30, 2009.

**BACKGROUND**

Plaintiff Mercedes Herrera ("Plaintiff") alleges in her Class Action Complaint[1] that she lost her single-family condominium through foreclosure in 2008. She had purchased the Fremont, California property in 2005, financing it with two home mortgage loans from New Century Mortgage Corporation: one for $348,000 ("first mortgage") and another for $87,000 ("second mortgage"). She alleges that the "two mortgages were funded simultaneously as purchase money loans." Compl. ¶ 9. Ocwen began servicing the second mortgage "[a]t some point." *Id.* ¶ 11. Barely two years after buying the condominium, Plaintiff fell behind on mortgage payments following an interest rate adjustment. A Notice of Default was recorded against her on February 4, 2008; a Notice of Trustee Sale was recorded three

---

[1] "On a motion to dismiss, we take the complaint's allegations of fact as true and construe the complaint in the light most favorable to the plaintiff." *Shanks v. Dressel*, 540 F.3d 1082, 1084 n.1 (9th Cir. 2008).

months later, and Plaintiff lost title by Trustee's Deed on June 19, 2008, through a non-judicial foreclosure by the first mortgage holder.

Over the next two months, Ocwen sent Plaintiff three letters regarding her second mortgage, which had a balance of $86,142.16 prior to the trustee sale. A letter received on or about July 1, 2008 stated that the second mortgage was in default, and a July 17, 2008 letter sought payment on it. In a third and final letter, dated August 18, 2008, Ocwen notified Plaintiff that it had assigned the servicing rights of the second mortgage to Defendant LCS Financial Services Corporation ("LCS"), which Plaintiff alleges made collection calls to her using an autodialer.

Plaintiff claims that Ocwen and LCS (collectively, "Defendants") are barred from collecting on this debt. California Code of Civil Procedure section 580b, the state's anti-deficiency statute, prohibits a vendor "from obtaining a deficiency judgment against a purchaser in a purchase money secured land transaction." *DeBerard Properties v. Lim*, 20 Cal. 4th 659, 663 (1999). "Under this statute," Plaintiff argues, she "has no remaining debt or liability to the holder of either note following the June 19, 2008 trustee sale." Compl. ¶ 14.

Plaintiff filed her Class Action Complaint on June 25, 2009, asserting two claims. She alleges in her first cause of action that LCS's collection efforts violated the federal Fair Debt Collection Practices Act ("federal FDCPA"), 15 U.S.C. § 1692 *et seq.*, including its prohibitions against misrepresentations and the use of unfair or unconscionable means to collect debts. In her second cause of action, Plaintiff alleges that both Defendants violated California's Rosenthal Fair Debt Collection Practices Act ("state FDCPA"), Cal. Civ. Code § 1788 *et seq.*, which incorporates by reference the provisions of the federal FDCPA raised in her first claim.

Ocwen, which was named only in the second cause of action, moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claim asserted against it. Section 580b does not abolish the debt, Ocwen insists, but only prohibits a mortgagee from seeking a deficiency judgment after a foreclosure. Ocwen argues that its collection efforts as alleged in the

2

1 Complaint do not violate the state FDCPA because Ocwen did not misrepresent the debt's
2 existence, and that Plaintiff therefore fails to state a claim against it.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).

A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint "stops short of the line between possibility and plausibility of entitlement to relief" when it "pleads facts that are merely consistent with a defendant's liability." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). Where a claim is dismissed under Rule 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal citations omitted).

**ANALYSIS**

**I.     The State and Federal Fair Debt Collection Practices Acts and California's Anti-Deficiency Statute**

Plaintiff brings her claim against Ocwen under the state FDCPA, which was designed "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1 (legislative findings). In addition to prescribing its

3

own standards governing debt-collection practices, the state FDCPA also mandates that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal FDCPA, with limited exceptions. *Id.* § 1788.17. Although the state and federal statutes both apply to "debt collectors," they define the term differently. The federal definition excludes creditors collecting on their own debts, 15 U.S.C. § 1692a(6), an exclusion that does not appear in the state statute, Cal. Civ. Code § 1788.2(c). Plaintiff therefore brings only a state claim against Ocwen, but alleges against it violations of the federal FDCPA as incorporated into state law.

