1   William E. Kennedy (CSB #158214)
    LAW OFFICE OF WILLIAM E. KENNEDY
2   2797 Park Avenue, Suite 201
    Santa Clara, California 95050
3   (408) 241-1000 phone
    (408) 241-1500 fax
4   willkennedy@pacbell.net

5   Chris Brancart (CSB #128475)
    BRANCART & BRANCART
6   P. O. Box 686
    Pescadero, CA 94060
7   (650) 879-0141 phone
    (650) 879-1103 fax
8   cbrancart@brancart.com

9   Noah Zinner (CSB #247581)
    HOUSING AND ECONOMIC RIGHTS ADVOCATES
10  P.O. Box 29435
    Oakland, CA 94604-0091
11  (510) 271-8443 phone
    nzinner@heraca.org

12
    Attorneys for Plaintiff MERCEDES HERRERA and others similarly situated
13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16

17  _____
                                    )   **Case No.: C09-02843 TEH**
18  MERCEDES HERRERA                )
                                    )   **PLAINTIFF MERCEDES**
19          Plaintiff,              )   **HERRERA'S OPPOSITION TO**
                                    )   **MOTIONS TO DISMISS BY OCWEN**
20      vs.                         )   **LOAN SERVICING LLC AND LCS**
                                    )   **FINANCIAL SERVICES**
21  LCS FINANCIAL SERVICES CORPORATION )  **CORPORATION**
    and OCWEN LOAN SERVICING LLC,   )
22                                  )   Hearing Date: December 21, 2009
                                    )   Time: 10:00 a.m.
23          Defendants.             )   Courtroom: 12
                                    )   Judge: Hon. Thelton E. Henderson
24  _____ )

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PLAINTIFF HAS STATED A CLAIM UNDER THE FAIR DEBT COLLECTION
        PRACTICES ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      SENDING OF DUNNING LETTERS AND TELEPHONE CALLS WITHOUT
                DISCLOSURE OF THE LACK OF A LEGAL REMEDY FOR NONPAYMENT
                IS DECEPTIVE, MISLEADING AND UNFAIR . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      OCWEN'S JULY 1, 2008 LETTER IS DECEPTIVE, MISLEADING AND
                UNFAIR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                1.      Ocwen's Letter Misleads Consumers by Creating a Fictitious Deadline
                        and Creating a False Sense of Urgency . . . . . . . . . . . . . . . . . . . . . . . . . 5
                2.      Ocwen's Letter Overshadows the Validation Notice Required by 15
                        U.S.C. §1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                3.      Ocwen's Letter's Threats of Court Action Are Deceptive . . . . . . . . . . . 8
                4.      Ocwen's Letter Deceptively Infers That Non-Bankruptcy Filers Are
                        Personally Liable for the Deficiency . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.    LCS' AUGUST 28, 2008 COLLECTION LETTER VIOLATES THE FDCPA . . . . . . 10

IV.     §580b UNAMBIGUOUSLY APPLIES TO PLAINTIFF'S LOAN . . . . . . . . . . . . . . . 11

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

ii

1

## TABLE OF AUTHORITIES

2  **Federal Cases**

3  *Brite Mfg. Co. v. F.T.C.*, 347 F.2d 477 (C.A.D.C. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4  *Delgado v. Holder*, 563 F.3d 863 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5  *Fields v. Wilbur Law Firm, P.C.*, 383 F.3d 562 (7th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . 4

6  *Graziano v. Harrison*, 950 F.2d 107  (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7  *Hutton v. Law Offices of Collins & Lamore*, No. 09CV0752-LAB
   --- F.Supp.2d ---, 2009 WL 3747226, (S.D.Cal., November 9, 2009) . . . . . . . . . . . . . . . . . . . . . 2
8
9  *Johnson v. Revenue Management Corp.*, 169 F.3d 1057 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . 7

   *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
10
11  *Larsen v. JBC Legal Group, P.C.*, 533 F.Supp.2d 290 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . 7

12  *Miller v. Javitch, Block & Rathbone*, No. 106CV828, 2007 WL 2815452 (S.D.Ohio September
   25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13  *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83 (D. Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . 3

14  *Savino v. Computer Credit, Inc.* 164 F.3d 81 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15  *Simeon Management Corp. v. F.T.C.*, 579 F.2d 1137 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . 4

