IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERCEDES HERRERA,

                Plaintiff,

v.

LCS FINANCIAL SERVICES CORPORATION and OCWEN LOAN SERVICING L.L.C.,

                Defendants.

NO. C09-02843 TEH

<u>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT</u>

        This matter comes before the Court on the motions to dismiss filed by Defendants Ocwen Loan Servicing LLC ("Ocwen") and LCS Financial Services Corp. ("LCS") (collectively "Defendants"). After carefully considering the parties' written arguments, the Court found oral argument to be unnecessary and vacated the hearing that had been scheduled for December 21, 2009. The Court now DENIES Defendants' motions for the reasons discussed below.

**BACKGROUND**

        Plaintiff Mercedes Herrera ("Herrera") alleges in her First Amended Class Action Complaint ("FAC") that Defendants violated federal and state law in their efforts to collect the debt she incurred to purchase a home she subsequently lost in foreclosure. The Court dismissed Herrera's original complaint on September 9, 2009, after rejecting the theory that her debt had been eradicated by California's anti-deficiency statute. Herrera responded to the Court's ruling by amending the complaint to allege that the *content* of Defendants' communications with Herrera was misleading and otherwise unlawful. Defendants now move to dismiss for failure to state a claim.

In the FAC, as in her original complaint, Herrera alleges that she purchased a condominium in Fremont, California in 2005 with two home mortgage loans from New Century Mortgage Corporation: one for $348,000 ("first mortgage") and another for $87,000 ("second mortgage"). "The two mortgages were funded simultaneously as purchase money loans." FAC ¶ 9. Ocwen began servicing the second mortgage "[a]t some point." *Id.* ¶ 11. Barely two years later, Herrera fell behind on mortgage payments following an interest rate adjustment. A Notice of Default was recorded against her on February 4, 2008, and a Notice of Trustee Sale was recorded three months later. Herrera lost title by Trustee's Deed on June 19, 2008, through a non-judicial foreclosure by the first mortgage holder.

Following the foreclosure, Ocwen sent Herrera a "Notice of Default" dated July 1, 2008, which provided that she "must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above," $7,012.09. FAC ¶ 14, Ex. A. An "Account Statement" from Ocwen, dated July 17, 2008, listed $7,368.12 under "Past Due Amounts DUE IMMEDIATELY," and $8,695.70 as the "Total Amount Due." *Id.* ¶ 17, Ex. B. Ocwen notified Herrera that LCS would begin servicing the loan in a "Notice of Assignment, Sale or Transfer of Servicing Rights" dated August 18, 2008. *Id.* ¶ 18, Ex. D. LCS, in an August 28, 2008 letter, advised Herrera that "the total amount of $103456.42 is now due and owing." *Id.* ¶ 19, Ex. E. Herrera also alleges that LCS placed collection calls to Herrera using an autodialer, and that "LCS continue[d] to assert that the requested amount was due in telephone conversations which occurred with Ms. Herrera's legal counsel." *Id.* ¶ 21.

The FAC raises two causes of action. Herrera alleges in her first claim that LCS's collection efforts violated the federal Fair Debt Collection Practices Act ("federal FDCPA"), 15 U.S.C. § 1692 *et seq.* In her second cause of action, Herrera alleges that both Defendants violated California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*, which incorporates by reference the provisions of the federal FDCPA raised in her first claim. Herrera brings this case as a putative class action. Ocwen and LCS each move to dismiss the causes of action against them.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**ANALYSIS**

The federal FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (Congressional findings and declaration of purpose). California's Rosenthal Act similarly seeks "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring

such debts." Cal. Civ. Code § 1788.1 (legislative findings and purpose). In addition to prescribing its own standards governing debt-collection practices, the state statute mandates that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal FDCPA, with limited exceptions. *Id.* § 1788.17. Herrera asserts the federal claim against only LCS and the state claim against both Defendants, because the state and federal statutes both apply to "debt collectors" but define the term differently.[1] For practical purposes, the standards governing Herrera's state and federal claims are indistinguishable because the state cause of action alleges only violations of the federal FDCPA as incorporated into the Rosenthal Act.