Plaintiff accuses Ocwen of violating prohibitions against any "false, deceptive, or misleading representation or means in connection with the collection of any debt," and against the misrepresentation of a debt's "character, amount, or legal status." Compl. ¶ 30 (citing 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10)). She further charges that Ocwen relied on "unfair or unconscionable means to collect or attempt to collect" Plaintiff's debt, defying the federal FDCPA's prohibition against collecting "any amount" unless it is "expressly authorized by the agreement creating the debt or permitted by law." *Id.* (citing 15 U.S.C. §§ 1692f, 1692f(1)).

Ocwen's collection efforts are unlawful because, according to Plaintiff, her debt no longer exists. Plaintiff's claim hinges on an interpretation of California Code of Civil Procedure section 580b which Ocwen vigorously disputes. Section 580b provides:

> No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

A deficiency judgment is "a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Cornelison v. Kornblush*, 15 Cal. 3d 590, 603 (1975). Although ordinarily "an independent action may be maintained" on debt for which "the security is lost or has

4

become valueless," section 580b bars such an action "where the security is a purchase money deed of trust or mortgage." *Jeanese, Inc. v. Surety Title & Guaranty Co.*, 176 Cal. App. 2d 449, 454 (1959). In that case, "the lender must look solely to the security itself, i.e., the land, and no personal judgment may be recovered." *Id.* The statute applies to "the standard purchase money transaction in which the real property vendor retains an interest in the land sold in order to secure payment of part of the purchase price." *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000).

The rationale behind section 580b is twofold. "First, section 580b is a transaction-specific stabilization measure: it stabilizes purchase money secured land sales by keeping the vendor from overvaluing the property and by suggesting to the purchaser its true value." *DeBerard Properties v. Lim*, 20 Cal. 4th 659, 664 (1999). Second, if the security is inadequate due to "a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability." *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 43 (1963).

**II.     The Status of Debt Under Section 580b**

Plaintiff argues that, by operation of section 580b, she "has no remaining debt or liability to the holder of either [her first or second mortgage] following the June 19, 2008 trustee sale." Compl. ¶ 14. Section 580b, in other words, "substantively 'obliterates' the debt itself following a foreclosure sale." Opp'n at 2. She asserts that Ocwen violated the state FDCPA by attempting to collect from her when it "either knew or should have known that California law barred it from claiming this debt." Compl. ¶ 15.

In moving to dismiss the claim, Ocwen contends that section 580b only "limits the judicial remedies available to a mortgagee," but does not "preclude a mortgagee from attempting to collect the mortgage balance by other means, including by requesting voluntary payment from the defaulting borrower." Mot. at 5. As a result, Ocwen argues, the facts alleged fail to state a claim that its collection efforts are in breach of the state FDCPA.

5

1 Ocwen's Motion hinges on the meaning of section 580b. If section 580b eliminates 2 Plaintiff's debt, she has stated a claim under the state FDCPA because Ocwen's collection 3 efforts misrepresented the debt's existence. If the debt remains, a closer examination of the 4 Complaint will be necessary to determine whether it still states a cause of action against 5 Ocwen. In interpreting section 580b, this Court is bound by decisions of the California 6 Supreme Court. *Arizona Elec. Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). 7 "In the absence of such a decision, a federal court must predict how the highest state court 8 would decide the issue using intermediate appellate court decisions, decisions from other 9 jurisdictions, statutes, treatises, and restatements as guidance." *Id.*

10 The starting point for statutory interpretation "is always the language of the statute 11 itself." *Jeffries v. Wood*, 114 F.3d 1484, 1495 (9th Cir. 1997). Section 580b provides only 12 that "[n]o deficiency judgment shall lie" from the default of a purchase-money mortgage. 13 Cal. Code Civ. Proc. § 580b. By its plain language, the statute removes the mortgagee's 14 recourse to the courts by barring it from seeking a personal judgment against the mortgagor. 15 The statute says nothing about the consequences of that bar or the ultimate status of the debt. 16 Had it sought to extinguish the debt entirely, the California legislature could have said as 17 much; by the explicit terms of the statute, section 580b only bars deficiency judgments. 18 Furthermore, statutes "should be interpreted to promote rather than defeat the legislative 19 purpose and policy." *Freedland v. Greco*, 45 Cal. 2d 462, 468 (1955). Section 580b's dual 20 purposes – preventing overvaluation and the aggravation of a downturn – can be achieved 21 under either interpretation. The fact that a debtor could theoretically choose to voluntarily 22 pay off an obligation on which a deficiency judgment is unavailable will not give creditors 23 any more incentive to overvalue property. Likewise, a downturn is unlikely to be aggravated 24 if mortgagors who have the means to pay off the debt choose to do so.