16  *Swift v. Maximus, Inc.*, No. 04-CV-216, 2004 WL 1576618 (E.D.N.Y. July 15, 2004) . . . . . . . 7

17  *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18  *Tong v. Capital Management Services Group, Inc.*, 520 F.Supp.2d 1145 (N.D.Cal. 2007) . . . . . 2

19  *Wade v. Regional Credit Association*, 87 F.3d 1098 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 3

20  *Wallace v. Capital One Bank*, 168 F.Supp.2d 526 (D. Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . 3

21

22  **Federal Statutes**

23  15 U.S.C. §1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24  15 U.S.C. §1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25  15 U.S.C. §1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

26  15 U.S.C. §1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

27  15 U.S.C. §1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

15 U.S.C. §45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**California Cases**

*Brown v. Jensen*, 41 Cal.2d 193 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crookall v. Davis, Punelli, Keathley & Willard*, 65 Cal.App.4th 1048 (1998) . . . . . . . . . . . . . 12

*DeBerard Properties, Ltd. v. Lim*, 20 Cal.4th 659 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.*, 38 Cal.App.4th 1532 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simon v. Superior Court*, 4 Cal.App.4th 63 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stone v. Lobsien*, 112 Cal. App. 2d 750 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**California Statutes**

California Civil Code §1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

California Code of Civil Procedure §580b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 5, 8-12

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

iv

## I.     INTRODUCTION

In her class action complaint, Mercedes Herrera alleges that Ocwen Loan Servicing, LLC ("Ocwen") and LCS Financial Services Corporation ("LCS") used deceptive, misleading and unfair means to attempt to collect a deficiency balance which was unenforceable pursuant to California Code of Civil Procedure §580b (hereinafter "§580b"). Defendants' collection efforts were based on a second mortgage that Ms. Herrera used to purchase her now foreclosed home. First Amended Complaint ("FAC") ¶¶ 9-15.  The senior lienholder foreclosed on Ms. Herrera's depreciated property, leaving a deficiency with respect to the second mortage with Ocwen. FAC ¶13.

Defendants each sent Ms. Herrera dunning letters.  In addition, LCS made telephone "robocalls" to Ms. Herrera's residence[1].  Plaintiff contends that the collection attempts violated the California Fair Debt Collection Practices Act, California Civil Code §1788.17, which incorporates by reference most provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").  The collection attempts violate the FDCPA because they mislead consumers into believing that the deficiency is enforceable by demanding payment, but failing to indicate that the payment sought is, in effect, purely voluntary.  Plaintiff also contends that the July 1, 2008 letter sent by Ocwen to Ms. Herrera contained several deceptive statements, including a demand to pay before an artificial deadline which falsely intimated that consequences would follow if payment was not promptly made.

## II.     PLAINTIFF HAS STATED A CLAIM UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

### A.     SENDING OF DUNNING LETTERS AND TELEPHONE CALLS WITHOUT DISCLOSURE OF THE LACK OF A LEGAL REMEDY FOR NONPAYMENT IS DECEPTIVE, MISLEADING AND UNFAIR

Completely absent from defendants' motions is any discussion on what effect defendants'

---

[1] Plaintiff has not yet had an opportunity to conduct discovery and thus is not aware of the exact content of these calls, and to what extent they contained misleading statements.

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

1

1  collection campaign would likely have on actual consumers.  Defendants have not addressed or

2  contradicted plaintiff's core contention that the average person who receives letters and phone

3  calls demanding payment believes that there is a enforceable obligation to pay the money

4  demanded.  Defendants avoid informing consumers that the deficiency is unenforceable because

5  they know that if consumers are made aware that this fact, their ability to pressure consumers to

6  pay will vanish.

7       In determining whether the collection attempts violate the FDCPA, the court is to assume

8  the vantage point of the "least sophisticated consumer," which caselaw defines as "uninformed,

9  naive, or trusting." *Hutton v. Law Offices of Collins & Lamore*, No. 09CV0752-LAB

10  --- F.Supp.2d ---, 2009 WL 3747226, at *4, (S.D.Cal., November 9, 2009).  Thus, the question to

11  be decided is: Would a least sophisticated consumer who was the subject of the collection

12  campaign mounted by defendants believe, in the absence of being told otherwise, that the debt

13  which defendants sought to collect was enforceable?