Section 1692e of the federal FDCPA bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and sets out a nonexclusive list of conduct that violates the section. 15 U.S.C. § 1692e. Herrera alleges that Defendants violated section 1692e's general prohibition as well as two of its specific bars: falsely representing "the character, amount, or legal status" of a debt, § 1692e(2)(A), and using a "false representation or deceptive means to collect or attempt to collect" a debt, § 1692e(10). She also claims Defendants violated section 1692f's mandate that a debt collector not use "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "[A] single violation . . . is sufficient to establish civil liability under the FDCPA." *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 62 (2d Cir. 1993). "[A]ny debt collector who fails to comply with any provision of [the statute] with respect to any person is liable" for actual and statutory damages. 15 U.S.C. § 1692k.[2]

---

[1] The federal definition excludes creditors collecting on their own debts, 15 U.S.C. § 1692a(6), an exclusion that does not appear in the state statute, Cal. Civ. Code § 1788.2(c). Herrera therefore brings only a state claim against Ocwen, but alleges against it violations of the federal FDCPA as incorporated into state law.

[2] In addition to requiring compliance with the substantive provisions of the federal FDCPA, the Rosenthal Act also provides that debt collectors "shall be subject to the remedies in Section 1692k" of the federal statute. Cal. Civ. Code § 1788.17.

4

This action is rooted in California Code of Civil Procedure section 580b, the state's anti-deficiency statute, which prohibits a vendor "from obtaining a deficiency judgment against a purchaser in a purchase money secured land transaction." *DeBerard Properties v. Lim*, 20 Cal. 4th 659, 663 (1999). Section 580b provides:

> No deficiency judgment shall lie in any event after a sale of real property or an estate for years therein for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property or estate for years therein, or under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling occupied, entirely or in part, by the purchaser.

A deficiency judgment is "a personal judgment against the debtor-mortgagor for the difference between the fair market value of the property held as security and the outstanding indebtedness." *Cornelison v. Kornbluth*, 15 Cal. 3d 590, 603 (1975). Although ordinarily "an independent action may be maintained" on debt for which "the security is lost or has become valueless," section 580b bars such an action "where the security is a purchase money deed of trust or mortgage." *Jeanese, Inc. v. Surety Title & Guaranty Co.*, 176 Cal. App. 2d 449, 454 (1959). In that case, "the lender must look solely to the security itself, i.e., the land, and no personal judgment may be recovered." *Id.* The statute applies to "the standard purchase money transaction in which the real property vendor retains an interest in the land sold in order to secure payment of part of the purchase price." *Lawler v. Jacobs*, 83 Cal. App. 4th 723, 732 (2000).[3] Defendants do not dispute section 580b's applicability to Herrera's second mortgage.

Herrera's original theory had been that, following foreclosure, her second mortgage was erased by operation of section 580b, thus making any attempt to collect the debt

---

[3] The rationale behind section 580b is twofold. "First, section 580b is a transaction-specific stabilization measure: it stabilizes purchase money secured land sales by keeping the vendor from overvaluing the property and by suggesting to the purchaser its true value." *DeBerard Properties v. Lim*, 20 Cal. 4th 659, 663 (1999). Second, if the security is inadequate due to "a decline in property values during a general or local depression, section 580b prevents the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability." *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 42 (1963).

5

unlawful. The Court disagreed, finding that section 580b "eliminates a creditor's ability to seek a deficiency judgment," but "does not eliminate the underlying debt." Sept. 9, 2009 Order Granting Mot. to Dismiss (Dkt. 15) ("9/9/09 Order"), at 11. Although the mere fact that Defendants had attempted to collect the debt was insufficient to state a claim, the Court invited Herrera to file an amended complaint alleging that the *content* of the communications made them unlawful. Herrera's FAC does precisely that, and the Court must now determine whether those allegations are sufficient to survive dismissal.

Claims under the federal FDCPA are assessed from the perspective of the "least sophisticated debtor." *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1989). "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (quoting *Swanson*, 869 F.2d at 1225). The standard is an objective one, which "'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous.'" *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (internal citation omitted). The least sophisticated debtor is a "lower" standard "than simply examining whether particular language would deceive or mislead a reasonable debtor." *Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir. 1997) (quoting *Swanson*, 869 F.2d at 1227).