25 Although the plain language supports Ocwen's interpretation of section 580b, 26 Plaintiff's theory is not implausible. What is the status of a debt on which there can be no 27 deficiency judgment? Did the California legislature, in eliminating that remedy, mean to 28 eliminate the debt itself?

6

Ocwen points to "other legal consequences" of foreclosure as evidence that section 580b "does not extinguish a mortgagor's debt." Mot. at 5. In particular, Ocwen asserts that a mortgagor's default and deficiency balance can be disclosed to credit reporting agencies, in which case it would be irrational to preclude Ocwen from encouraging Plaintiff to improve her credit by paying off the debt. *Id.* at 5-6. However, none of Ocwen's authority addresses whether a defaulted mortgage *subject to section 580b* can be reported to credit reporting agencies. Although the Fifth Circuit observed in *Sepulvado v. CSC Credit Services, Inc.* that the plaintiffs' "foreclosure and the resulting deficiency could have been reported on their credit for a period of seven years," no anti-deficiency statute applied to that mortgage. 158 F.3d 890, 892 (5th Cir. 1998). Ocwen likewise identifies no provisions of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.*, dictating section 580b's effect on the appearance of Plaintiff's outstanding mortgage balance on credit reports. Indeed, Plaintiff disputes "Ocwen's entirely unsupported conclusion that the FCRA permits a creditor to report a balance due on an obliterated post-foreclosure §580b mortgage." Opp'n at 5. Only the legal significance of a defaulted mortgage under section 580b is at issue here; the consequences of mortgage defaults in general are irrelevant. Since it is unclear whether Plaintiff's remaining mortgage balance can appear on a credit report, Ocwen's argument is unpersuasive.

Ocwen also analogizes to time-barred debts, the collection of which it asserts is permitted by the state and federal FDCPA. However, these cases are again divorced from the issue of how to interpret section 580b. The analogy Ocwen attempts to draw is that section 580b, like a statute of limitations, poses a hurdle to debt collection but leaves the debt itself untouched. A creditor may seek to collect on a time-barred debt because "the underlying debts are not substantively affected." *Abels v. JBC Legal Group, P.C.*, 428 F. Supp. 2d 1023, 1027 (N.D. Cal. 2005). That the running of a statute of limitations leaves the underlying debt intact sheds little light on whether section 580b does the same. Further, the analogy is marred by a key distinction. Since the statute of limitations is "an affirmative defense that is forfeited if not appropriately invoked by the defendant," it does not extinguish a creditor's

7

ability to bring an action in the first instance. *Adams v. Paul*, 11 Cal. 4th 583, 597 (1995). Section 580b, to the contrary, unequivocally bars deficiency judgments and cannot be waived. *DeBerard Properties v. Lim*, 20 Cal. 4th 659, 662 (1999).

Plaintiff does not fare any better. She draws an analogy to a debt discharged in bankruptcy, where debtors "may have their personal liability for a secured debt discharged, while the creditor retains its right against the security." Opp'n at 7. Plaintiff's comparisons to bankruptcy are as flawed as Ocwen's to time-barred debt: the separate and complex statutory framework governing bankruptcy has little bearing on the meaning of section 580b. In particular, the conclusion in *Randolph v. IMBS, Inc*. that a "debt collector's false statement [demanding immediate payment while a debtor is in bankruptcy] is presumptively wrongful" under the federal FDCPA is not instructive because the court had already concluded that the statement was false. 368 F.3d 726, 728 (7th Cir. 2004). The inquiry here is a step before that, determining in the first instance whether Ocwen's representation that the debt still exists constitutes a false statement. That depends on the meaning of section 580b.