14       Code of Civil Procedure §580b is a unique statute.  It expresses a strong public policy

15  against deficiency judgments on purchase money loans.  However, the statute, as interpreted by

16  this Court, leaves intact the debt itself. *Order Granting Defendant Ocwen Loan Servicing*

17  *L.L.C.'s Motion to Dismiss with Leave to Amend Complaint*, Docket #15.  There is little

18  likelihood that the least sophisticated consumer will appreciate this nuance.  The vast majority of

19  legitimate debts, if not paid, are enforceable in court by the lender.  Indeed, this is the case for

20  virtually all liabilities of any sort.  Most consumers have no idea that a collectible debt could

21  exist, but not be  enforceable.  Against this backdrop, the effect of defendant's collection efforts

22  should be measured.  The FDCPA is a remedial statute and "should be construed liberally in

23  favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir.2002); *Tong v. Capital*

24  *Management Services Group, Inc.* 520 F.Supp.2d 1145, 1147 (N.D.Cal. 2007).

25       The likelihood that a consumer would be deceived by Ocwen's collection attempts

26  increased because its payment demands were in the same format before the senior lienholder's

27  foreclosure (when §580b was not yet in effect) and after (when §580b took effect to bar personal

28

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

1   liability).  This can be seen by comparing the "Account Statements" which were sent to Ms.

2   Herrera before and after the foreclosure.  FAC, Exh. B, C.  This similarity suggest that the

3   consumers' rights were unaffected by the foreclosure process.

4          Defendants argue that they are not obligated to inform consumers of their lack of ability

5   to enforce the deficiency, citing *Reese v. Arrow Fin. Servs., LLC*, 202 F.R.D. 83, 92 (D. Conn.

6   2001) and *Wallace v. Capital One Bank*, 168 F.Supp.2d 526, 528 (D. Md. 2001).  These cases,

7   however, considered time-barred debts, not deficiencies subject to §580b.  As the court noted in

8   its Order following Ocwen's Motion to Dismiss, the statute of limitations is simply a different

9   statute than §580b.  *Order Granting Defendant Ocwen Loan Servicing L.L.C..'s Motion to*

10  *Dismiss with Leave to Amend Complaint*, Docket #15, 7:19-8:3.  §580b by its terms flatly bars

11  deficiency judgments "in any event."  The statute of limitations only applies after the passage of

12  time.  Further, the two statutes have been interpreted differently by the courts.  For example,

13  Code of Civil Procedure §580b cannot be waived by contract.  *DeBerard Properties, Ltd. v. Lim*,

14  20 Cal.4th 659, 665 (1999).  In contrast, the statute of limitations is waivable by contract.

15  *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.*, 38 Cal.App.4th 1532,

16  1548 (1995).

17         Ocwen and LCS also assert that their letters contain no false statements.  As set forth

18  below, plaintiff disputes this assertion.  But even if no false statements were made, literally true

19  statements which are nonetheless deceptive violate the FDCPA. *Miller v. Javitch, Block &*

20  *Rathbone*, No. 106CV828, 2007 WL 2815452, at *5 (S.D.Ohio September 25, 2007).  Indeed,

21  the FDCPA prohibits not just "false representations" but also "misleading representations or

22  means" and "unfair" means. 15 U.S.C. §§1692e, 1692e(10), 1692f.[2]

23         Cases which have interpreted the terms "misleading" and "unfair" under the F.T.C. Act,

24

25         [2]  LCS's brief cites *Wade v. Regional Credit Association*, 87 F.3d 1098 (9th Cir. 1996) to

26  support its assertion that "where the challenged representations are objectively true, there can be
    no violation under Ninth Circuit authority." (p. 13:1-3)  In fact, *Wade* contains no such

27  statement. Wade held that the representations made in that case were not deceptive, but did not
    hold that literally true statements could never constitute deception prohibited by the FDCPA.

28

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

3

1  15 U.S.C. §45, have held that advertisements which fail to contradict widely held assumptions

2  concerning the product are unfair and deceptive. In *Simeon Management Corp. v. F.T.C.*, 579

3  F.2d 1137 (9ᵗʰ Cir. 1978), the Ninth Circuit approved a F.T.C. determination that advertisements

4  for a weight reduction program which failed to disclose that the program involved daily

5  injections of a prescription drug not approved by the FDA were misleading and unfair due to

6  their failure to disclose material information, even though the advertisements did not state false

7  facts.  The FTC noted that in the absence of being informed otherwise, consumers would

8  reasonably believe that the drugs were FDA approved.  *Id.* at 1145.  *See also*, *Brite Mfg. Co. v.*

9  *F.T.C.*, 347 F.2d 477, 478, (C.A.D.C. 1965)(upholding F.T.C. determination that that failure to

10 label foreign origin of products was deceptive because, at that time, products would be assumed

11 to be made in the U.S.A. unless labeled otherwise.)