A debt collector's failure to comply with "any provision" of the federal FDCPA is sufficient to establish liability under that statute (and, by extension, California's Rosenthal Act). 15 U.S.C. § 1692k. To survive dismissal, Herrera need only plead a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. Therefore, for each cause of action to advance, Herrera need only show that she has pled a single plausible violation by each Defendant.

**1.    Ocwen**

Following foreclosure on Herrera's property by the holder of the first mortgage, Ocwen mailed Herrera a Notice of Default regarding her second mortgage. The Notice provides, "Your mortgage payments are past due, which puts you in default of your loan agreement." FAC, Ex. A. It then breaks down the amount that Herrera owed "[a]s of July 01, 2008," listing a series of charges that total $7,012.09. *Id.* The Notice goes on to say:

> On or before August 01, 2008, you must submit payment by Money Gram, Bank Check, Money Order or Certified Funds for the entire total due amount stated above to the appropriate address listed at the bottom of page two of this notice. Any payment(s) that become due in the interim must also be included.
>
> Failure to bring your account current may result in our election to exercise our right to foreclose on your property. Upon acceleration, your total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. If your loan has already been accelerated and foreclosure proceedings already begun, we will continue the foreclosure action (if possible). You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

*Id.* The assertion that she "must submit payment" suggests that failure to do so could have legal repercussions, Herrera argues. She also claims the letter threatens foreclosure, which is impossible because the holder of the first mortgage had already foreclosed on the property. Finally, Herrera contends that this – and every – letter should have informed her that Ocwen had no legal recourse to recoup the deficiency.

Ocwen insists that its statements are consistent with its "right to *request* repayment of [Herrera's] admittedly defaulted loan." Ocwen's Mot. at 3 (emphasis added). In order to render its language consistent with a request, however, Ocwen offers a strained misreading of its letter, arguing that "must" relates only to the "methodology of payment," i.e. by Money Gram, Bank Check, etc. *Id.* at 6. *Any* debtor – regardless of sophistication – is likely to read "must" as applying to the entire clause that follows it. Ocwen's statement is properly understood as an order to "submit payment," not a request.

7

Ocwen also asserts that it is "disingenuous for plaintiff to claim that she was deceived or misled by Ocwen's reference to foreclosure," because a foreclosure "had already happened with respect to the more senior lien." Ocwen's Mot. at 8. Whether the notice was deceiving or misleading *from Herrera's perspective* is irrelevant, as the least sophisticated debtor standard is objective. Under Ocwen's view, the debtor should know to ignore the statement regarding Ocwen's "right to foreclose" because foreclosure had already occurred. However, it is plausible that the least sophisticated debtor would be misled by Ocwen's invocation of foreclosure when foreclosure was an impossibility.

Herrera states a claim against Ocwen that is plausible on its face. It is possible that the least sophisticated debtor could be misled by the statements in Ocwen's Notice of Default. As these facts alone preclude the dismissal of Herrera's cause of action against Ocwen,[4] the Court does not address whether the two other Ocwen letters are independently sufficient to sustain the claim. Ocwen's motion to dismiss is DENIED.

**2.   LCS**

Herrera received one letter from LCS, dated August 28, 2008, which reads as follows:

> Please be advised that LCS Financial Services Corp. represents OCWEN/MTGLQ with regard to the balance due and owing on the above referenced promissory note ("Note"). Pursuant to the Fair Debt Collection Practices Act, you are advised that this company is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.
>
> Nonpayment of the Note has resulted in a default and the total amount of $103456.42 is now due and owing as of the date of this letter. The total amount due includes unpaid principal of $86142.16, interest of $16764.43 and miscellaneous fees or advances of $549.83.

FAC, Ex. E. Herrera claims that LCS, like Ocwen, should have stated that it had no legal recourse if she did not pay the amount owing on her debt. She also asserts that LCS's letter

---

[4] In her opposition, Herrera also argues that Ocwen committed an alleged "overshadowing" violation under 15 U.S.C. § 1692g(a) or § 1692(e)(1), which Herrera acknowledges the FAC may not properly allege. The Court does not now assess whether Herrera can, or already does, plead this theory. Herrera may bring this issue to the Court's attention in a motion for leave to amend.

8

was necessarily interpreted "in light of the previous Ocwen correspondence which demanded immediate payment of deficiency balances." *Id.* ¶ 20.