To interpret section 580b, Plaintiff relies a decision of the Arizona Supreme Court, *Catchpole v. Narramore*, 102 Ariz. 248 (1967), as confirming that section 580b "substantively 'obliterates' the debt itself following a foreclosure sale." Opp'n at 2. The *Catchpole* plaintiffs held a second deed of trust on a California property for which a senior deed had already been foreclosed, leaving no equities in the junior lien holders. They sued in Arizona state court to collect the amount due on the note, reaching the Arizona Supreme Court on the question of whether section 580b is substantive – and therefore binding on the Arizona courts – or procedural. In deeming the rule substantive, the court observed that the "statute does not simply govern applicable procedures; it obliterates the debtor's liability." *Catchpole*, 102 Ariz. at 251. *Catchpole* stated that section 580b obliterates the debtor's "liability," not the "debt" itself, as suggested by Plaintiff. Opp'n at 2, 6. Interpretation of a California statute by the Arizona Supreme Court anyhow carries little weight, as it – like this Court – is bound by the California Supreme Court's reading of California law. *See Arizona Elec. Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995); *Washington Ins. Guar.*

8

*Ass'n v. Ramsey*, 922 P.2d 237, 243 (Alaska 1996) ("[S]ince we are interpreting the law of another state, we look to that state's precedent before we turn to reason and policy."). Plaintiff's failure to cite any California authority concluding that section 580b obliterates debt is, at the very least, telling.

Plaintiff's argument rests in part on a conflation of the terms "debt" and "liability." She alleges in her Complaint that under section 580b, she "has no remaining debt or liability to the holder of either note following the June 19, 2008 trustee sale." Compl. ¶ 14. She similarly argues in her Opposition that section 580b "obliterates this debt by eliminating *personal liability* for all covered purchase money mortgages." Opp'n at 2 (emphasis in original); *see also id.* ("There is simply no liability, no debt."); *Stone v. Lobsien*, 112 Cal. App. 2d 750, 755 (1952) ("[T]here is no personal liability imposed on the vendee of a purchase money deed of trust."). Plaintiff contends, in other words, that debt cannot exist where there is no personal liability.

To support this position, Plaintiff's counsel at hearing defined "liability" as meaning a "debt" or "obligation." Although it is true that "liability" and "debt" are in some contexts synonymous, Plaintiff ignores the primary definition of liability: "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, *enforceable by civil remedy* or criminal punishment." Black's Law Dictionary 932 (8th ed. 2004) (emphasis added). In other words, a purchase money mortgagor has no personal liability because section 580b bars creditors from seeking a deficiency judgment, without which the debt is not "enforceable by civil remedy." The *Stone* court found only that there was "no personal liability," and not – as Plaintiff argues – that there was "no debt." Opp'n at 3. The absence of personal liability is not equivalent to the absence of debt.[2]

Plaintiff cites no California cases which hold that section 580b erases the underlying debt. The cases she does cite confirm only that "for a purchase money mortgage or deed of

---

[2] Although Black's Law Dictionary defines "debt" to mean "[l]iability on a claim" (again reflecting that "debt" and "liability" are sometimes synonyms), "debt" is further defined as "a specific sum of money due by agreement or otherwise." Black's Law Dictionary 432 (8th ed. 2004). The second definition is at play here.

9

trust the security alone can be looked to for recovery of the debt," *Brown v. Jensen*, 41 Cal. 2d 193, 197 (1953) (quoting *Mortgage Guarantee Co. v. Sampsell*, 51 Cal. App. 2d 180, 185 (1942)); *see also Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000). If the security is exhausted, it does not mean that the debt ceases to exist – it means only that the debt is unrecoverable because there can be no deficiency judgment against the debtor. *Brown*, 41 Cal. 2d at 198.

Indeed, the California Court of Appeal has observed that the debt itself – and the debtor-creditor relationship – survive foreclosure under section 580b. In comparing California's anti-deficiency statute to those of other states, the court observed that the California statute does "not even purport to wipe out the debt, but only to apply in the contingency that a deficiency judgment is sought." *Mortgage Guarantee Co. v. Sampsell*, 51 Cal. App. 2d 180, 185 (1942). The court has also consistently allowed creditors to pursue additional security to satisfy a deficiency following foreclosure. Section 580b's prohibition of "a judgment against a debtor following foreclosure . . . does not prevent a creditor from realizing on additional security." *Armsey v. Channel Assocs.*, 184 Cal. App. 3d 833, 837 (1986); *see also Estate of Moore*, 135 Cal. App. 2d 122, 132 (1955) (noting that under section 580b, "the debt technically survives a default so that enforcement of collateral securities may be had").[3] In *Redingler v. Imperial Savings & Loan Ass'n*, 47 Cal. App. 3d 48 (1975), a creditor that reacquired its fire-damaged property at a foreclosure sale for less than the amount due under the deed of trust was permitted under section 580b to receive the insurance proceeds. "[T]he debtor-creditor relationship between the parties was not totally extinguished during foreclosure proceedings because [the creditor] purchased the property for less than the