12     Another example of a court finding FDCPA liability when a collector failed to contradict

13 an incorrect assumption which would naturally flow from the information presented is *Fields v.*

14 *Wilbur Law Firm, P.C.,* 383 F.3d 562 (7th Cir.2004).  There, a debt collector sent a collection

15 notice for $388.54.  Although the collection letter did not so indicate, the amount was made up

16 of $122.06 in principal, interest and service charges of $16.48[3], and $250.00 in attorney's fees.

17 The court held that the collector was entitled to collect all requested amounts, but found the

18 collection letter to be nonetheless misleading because it could lead consumer into assuming that

19 the $388.54 was entirely made up of principal:

20     By leaving the door open for this assumption to be made, Wilber's letter was
       misleading because it gave a false impression of the character of the debt. It is
21     unfair to consumers under the FDCPA to hide the true character of the debt,
       thereby impairing their ability to knowledgeably assess the validity of the debt.
22

*Id.* at 566.

23

24

25

26 _____

27     [3] The decision does not state the amount of interest and service charges, but this figure
    can be derived from the other listed amounts.
28

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

4

**B.   OCWEN'S JULY 1, 2008 LETTER IS DECEPTIVE, MISLEADING AND UNFAIR**

**1.   Ocwen's Letter Misleads Consumers by Creating a Fictitious Deadline and Creating a False Sense of Urgency**

Ocwen aggravated the deceptive nature of its demand for payment when it asserted in its July 1 letter[4]:

> On or before August 01, 2008, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payments(s) that become due in the interim must also be included.

This statement created the impression that if payment were *not* made by August 1, consequences would follow.  In fact, no consequences followed, and no consequences *could* follow due to the dictates of §580b.  Ocwen's deadline was completely fictitious.

In its moving papers, Ocwen denies that its letter demanded payment -- claiming that the term "must" referred to the *method* (Money Gram, Bank Check, etc), not the *fact* of payment. However, this is not how the letter would be interpreted by the average consumer, much less the least sophisticated consumer.  This stretched interpretation is further belied by the use of the term "must" in the second sentence of the above passage, which contains no reference to the method of payment. Ocwen's use of a false deadline was an attempt to create a false sense of urgency regarding payment, and falsely suggested that consequences would follow if prompt payment were not made.  Such deceptive acts violate the FDCPA.

**2.   Ocwen's Letter Overshadows the Validation Notice Required by 15 U.S.C. §1692g(a)**

15 U.S.C. §1692g(a), which is incorporated into California law by California Civil Code §1788.17, requires that debt collectors provide a "validation notice" which gives consumers an opportunity to dispute the alleged debt:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –

---

[4] The July 1, 2008 letter is attached as Exhibit A to the FAC.

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION   C09-02843 TEH

5

(1)     the amount of the debt;
(2)     the name of the creditor to whom the debt is owed;
(3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

This notice has particular significance in the instant case, as it allows consumers such as Ms. Herrera time to dispute the debt and inform themselves of their rights. Ocwen's July 1, 2008 letter *does* contain a validation notice. However, courts have held that when a collector concurrently demands payment before the expiration of the 30 day validation period, the demand violates the FDCPA. These are referred to as "overshadowing" violations. Thus, the Ninth Circuit has stated:

A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences. For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g.

*Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997).

Similarly, in *Savino v. Computer Credit, Inc.* 164 F.3d 81, 85 (2nd Cir. 1998), the court held that the following language overshadowed the validation notice: "The hospital insists on immediate payment or a valid reason for your failure to make payment." The court explained as follows:

In reaching this conclusion, we emphasize that CCI's request for immediate payment did not, standing alone, violate the FDCPA. Rather, CCI's violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1962g to seek validation of the debt. CCI could have both sought immediate payment and complied with the Act simply by inserting into the text of its letter transitional language that referred the addressee to the validation notice. For example, CCI might have added one of the following paragraphs to its demand letter:
Although we have requested that you make immediate payment or provide a valid reason for nonpayment, you still have the right to make a written request, within thirty days of your receipt of this notice, for more information about the debt.

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION      C09-02843 TEH

6

1   Your rights are described on the reverse side of this notice.

2   *Id.* at 85.

3   The Seventh Circuit has also issued a similar ruling:

4   An unelaborated demand that the debt be paid "immediately" (or, as in *Bartlett*, "within one week"), or a threat of immediate suit, violates the Act by implying
5   that the debtor does *not* have 30 days to ask for verification-or at least could convey this message to an unsophisticated consumer, the kind to whom the Act is
6   addressed, see *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir.1994), unless accompanied by additional reconciling language, such as that
7   payment is due "immediately" only when the debt is uncontested.

8   *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1059 (7th Cir.1999)

9   Ocwen mailed the letter on (Tuesday) July 1, 2008 from Orlando, Florida. The letter

10  instructed that "[o]n or before August 01, 2008, you must submit payment by Money Gram,

11  Bank Check, Money Order or Certified Funds." Even assuming the July 1 letter was delivered

12  as soon as Thursday, July 3, 2008[5], Ms. Herrera still had until August 2, 2008 to request

13  validation of the debt (i.e. 30 days after receipt). However, the letter demanded that payment be

14  "submitted" on or before August 1, 2008 - prior to the expiration of her validation notice.

15  Assuming that Ms. Herrera were to mail her payment to Ocwen, she would have had to pay

16  several days in advance of August 1, 2008 in order to meet the deadline. *See, Larsen v. JBC*

17  *Legal Group, P.C.*, 533 F.Supp.2d 290, 306 (E.D.N.Y. 2008)("[e]ven the least-sophisticated

18  consumer would calculate that payment must be mailed in advance of a deadline in order to be

19  received by that deadline."); *Swift v. Maximus, Inc.,* No. 04-CV-216, 2004 WL 1576618, at *4

20  (E.D.N.Y. July 15, 2004)(same). Even if Ms. Herrera were to use an instant form of payment,

21  such as Money Gram, she would still have to make payment before her validation period

22  expired.

23  Courts have considered "overshadowing" language to constitute a violation of either 15

24

25  [5] In *Swift v. Maximus, Inc.,* No. 04-CV-216, 2004 WL 1576618, at *4 (E.D.N.Y. July 15,
26  2004), the court assumed that a letter mailed in Grand Rapids, Michigan on Monday, November
    24, 2003 was not received in Brookyn, New York until Friday, November 28, 2003. The court
27  noted that Thursday, November 27 was a legal holiday and thus assumed a three day delivery
    period.
28

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION    C09-02843 TEH

7

U.S.C. §1692g(a) or §1692e(10).  *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir.1991) The FAC alleges that Ocwen's demand for payment prior to August 1, 2008 violated §1692e(10), but did not explain the overshadowing violation.  If the Court finds that the FAC does not properly allege this aspect of Ocwen's §1692e(10) violation, plaintiff requests leave to amend her complaint.

### 3.    Ocwen's Letter's Threats of Court Action Are Deceptive

Ocwen's letter contains the following statement:

> Failure to bring your account current may result in our election to exercise our right to foreclose on your property.  Upon **acceleration**, your total obligation will be immediately due and payable without further demand.  In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs.  If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action (if possible). You have the right to assert **in court** the non-existence of a default or any other defense to **acceleration** and foreclosure. (Emphasis added)

This language threatens a *court* action to collect the total arrearage, attorney's fees and costs.  Significantly, the letter states that upon "acceleration" the total obligation will be due, then indicates that any defenses to acceleration are to be made in court. Such legal actions are clearly prohibited by §580b.

Ocwen will most likely argue that a least sophisticated consumer should have realized that the threats made by Ocwen could not be effectuated because the senior mortgagor had already completed its foreclosure of the property.  However, a least sophisticated (i.e. trusting) consumer would take a letter from an established financial institution at face value.  Although the consumer would be aware that the senior lienholder had foreclosed on the property, a least sophisticated consumer could not know that the junior lienholder could not thereafter initiate a court proceeding, which could be considered to be a "foreclosure," to collect the "total arrearage."  The letter certainly leads one to this conclusion, and suggests that the essence of the foreclosure contempated by Ocwen is a collection action.  This is particularly the case since the letter threatens to enforce its "acceleration" of the debt in court, which action would lead to liability for the "total obligation."

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH

8

1      Even if the onus is placed on the letter recipient to realize that Ocwen did not mean what

2  it said, the letter is still deceptive. It contains the following objectively false statement:

3          In foreclosure proceedings, we are entitled to collect your total arrearage in
           addition to any expenses of foreclosure, including but not limited to reasonable
4          attorney's fees and costs.

5      In fact, Ocwen was never entitled to collect the total arrearage in foreclosure.  This

6  statement would be false regardless of whether the senior mortgagee had already foreclosed.

7  The only objective which Ocwen could achieve by foreclosure was recovery of the value of Ms.

8  Herrera's real property.  §580b prohibited Ocwen from collecting the total arrearage, which

9  greatly exceeded the property value.

10     By threatening a court action, and by representing that it could use a foreclosure process

11 to recover the total arrearage, Ocwen has violated the FDCPA.

12

13          **4.      Ocwen's Letter Deceptively Infers That Non-Bankruptcy Filers Are
                     Personally Liable for the Deficiency**

14
   Ocwen's July 1, 2008 letter begins with the following:
15
          If you have received a Chapter 7 discharge under the Bankruptcy Code of the
16        United States or if your mortgage is the type which has been discharged pursuant
          to a completed Chapter 13 plan, this notice is not intended and does not constitute
17        an attempt to collect a debt against you personally.  If the foregoing applies to
          you, this notice is sent to you only as a preliminary step to a foreclosure on the
18        mortgage against the above-referenced property.  Provisions may be contained
          within your mortgage/deed of trust that require resolution prior to foreclosure.  ***As
19        such, this is not an attempt to assert that you have any personal liability for this
          debt.***    (Emphasis added)
20
       Thus, the letter accurately indicates that consumer have no personal liability for the debt
21
   which is being collected, but specifically limits this to only those that have filed bankruptcy.
22
   The natural inference among consumers, and particularly the least sophisticated consumer, is that
23
   those who have *not* filed for bankruptcy remain personally liable for the deficiency.  Pursuant to
24
   §580b, Ms. Herrera was *not* personally liable for the debt. *Stone v. Lobsien*, 112 Cal. App. 2d
25
   750, 756 (1952)("[T]here is no personal liability imposed on the vendee of a purchase money
26
   deed of trust").  Accordingly, the statement is misleading, deceptive, and unfair.
27

28
   PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
   SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION      C09-02843 TEH
                                                                                9

1                       **OPPOSITION TO LCS'S MOTION**

2 **III.   LCS' AUGUST 28, 2008 COLLECTION LETTER VIOLATES THE FDCPA**

3      LSC contends that its August 28, 2008 collection letter, which claims that $103,456.42 is

4 "due and owing" does not violate the FDCPA.[6] The letter violates the FDCPA for the same

5 reason as Ocwen's letters violate the FDCPA.  LCS created the false impression that the debt is

6 legally enforceable by claiming that the balance is "due and owing" without also disclosing that

7 the debt is not legally enforceable.

8      Further, the LCS letter should be interpreted in light of the misleading statements

9 previously made by Ocwen.  The least sophisticated consumer would reasonably assume that

10 LCS, like Ocwen, sought to impose "personal liability" upon them by means of a collection

11 action in court, as implied in Ocwen's July 1, 2008 letter.  It is notable that prior to receiving the

12 LCS letter, Ms. Herrera had received a letter from Ocwen which stated that the "right to collect

13 payments from you" would be "assigned, sold and transferred" to LCS.  FAC, Exh. D.  Such

14 language would reasonably lead consumers to believe that LCS asserted the same legal rights as

15 Ocwen claimed to have.

16      LCS also argues that their statement that the amount demanded is "due and owing" is

17 accurate, contending that §580b does not erase the debt.  Plaintiff acknowledges that this Court

18 accepted a similar argument made by Ocwen in its first motion to dismiss.  However, plaintiff

19 nonetheless urges the court to rule differently in this motion.  LCS bases its motion on the plain

20 language of the statute, which bars only deficiency judgments and cites *Delgado v. Holder*, 563

21 F.3d 863, 883  (9th Cir. 2009) to argue that "the analysis should stop with the words of the

22 statute."  However, caselaw indicates that with respect to §580b, the courts have taken a more

23 policy based approach, which compels them to look beyond the plain language of the statute:

24         The antideficiency statutes are to be "liberally construed to effectuate the specific
legislative purpose behind them. ... The courts have exhibited a very hospitable
25         attitude toward the legislative policy underlying the anti-deficiency legislation
and have given it a broad and liberal construction ***that often goes beyond the***

26

27 ────────────

28     [6] LCS' August 28, 2008 letter is attached as Exhibit E to the FAC.

*narrow bounds of the statutory language.* [Citation.] And the legislative purpose against deficiency judgments may not be subverted." (*Union Bank v. Wendland, supra,* 54 Cal.App.3d at p. 408 (conc. opn. of Elkington, J.) internal quotation marks and brackets omitted.) "The objective sought to be achieved by a statute as well as the evil to be prevented is of prime consequence in its interpretation." [citations omitted]

*Simon v. Superior Court*, 4 Cal.App.4th 63, 78 (1992)(emphasis added)

The purpose of §580b is as follows:

Section 580b places the risk of inadequate security on the purchase money mortgagee. A vendor is thus discouraged from overvaluing the security… If inadequacy of the security results, not from overvaluing, but from a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability.

*Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 42 (1963).

These purposes are achieved only by preventing creditors from actually collecting the deficiency.  Thus, for example, if lenders are able to collect the deficiency from borrowers, they would not be deterred from overvaluing the property securing the loan. Likewise, if borrowers are obligated to pay the deficiency, §580b's preventative purpose with respect to stemming a downturn in the local economy would be frustrated.  Accordingly the court should interpret §580b to erase deficiencies in order to achieve the statute's intended purpose.

## IV.   §580b UNAMBIGUOUSLY APPLIES TO PLAINTIFF'S LOAN

LCS next argues that the application of §580b is a complicated analysis, which precludes placing responsibility on the lender/collector to know when it applies and when it does not. However, §580b routinely and automatically applies to "standard" purchase money transactions such as Ms. Herrera's:

The *Spangler* court announced a two-part test to determine whether section 580b applies. First, the court must decide whether the secured loan is a standard purchase money transaction to which section 580b automatically applies. (7 Cal.3d at p. 611.) If it is not, then the court must analyze the factual setting of the transaction to determine whether the transaction comes within the purposes of section 580b. (7 Cal.3d at pp. 611-612.) The Supreme Court identified two factors important to whether a transaction is a variation or standard: the subordination of the senior lien to a construction loan and a plan to put the property to a different, improved use.

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION      C09-02843 TEH

11

1   *Crookall v. Davis, Punelli, Keathley & Willard*, 65 Cal.App.4th 1048, 1061 (1998).

2       LCS has failed to present any evidence that Ms. Herrera's loan was anything other than a

3   standard purchase money loan, or that there was any difficulty in determining whether §580b

4   applied to her situation.  A standard transaction includes a seller who accepts a purchase money

5   trust deed even if it is in second position. *Brown v. Jensen*, 41 Cal.2d 193, 197 (1953).  Ms.

6   Herrera, like thousands of other Californians, purchased a home using the proceeds of a first and

7   second loan.  There is no ambiguity as to whether §580b applies to her situation.  It is only for

8   non-standard purchase money transactions that courts must determine whether the purposes of

9   the statute are met in order to determine whether §580b will apply.  The fact that court

10  sometimes expands the applicability of §580b to non-standard purchase money loans does not

11  further LCS' argument, but rather underscores that the policy implications are of primary

12  importance in  interpreting §580b.

13

14  **V.     CONCLUSION**

15       Much as defendants avoid the reality, what is happening in the real world is that they are

16  collecting money by fooling people into believing that the debts are legally enforceable.

17  Generally, it is the unsophisticated, without access to an attorney, who are led to make payments.

18  The FDCPA and §580b are remedial statutes intended to protect such individuals, and should be

19  interpreted in such a manner as to achieve their purpose.

20

21                              LAW OFFICE OF WILLIAM E. KENNEDY
                                BRANCART & BRANCART
22                              HOUSING AND ECONOMIC RIGHTS ADVOCATES

23

24  Dated: November 20, 2009          ___/s/_____
                                By:   William E. Kennedy
25                                    Attorneys for Mercedes Herrera and the Proposed Class

26

27

28

PLAINTIFF MERCEDES HERRERA'S OPPOSITION TO MOTIONS TO DISMISS BY OCWEN LOAN
SERVICING LLC AND LCS FINANCIAL SERVICES CORPORATION     C09-02843 TEH