LCS's letter provides that "the total amount of $103456.42 is now due and owing," and offers no notice that – by operation of section 580b – LCS has no recourse to the courts to collect that amount. Defendants contend that they have no affirmative obligation to provide such notice, as no such obligation exists with respect to time-barred debts. *See, e.g.*, *Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir. 2001) (holding that, "in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid"). There are, indeed, similarities between section 580b and a statute of limitations. The Eighth Circuit observed in *Freyermuth* that a "statute of limitations does not eliminate the debt; it merely limits the judicial remedies available." *Id.* This Court made the nearly identical conclusion with respect to section 580b, finding it "eliminates a creditor's ability to seek a deficiency judgment," but "does not eliminate the underlying debt." 9/9/09 Order at 11.

There are also key differences, however. Section 580b, unlike a statute of limitations, cannot be waived by contract. *Compare DeBerard Properties v. Lim*, 20 Cal. 4th 659, 662 (1999) (holding that section 580b's protections may not be contractually waived), *with Hambrecht & Quist Venture Partners v. Am. Med. Int'l*, 38 Cal. App. 4th 1532, 1547 (1995) ("In general, California courts have permitted contracting parties to modify the length of the otherwise applicable California statute of limitations[.]"). Furthermore, section 580b serves a unique purpose, to "prevent[] the aggravation of the downturn that would result if defaulting purchasers were burdened with large personal liability." *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 42 (1963). Although this Court previously observed that "a downturn is unlikely to be aggravated if mortgagors who have the means to pay off the debt choose to do so," 9/9/09 Order at 6, that rationale would not apply to a debtor who only pays out of the mistaken belief that such payment is required by law. The federal FDCPA's protections

9

against misleading communications are therefore particularly important in the context of section 580b, much more so than with respect to statutes of limitations.

Neither the Court nor the parties have identified any cases applying the federal FDCPA to the collection of debts subject to anti-deficiency laws, and as such, there is little guidance regarding what representations are permissible in this context. Section 580b prohibits deficiency judgments yet leaves the debt intact, a nuance that Herrera argues the least sophisticated consumer is unlikely to appreciate. For that reason, the Ninth Circuit cases cited by LCS are not dispositive; none deal with the unique issues raised by section 580b. In *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996), the Ninth Circuit found that a California debt collector's letter to an Idaho resident, although contrary to Idaho law (due to the debt collector's lack of permit), did not breach the federal FDCPA. The letter was not threatening, contained "no false representation," and "was relatively innocuous." *Id.* at 1100 ("The least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to take action."). But *Wade* is not "determinative," as LCS claims, because the debt at issue was not subject to anti-deficiency legislation. LCS's Mot. at 13. Likewise, in *Dunlap v. Credit Protection Ass'n*, 419 F.3d 1011, 1012 (9th Cir. 2005), the plaintiff argued that the debt collector's name – "Credit Protection Association" – coupled with its demand for payment, implied that it would "damage the debtor's credit by reporting the debt to credit reporting agencies" if payment was not made. The court found that the language in the letter was "straightforward and non-threatening," and noted that the failure to inform the debtor that "de minimis debts are rarely reported . . . is not so misleading that it violates the FDCPA." *Id.* However, the implication is that another kind of omission *could* be sufficiently misleading to violate the federal FDCPA – and Herrera argues that the omission of information regarding section 580b passes that threshold.

It is plausible that the least sophisticated debtor could be misled by a letter stating that her debt is "due and owing" when that debt is subject to California's anti-deficiency law, and the letter does not advise the debtor as to the significance of section 580b. The Court does not now decide whether LCS's notice is, in fact, misleading under the applicable standard, or

10

whether any affirmative notice regarding section 580b would be necessary. The Court merely concludes that the allegation is sufficient for Herrera's federal and state claims against LCS to survive a motion to dismiss.[5]

**CONCLUSION**

For the reasons set forth above, the motions to dismiss of Ocwen and LCS are DENIED. The parties shall appear for a case management conference on Monday, February 22, 2010, at 1:30pm. The parties shall file a joint case management statement no fewer than seven days prior to the conference.

**IT IS SO ORDERED.**

Dated: 12/22/09

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[5] The Court therefore does not address whether the allegations regarding LCS's telephone communications are independently sufficient to sustain the causes of action against it.

11