---

[3] Ocwen cites to *Hodges v. Mark*, which reached a similar conclusion, quoting Witkin for the proposition that section 580b "prohibits only a deficiency judgment in the strict sense, i.e., a personal judgment against the debtor," but "does not prevent the creditor from realizing on additional security, such as a chattel mortgage." 49 Cal. App. 4th 651, 657 (1996) (quoting 3 Witkin, Summary of Cal. Law (9th ed. 1987), Secured Transactions in Real Property, § 162, p. 661). There, however, the purchase price for the property at issue was represented by multiple notes and deeds of trust, and the court observed that the anti-deficiency statutes do not apply when "a separate part of the purchase price is represented by a separate promissory note, secured by real property other than the property being sold." *Id.* at 655.

10

amount of the balance due under the deed of trust." *Redingler*, 47 Cal. App. 3d at 50.  The California Court of Appeal has likewise held that section 580b does not protect a guarantor against a deficiency judgment, even though no such action could be taken against the purchaser-debtor.  *Heckes v. Sapp*, 229 Cal. App. 2d 549, 552-53 (1964).  It would make little sense to allow a creditor to pursue additional security to satisfy a debt that had been extinguished by operation of section 580b.

Section 580b, by its own terms, eliminates a creditor's ability to seek a deficiency judgment, but it does not eliminate the underlying debt.  The fact of that debt's existence may be entirely theoretical, given that section 580b closes the courthouse door on any creditor's collection efforts against the mortgagor.  However, the claim that section 580b erases the debt, barring Ocwen from seeking payment in any manner, must fail as a matter of law.

### III.   The Adequacy of Plaintiff's Complaint

Although the Court does not now decide this question, it is possible that Plaintiff could state a claim against Ocwen by alleging that the content of its letters misrepresented the nature of Plaintiff's debts.  For example, Plaintiff argues in her Opposition that the letters "contain no language which would indicate that the payments are not mandatory." Opp'n at 5, n.2.  Because the correspondence from Ocwen forms the basis of Plaintiff's claim, it "may be incorporated by reference into" the Complaint, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), and the Court may consider such evidence as no party has questioned its authenticity, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  The July 1, 2008 letter, for instance, advises Plaintiff that she "must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above" on or before August 1, 2008.  Mot., Exh. A.  Such statements, when judged under the "'least sophisticated debtor' standard," *Dunlap v. Credit Protection Ass'n*, 419 F.3d 1011, 1012 (9th Cir. 2005), may be found to constitute the kind of "misleading representation" that is prohibited by the state and federal FDCPA.

However, the Complaint only pleads a claim based on the fact, and not the content, of Ocwen's collection efforts.  Plaintiff's Complaint relies on the theory that section 580b

11

eliminated her debt, and that any effort by Ocwen to collect on it necessarily violates the state FDCPA. *See, e.g.*, Compl. ¶ 14 ("Ms. Herrera has no remaining debt or liability[.]"); *id.* ¶ 15 ("Ocwen either knew or should have known that California law barred it from claiming this debt."); *id.* ¶ 21 ("[T]he common questions include the issue of whether defendants collected or attempted to collect mortgage balances following foreclosure from proposed class members when it had no legal right to do so pursuant to" section 580b.); *id.* ¶ 29 ("None of the members of the class owed money because of the provisions of" section 580b.).  This is an incorrect statement of law.  The fact that Ocwen corresponded with Plaintiff to collect on her second mortgage is not, by itself, a basis for relief under the state FDCPA.  If Plaintiff believes that the *content* of Ocwen's correspondence violated the state FDCPA, she may allege as such in an amended complaint.

**CONCLUSION**

Ocwen's Motion to Dismiss is GRANTED.  Plaintiff is given leave to file an amended complaint no later than September 30, 2009.

**IT IS SO ORDERED.**

Dated: September 9, 2009

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT