1    William E. Kennedy (CSB #158214)
     LAW OFFICE OF WILLIAM E. KENNEDY
2    2797 Park Avenue, Suite 201
     Santa Clara, California 95050
3    (408) 241-1000 phone
     (408) 241-1500 fax
4    willkennedy@pacbell.net

5    Christopher Brancart (CSB #128475)
     BRANCART & BRANCART
6    PO Box 686
     Pescadero, California 94060
7    (650) 879-0141 phone
     (650) 879-1103 fax
8    cbrancart@brancart.com

9    Noah Zinner (CSB #247581)
     HOUSING AND ECONOMIC RIGHTS ADVOCATES
10   PO Box 29435
     Oakland, California 94604
11   (510) 271-8443 phone
     (510) 868-4521 fax
12   nzinner@heraca.org

13   Attorneys for plaintiff Mercedes Herrera
     and others similarly situated

14

15                          UNITED STATES DISTRICT COURT

16                         NORTHERN DISTRICT OF CALIFORNIA

17

18   MERCEDES HERRERA,                    ) Case No.  09-cv-02843 TEH
                                          )
19          Plaintiff,                    ) DISCOVERY MATTER
                                          )
20      v.                                ) PLAINTIFF'S NOTICE OF MOTION
                                          ) AND MOTION TO COMPEL FURTHER
21   LCS FINANCIAL SERVICES               ) DISCOVERY RESPONSES BY
     CORPORATION and OCWEN LOAN           ) DEFENDANT OCWEN LOAN
22   SERVICING LLC,                       ) SERVICING, LLC; DECLARATION OF
                                          ) CHRISTOPHER BRANCART;
23          Defendants.                   ) EXHIBITS
                                          )
24                                        ) Hearing
                                          ) Date:    August 4, 2010
25   _____) Time:    9:30 am.
                                          ) Room:   JL
26   ///

27   ///

28

# TABLE OF CONTENTS

I.      NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     CONFERENCE OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Summary of Ms. Herrera's Case against Ocwen . . . . . . . . . . . . . . . . . . . . . . 1

        B.      Summary of the Motion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        C.      Arguments Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                1.      Interrogatories 1 through 7 seek relevant information regarding §
                        580b covered loans, class members, and Ocwen's affirmative
                        defenses  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                2.      The witness-identification information sought by interrogatories 9
                        and 10 is relevant and should be produced  . . . . . . . . . . . . . . . . . . . . 14

                3.      The Ocwen-LCS documents are relevant and should be produced  . 16

                4.      The § 580b-Correspondence and Related Documents sought by
                        requests 13 and 14 should be produced . . . . . . . . . . . . . . . . . . . . . . . 17

        D.      CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

-ii-

1

# **TABLE OF AUTHORITIES**

2

3

**Cases**

4

*Baine v. General Motors Corp.*, 141 F.R.D. 328 (M.D. Ala. 1991) . . . . . . . . . . . . . . . . . . . 12, 14

5

*Baxter Travenol Laboratories, Inc. v. LeMay*, 93 F.R.D. 379 (D.C. Ohio 1981) . . . . . . . . . . . . 7

6

*Belaire-West Landscape, Inc. v. Superior Court,*149
     Cal.App.4th 554 (Cal.App. 2 Dist. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7

8

*Gonzales v. Arrow Financial Services, LLC*, 233 F.R.D. 577 (S.D.Cal. 2006) . . . . . . . . . . . . . 5

*Khalilpour v. CELLCO Partnership*, 2010 WL 1267749 (N.D.Cal.,2010) . . . . . . . . . . . . . 12, 14

9

*Kozlowski v. Sears, Roebuck & Co.* 73 F.R.D. 73 (D.C. Mass 1976) . . . . . . . . . . . . . . . . . passim

10

**Statutes**

11

Code of Civil Procedure § 580b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

12

Cal. Civ. Code § 1788.30(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

13

15 U.S.C. §1692k(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14

15 U.S.C. §1692k(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.      NOTICE OF MOTION**

2            On August 4, 2010, at 9:30 am, plaintiff Mercedes Herrera will move Hon.  James

3    Larson, United States Magistrate Judge for the Northern District of California, for issuance of an

4    order compelling defendant Ocwen Loan Servicing, LLC to provide further responses to

5    plaintiff's interrogatories 1, 2, 7, 9 and 10, and document requests 5, 6, 13, and 14. This motion

6    is brought under Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure and Local Rule

7    37.  It is based upon this notice, the attached memorandum, declaration and exhibits.  There is

8    good cause to grant this motion because it seeks to compel discovery that is relevant and not

9    privileged.

10   **II.     CONFERENCE OF COUNSEL**

11           Pursuant to federal and local rules 37, counsel conferred via telephone (Ocwen's counsel

12   is located in Orange County)  on three occasions – April 19, and May 3 and 10, 2010.  They also

13   exchanged several letters in an effort to avoid or limit the need for this motion.  (Declaration of

14   Christopher Brancart ["Brancart Dec."], ¶ 6.)

15   **III.    MEMORANDUM OF POINTS AND AUTHORITIES**

16           **A.      <u>Summary of Ms. Herrera's Case against Ocwen</u>**

17            In 2005, Mercedes Herrera obtained two mortgages to purchase a home.  When

18   Herrera's adjustable interest rate increased, she fell behind on her payments, and the first

19   mortgage holder recorded a notice of default on the first mortgage.  On June 19, 2008, Herrera

20   lost her home to foreclosure by the first mortgage holder.   (Order, pp.1 - 2; doc. 33;

21   [summarizing the first amended complaint.])

22           Herrera's second mortgage was serviced by Ocwen.  It was subject to California's anti-

23   deficiency statute, Code of Civil Procedure § 580b.  That statute prohibits a lender "from

24   obtaining a deficiency judgment against a purchaser in a purchase money secured land

25   transaction."   Under § 580b, the lender must look solely to the security itself, i.e., the land, and

26   no personal judgment may be recovered.  Ocwen does not dispute that § 580b applies to

27   Herrera's second mortgage. (Order, p. 5; doc. 33.)

28           Ocwen possessed information showing that Herrera's second mortgage was subject to §

-1-

1  580b; nonetheless, it sent collection letters to Ms. Herrera that disregarded the provisions of §

2  580b.  For example, Ocwen had known of the foreclosure on Ms. Herrera's first mortgage for

3  five months when it sent Ms. Herrera a letter threatening to foreclose on her second loan. Ms.

4  Herrera alleges that letter and others sent by Ocwen violated California's Rosenthal Fair Debt

5  Collections Practices Act, which prohibits, among other things, threats to take action that cannot

6  legally be taken, like Ocwen's threat to foreclose on Ms. Herrera's second loan.  Ocwen later

7  transferred Ms. Herrea's second mortgage to another servicer, codefendant LCS.  Ms. Herrera

8  alleges that LCS's collection efforts were also misleading, false and deceptive.

9      Ms. Herrera brings this case as a class action, seeking to represent two classes.  The first

10  consists of California residents meeting the following conditions: (1) person who obtained a loan

11  subject to Section 580b; (2) the real property that secured the loan was sold in foreclosure; and

12  (3) LCS tried to collect on that loan after the foreclosure in a manner that violated the FDCPA.[1]

13  The second class consists of California residents meeting the following conditions:   (1) person

14  who obtained a loan subject to Section 580; (2) the real property that secured the loan was sold

15  in foreclosure; and (3) Ocwen tried to collect on that loan after the foreclosure in a manner that

16  violated the FDCPA and therefore the Rosenthal Act.   (First amended class action complaint,

17  doc. 16, pp. 6-7.)

18      B.     **Summary of the Motion**

19      By this motion, plaintiff Mercedes Herrera seeks an order compelling Ocwen to:

20  ●     Identify potential class members (Interrogatories 1, 2);

21  ●     Provide several categories of information about the potential class members

22        (Interrogatories 1 - 7);

23  ●     Identify employees who worked on its § 580b compliance procedures

24        (Interrogatory 9), and who have knowledge of Ocwen's affirmative defenses

25

26  _____

27  [1] Ms. Herrera sues LCS under the Federal Fair Debt Collections Practices Act (FDCPA) and Ocwen under the FDCPA's California analog, the Rosenthal Act.  The acts define the term "debt collector" differently such that LCS falls within the federal law, while Ocwen is only

28  covered by the state statute.

-2-

(Interrogatory 10);

● Provide documents related to Ms. Herrera and her loan, which was transferred between Ocwen and codefendant LCS (Request 5), and copies of whatever agreements govern the relationship between Ocwen and LCS (Request 6); and,

● Provide all documents in its possession that are or relate to correspondence related to § 580b from debtors (Request 13) and other persons (Request 14).[2]

## C.   **Arguments**

This section sets out Ms. Herrera's discovery requests and Ocwen's answers, explains Ms. Herrera's need for the discovery at issue, and argues that Ocwen's objections should be rejected and the discovery ordered.

### 1.   Interrogatories 1 through 7 seek relevant information regarding § 580b covered loans, class members, and Ocwen's affirmative defenses.

Interrogatories 1 through 7 seek discovery regarding § 580b covered loans serviced or transferred to other debt collectors by Ocwen and the identity of potential class members.

**Interrogatory 1:**  For each purchase money mortgage loan that you have attempted, since June 25, 2008, to collect on after the property securing the loan was foreclosed upon, please identify (a) the name of the borrower, (b) the loan number or other identifying number, (c) the current repayment status, (d) the payment history, (e) the date of foreclosure, and (f) the amount of money you collected, if any, after foreclosure.

**Ocwen's Answer:**  Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen further objects to this interrogatory on the grounds that it is vague and ambiguous, particularly with respect to the undefined phrase "collect on."  Ocwen further objects to this interrogatory on the grounds that it is compound.  Ocwen objects to this interrogatory on the grounds that it seeks confidential personal information about other Ocwen borrowers in violation of applicable federal and state privacy laws, including but not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802, et seq. Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome for numerous reasons, including but not limited to seeking the payment histories of the loans of numerous other individuals.  Ocwen further objects on the grounds that this interrogatory seeks information that is irrelevant to the subject matter of this litigation, including but not limited to the loan payment histories of absent individuals and other information about their loans that has no bearing on plaintiff's claims or on the issue of class

---

[2] This discovery and Ocwen's responses are exhibits 1 - 6 to the declaration of Christopher Brancart [Brancart Dec.] ¶ 3.) All exhibits to this motion are attached to the declaration of Christopher Brancart.  The exhibits are identified and authenticated in ¶ 3 of the declaration.

certification.

Subject to and without waiving the foregoing General and Specific Objections, Ocwen states:   Ocwen does not possess the information sufficient to permit it to respond to this interrogatory.  In particular, because plaintiff has defined "Purchase Money Mortgage" to include any loan "subject to California Code of Civil Procedure § 580b," Ocwen is unable to ascertain which loans meet this description.  Specifically, Ocwen does not originate loans and did not originate plaintiff's loan.  Ocwen acquires servicing rights to mortgage loans, in some cases directly from the originator, but in many cases from an assignee other than the originator.  In connection with this process, Ocwen is not provided with information regarding wether the loan at issue is a purchase money mortgage or a refinancing transaction.  Accordingly, Ocwen does not possess information sufficient to permit it to determine which loans, if any, meet the criteria described by plaintiff in this interrogatory.

By this interrogatory, Ms. Herrera seeks to identify which loans Ocwen tried to collect on during the class period that fit the class definition.   It seeks the borrower's name, loan number, repayment status, payment history, date of foreclosure, and the amount of money Ocwen collected following the foreclosure on the first mortgage, the triggering event for § 580b coverage.   Ocwen appears to have this information.  For example, Ocwen produced a print-out for Ms. Herrera's loan (Brancart Dec., Exhibit 12) that contains the information sought by interrogatories 1 through 7.

This information is not only available but also relevant.   It is needed to identify class members, to determine the size of the class, and to determine damages.   For the class, money collected by Ocwen from loans covered by § 580b is recoverable under the Rosenthal Act as actual damages under § 1788.30(a) of the Rosenthal Act.  For Herrera, her damages depend in part on the number and frequency of Ocwen's unlawful debt collection practices. Cal. Civ. Code § 1788.30(b).

**Interrogatory 2:** For each purchase money mortgage loan that, since June 25, 2008, you assigned, sold, or transferred to a third party debt collector (including defendant LCS) after the property securing the loan was foreclosed upon, please identify (a) the borrower, (b) the loan number or other identifying number, (c) the date of sale, assign, or transfer, (d) the third party debt collector, (e) the date of foreclosure, (f) whether you notified the third party debt collector that § 580b applied to the loan, (g) if so, the date you notified the third party debt collector, and (h) the amount of money you have received in connection with each loan, if any, from the third party debt collector since the loan was assigned, sold, or transferred.

**Ocwen's Answer:**  Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen further objects to this interrogatory on the grounds that it is vague and ambiguous,

-4-

particularly with respect to the undefined phrase "collect on."  Ocwen further objects to this interrogatory on the grounds that it is compound.  Ocwen objects to this interrogatory on the grounds that it seeks confidential personal information about other Ocwen borrowers in violation of applicable federal and state privacy laws, including but not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802, et seq. Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome for numerous reasons, including but not limited to seeking the payment histories of the loans of numerous other individuals.  Ocwen further objects on the grounds that this interrogatory seeks information that is irrelevant to the subject matter of this litigation, including but not limited to the loan payment histories of absent individuals and other information about their loans that has no bearing on plaintiff's claims or on the issue of class certification.

Subject to and without waiving the foregoing General and Specific Objections, Ocwen states:  Ocwen does not possess the information sufficient to permit it to respond to this interrogatory.  In particular, because plaintiff has defined "Purchase Money Mortgage" to include any loan "subject to California Code of Civil Procedure § 580b," Ocwen is unable to ascertain which loans meet this description.  Specifically, Ocwen does not originate loans and did not originate plaintiff's loan.  Ocwen acquires servicing rights to mortgage loans, in some cases directly from the originator, but in many cases from an assignee other than the originator.  In connection with this process, Ocwen is not provided with information regarding wether the loan at issue is a purchase money mortgage or a refinancing transaction.  Accordingly, Ocwen does not possess information sufficient to permit it to determine which loans, if any, meet the criteria described by plaintiff in this interrogatory.

This interrogatory seeks information similar to that sought by interrogatory number 1, and for the same reasons.  It asks Ocwen to identify each  loan subject to § 580b that it transferred or assigned to another debt collector, like codefendant LCS.   For each loan, it asks if and when Ocwen gave notice of § 580b to other debt collectors, and how much money Ocwen received from collections after the transfer.  This information will identify members of both classes Ms. Herrera seeks to represent.   It is also relevant in determining whether Ocwen engaged in unlawful debt collection practices.   If Ocwen gave other debt collectors, but not debtors,  notice of § 580b, then an inference may be drawn that Ocwen knew about the application of § 580b, but withheld that information from debtors.  This inference rebuts Ocwen's bona fide error defense, discussed below.

This information is also relevant to Ms. Herrera's damages and class damages.  The California Fair Debt Collection Practices Act, under which Ms. Herrera sues Ocwen, has incorporated the class action remedies available under the federal Fair Debt Collection Practices Act. *Gonzales v. Arrow Financial Services, LLC*, 233 F.R.D. 577, 580 (S.D.Cal. 2006). The

-5-

1  remedies available in a class action under the federal Fair Debt Collection Practices Act are set

2  out at 15 U.S.C. §1692k(a), and include a civil penalty capped at the lesser of $500,000 or 1% of

3  the net worth of the defendant. In determining the amount of civil penalty to award, the court is

4  to consider the factors set out at 15 U.S.C. §1692k(b)(2), including "the frequency and

5  persistence of noncompliance by the debt collector, the nature of such noncompliance, the

6  resources of the debt collector, the number of persons adversely affected, and the extent to which

7  the debt collector's noncompliance was intentional."

8  **Interrogatory 3:** For each loan identified in response to interrogatories 1 and 2, please
9  state when and how you became aware that the property securing the loan had been
   foreclosed on.

10  **Ocwen's Answer:** Ocwen objects to this interrogatory to the extent it seeks information
    protected by the attorney-client privilege and/or attorney work product doctrine. Ocwen
11  further objects to this interrogatory on the grounds that it is vague and ambiguous.
    Ocwen objects to this interrogatory on the grounds that it seeks confidential personal
12  information about other Ocwen borrowers in violation of applicable federal and state
    privacy laws, including but not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. §
13  6802, et seq. Ocwen further objects on the grounds that this interrogatory is overbroad
    and burdensome. Ocwen further objects on the grounds that this interrogatory seeks
14  information that is irrelevant to the subject matter of this litigation.

15  Subject to and without waiving the foregoing General and Specific Objections. Ocwen
    states: For the same reasons Ocwen cannot identify loans in response to interrogatory
16  Nos. 1 and 2 (its responses to which are incorporated herein by reference), Ocwen cannot
    provide the information sought by this interrogatory.
17

18  This interrogatory seeks more information about each of the loans identified in response

19  to interrogatory numbers 1 and 2; specifically, how and when Ocwen became aware that a

20  property securing a second mortgage had been foreclosed by the first mortgage holder, a

21  triggering event for §580b coverage. This information is also relevant to Ocwen's twelfth

22  affirmative defenses (answer, Doc. 34; p. 7), the so-called bona fide error defense, which

23  provides a partial defense where a debt collector can show that a violation was unintentional and

24  occurred notwithstanding procedures "reasonably adapted" to prevent the violation. Foreclosure

25  information is necessary to determine if a loan is subject to § 580b. Whether, how and when

26  Ocwen learns of foreclosures is relevant to whether its procedures are "reasonably adapted" to §

27  580b.

28  **Interrogatory 4:** For each loan identified in response to interrogatories 1 and 2, please

identify by case or other number, date of filing, and type (i.e. civil complaint, notice of lien, acceleration, notice of default) all legal process initiated by you after the date the property securing the loan was foreclosed upon.

**Ocwen's Answer:** Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Ocwen further objects to this interrogatory on the grounds that it is vague and ambiguous, particularly with respect the undefined phrase "legal process." Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Ocwen further objects to this interrogatory on the grounds that it is vague and ambiguous. Ocwen objects to this interrogatory on the grounds that it seeks confidential personal information about other Ocwen borrowers in violation of applicable federal and state privacy laws, including but not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802, et seq. Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome. Ocwen further objects on the grounds that this interrogatory seeks information that is irrelevant to the subject matter of this litigation. Subject to and without waiving the foregoing General and Specific Objections. Ocwen states: For the same reasons Ocwen cannot identify loans in response to interrogatory Nos. 1 and 2 (its responses to which are incorporated herein by reference), Ocwen cannot provide the information sought by this interrogatory.

This Interrogatory seeks to identify any legal process initiated by Ocwen to collect on loans identified in response to interrogatories 1 and 2. This information is needed to rebut Ocwen's bona fide error defense. If, for example, Ocwen often took steps to initiate collection actions following foreclosures on second mortgages after foreclosure by the first mortgage holder, then its procedures were not "reasonably adapted" to the requirements of § 580b.

**Interrogatory No. 5:** For each loan identified in response to interrogatory 1, please describe how your efforts to collect on that loan changed following the foreclosure on the property securing the loan.

**Ocwen's Answer:** Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Ocwen further objects to this interrogatory on the grounds that it is vague and ambiguous, particularly with respect to its use of the phrase "collect on." Ocwen objects to this interrogatory on the grounds that it seeks confidential personal information about other Ocwen borrowers in violation of applicable federal and state privacy laws, including but not limited to the Gramm-Leach- Bliley Act, 15 U.S.C. § 6802, et seq. Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome. Ocwen further objects on the grounds that this interrogatory seeks information that is irrelevant to the subject matter of this litigation.

Subject to and without waiving the foregoing General and Specific Objections. Ocwen states: For the same reasons Ocwen cannot identify loans in response to interrogatory Nos. 1 and 2 (its responses to which are incorporated herein by reference), Ocwen cannot provide the information sought by this interrogatory.

This interrogatory asks Ocwen to describe how Ocwen's collection efforts changed after

it learned a loan had become subject to § 580b.  This information helps rebut Ocwen's bona fide error defense.  If Ocwen made no changes, then its defense likely fails.

**Interrogatory 6:**  For each loan identified in response to interrogatory 1, please describe each method used by you to attempt to collect on the loan after the property securing the loan was foreclosed on.

**Ocwen's Answer:**  Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen further objects to this interrogatory on the grounds that it is vague and ambiguous, particularly with respect to its use of the phrase "collect on."  Ocwen objects to this interrogatory on the grounds that it seeks confidential personal information about other Ocwen borrowers in violation of applicable federal and state privacy laws, including but not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802, et seq.  Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome.  Ocwen further objects on the grounds that this interrogatory seeks information that is irrelevant to the subject matter of this litigation.

Subject to and without waiving the foregoing General and Specific Objections.  Ocwen states:   For the same reasons Ocwen cannot identify loans in response to interrogatory Nos. 1 and 2 (its responses to which are incorporated herein by reference), Ocwen cannot provide the information sought by this interrogatory.

This interrogatory is similar to interrogatory 5.  It asks Ocwen to describe its post-foreclosure collection methods, which include the letters it sends to borrowers.  If the log Ocwen produced for Ms. Herrera's loan is typical, then Ocwen's logs identify which form letters are sent to the borrower and when.  (Brancart Dec., Exhibit 12.)  Whether the letters contain language that is deceptive or misleading will determine Ocwen's liability.

**Interrogatory 7:**     For each loan identified in response to interrogatories 1 and 2, please state whether you contend that the borrower on the loan received any notice from you that no deficiency judgment could be obtained with respect to the loan.

**Ocwen's Answer:**   Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen further objects to this interrogatory on the grounds that it seeks confidential personal information about other Ocwen borrowers in violation of applicable federal and state privacy laws, including but not limited to the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802, et seq.  Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome.  Ocwen further objects on the grounds that this interrogatory seeks information that is irrelevant to the subject matter of this litigation.  Ocwen further objects to this interrogatory to the extent it suggest (sic) that Ocwen was required to notify any particular borrower that it could not obtain a deficiency judgment against that borrower with respect to a particular loan.

Subject to and without waiving the foregoing General and Specific Objections.  Ocwen states:   For the same reasons Ocwen cannot identify loans in response to interrogatory Nos. 1 and 2 (its responses to which are incorporated herein by reference), Ocwen cannot provide the information sought by this interrogatory.

-8-

1

2        This interrogatory seeks information relevant to defining the class.   It also seeks

3   information needed to rebut Ocwen's bona fide error defense.   It asks whether Ocwen gave any

4   of the potential class members notice that it could not obtain a deficiency judgment against them.

5   Failure to provide that information is relevant in deciding whether Ocwen's procedures were

6   "reasonably adapted" to avoid deceiving or misleading debtors about their rights under § 580b.

7   It also bears on whether Ocwen's efforts to collect on loans covered by the statute were

8   intentional.  If Ocwen notified debtors of the existence and application of § 580b, then an

9   inference may be drawn in Ocwen's favor.  If it failed to provide that notice, then an inference

10  may be drawn against it.  That inference is relevant to damages. (See above at p. 6.)

11            **a.**     **Ocwen's objections based on undue burden should be rejected.**

12       Ocwen's primary objection to interrogatories 1 through 7 are based on its position that

13  determining which of the loans that it services are subject to § 580b would unduly burden it.

14  This objection should be rejected for three reasons.  First, Ocwen acknowledges that it possesses

15  certain information needed to determine which of its loans are subject to § 580b.  Second, a

16  company as well-resourced and technologically sophisticated as Ocwen is unlikely to be

17  burdened by answering these interrogatories.  And third, Ocwen cannot rely on a burden created

18  by its own record-keeping system to defeat discovery.

19            **i.**     **Ocwen maintains the information necessary to provide a**

20                 **response to these interrogatories.**

21       Whether a loan is subject to § 580b depends on three things.  For the statute to apply, the

22  loan must have been for (i) the purchase of (ii) the debtor's primary residence, which (iii) has

23  undergone foreclosure.  Ocwen has this information.  As part of the meet and confer process,

24  Ocwen represented as follows:

25       •    **Purchase Money.**  Ocwen asserts that it does not input into its database whether

26  a mortgage is for purchase money or refinance, but it does have Uniform Residential Loan

27  Applications (URLA) for some of the loans it services.  (Brancart Dec., Exhibit 11.)  The

28  URLAs reflect whether a loan is for purchase money of a primary residence.  (*See e.g.* Brancart

Dec., Exhibit 13.)

• **Debtor's Primary Residence.** In addition to URLAs, Ocwen possesses "information regarding the owner-occupancy status of properties." (Brancart Dec., Exhibit 11.) Ocwen also keeps a property address and a borrower address in its files. (Brancart Dec., Exhibit 12.) A match between those two address is one indication that the property is owner-occupied.

• **Foreclosure of First Mortgage.** Ocwen sometimes services a debtor's first and second mortgages. In these instances, Ocwen knows whether the security for the second mortgage has been extinguished by a foreclosure on the first mortgage. But, where Ocwen services a second mortgage only, it claims that it is "often unaware" of foreclosure on the first mortgage, but did not say how often. (Brancart Dec., Exhibit 11.) For example, Ocwen was aware of Ms. Herrera's foreclosure, even though it only serviced her second mortgage. (Brancart Dec., Exhibit 12.)

Based on Ocwen's representations, Ms. Herrera acknowledges that Ocwen may not possess complete information that answers each of her discovery request. But information that is responsive to discovery, albeit imperfect or incomplete, is nonetheless discoverable, and Ms. Herrera request that that information be provided.

## ii. Ocwen has produced no evidence to suggest that answering these interrogatories would be a burden *to it*.

During the meet and confer conference, Ocwen asserted that responding to Ms. Herrera's discovery would be unduly burdensome. Two factor undercut that objection. First, Ocwen is a wealth company. And second, Ocwen became a wealthy by developing and refining industry-leading information technology systems that may enable it to generate the information sought here.

Ocwen's servicing business generates hundreds of millions of dollars in yearly revenue, has over one thousand employees, and enjoys an entire 30,000 square foot facility dedicated to

"document storage and imaging."[3] Its technological resources are similarly vast.   Ocwen's

"servicing platform (i.e. its loan database technology) runs proprietary information technology,

developed over a 20-year period at a cost of more than $140,000,000." (Brancart Dec., Exhibit

14, p. 4) licenses that technology in the form of a suite of applications to other mortgage-industry

companies.  In 2009, there were 270 software developers working on these products.[4]  (Form

10-K - Exh. 14, p. 4.)  Ocwen licenses this technology to others in the mortgage industry.  In

2009 alone, Ocwen earned $28,331,000 through the sale of its mortgage technology products.

(Form 10-K - Exh. 14, p. 32.)  It claims to be a recognized leader in providing information

technology solutions to the mortgage industry.  (Brancart Dec., Exhibit 15.)  "Mortgage-related

technology" is part of  Ocwen's core business (Brancart Dec., Exhibit 16) and one of its

"competitive strengths." (Form 10-K - Exh. 14, p. 4.)  Its advertising for these products suggests

that, far from being a burden, locating and manipulating the information Ms. Herrera seeks is

Ocwen's speciality.  As early as 2005, Ocwen claimed that its data management processes

enabled it to shave "days – if not weeks – off the traditional due diligence process" for mortgage

backed securities investors by using "high-speed scanners" and its "document imaging

capabilities" to do "loan-by-loan, mini-bulk, [and] bulk" jobs.  (Brancart Dec., Exhibit 17.)  In

light of its size and technological sophistication, Ms. Herrera is skeptical that Ocwen can

produce evidence that answering her discovery will unduly burden it.

---

[3] According to Ocwen Form 10-K - Brancart Dec., Exh. 14 ["Exh. 14']: Ocwen is "one of the largest servicers of subprime residential mortgage loans." (Form 10-K - Exh. 14, p. 6.) Its largest concentration of loans is in California, where services 38,008 loan, comprising 11% of its total inventory. (Id.) Its servicing division alone had revenues of $272,725,000 in 2009, $340,725,000 in 2008, and $343,648,000 in 2007.  (Form 10-K - Exh. 14, p. 32.)  Ocwen Financial Corporation, the holding company of which defendant Ocwen Loan Servicing LLC is a wholly-owned subsidiary, has 1,894 employees, 86% of whom work in servicing.  (Form 10-K - Exh. 14, p. 10.)  The company has a 30,000 square foot facility dedicated to "document storage and imaging" for loan documents, such as URLAs.  (Form 10-K - Exh. 14, p. 19.)

[4] Ocwen spun-off a new company, Altisource, in August 2009.  Altisource now appears to handle the development of Ocwen's suite of mortgage related software applications, but continues to offer support and service to Ocwen, its largest customer. (Form 10-K - Exh. 14, pp. 4, 9.)

1
          **iii.    Ocwen cannot claim undue burden based on its own record-**

2
                  **keeping choices.**

3
      Ocwen acknowledges that it has, in some form and to some extent, the three types of

4
information necessary to determine which of the loans it services are subject to § 580b (and thus

5
responsive to interrogatories 1 through 7). (Section II.B.1.a., above.)  But Ocwen claims that that

6
information is not readily available in its databases, and to retrieve that information would,

7
therefore, be unduly burdensome.

8
      Courts have consistently rejected this species of argument, holding that a litigant cannot

9
avoid relevant discovery based on a claim of undue burden where the burden is a  product of the

10
manner or method in which that litigant decided to maintain its files.  To allow a litigant with an

11
unwieldy record-keeping system to claim undue burden as a result of that system would defeat

12
the purpose of the discovery rules. *Kozlowski v. Sears, Roebuck & Co.* 73 F.R.D. 73, 76 (D.C.

13
Mass 1976); accord *Baxter Travenol Laboratories, Inc. v. LeMay*, 93 F.R.D. 379, 383 (D.C.

14
Ohio 1981)("In cases involving similar discovery requests, courts have held that an unwieldy

15
record-keeping system, which requires heavy expenditures in money and time to produce

16
relevant records, is simply not an adequate excuse to frustrate discovery.")' *Baine v. General*

17
*Motors Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991)("Nor can the lack of an adequate filing

18
system insulate a party from discovery."); *Wagner v. Dryvit Sys. Inc.* 208 F.R.D. 610-11

19
(D.Neb.2001)("The fact that a corporation has an unwieldy record keeping system which

20
requires it to incur heavy expenditures of time and effort to produce requested documents is an

21
insufficient reason to prevent disclosure of otherwise discoverable information.")

22
      *Kozlowski v. Sears* illustrates the point.  There, a customer bought pajamas from Sears

23
and then sued the retailer after his purchase turned out to be flammable.  The customer asked

24
Sears to produce records of similar consumer complaints. *Sears*., 73 F.R.D. at 73-76. Sears

25
objected, claiming the request was unduly burdensome.  Sears explained that it could not readily

26
locate similar complaints because its files were organized alphabetically, by the name of the

27
complainant.  Sorting through those complaints to find the responsive information would be "the

28
equivalent of an impossible task," Sears argued. *Sears*., 73 F.R.D. at 77-76.  But the Court was

1    not persuaded:

2         The defendant may not excuse itself from compliance with Rule 34, Fed.R.Civ.P., by

3         utilizing a system of record-keeping which conceals rather than discloses relevant

4         records, or makes it unduly difficult to identify or locate them, thus rendering the

5         production of the documents an excessively burdensome and costly expedition. To allow

6         a defendant whose business generates massive records to frustrate discovery by creating

7         an inadequate filing system, and then claiming undue burden, would defeat the purposes

8         of the discovery rules.

9    *Sears*, 73 F.R.D. at 76.  Here, Ocwen's objections are similar to Sears'.  Ocwen, like Sears, has

10   been asked for relevant information through discovery.  And Ocwen, like Sears, asks to be

11   excused from producing that information because its record-keeping system makes it difficult to

12   locate.  If Sears' decision to organize files alphabetically did not justify an undue burden

13   objection, then Ocwen's failure to make its database capable of easily locating loans subject to §

14   580b should not justify that same objection.

15        Finally, it is unclear what Ocwen, a company with 11% of its servicing portfolio (over

16   38,000 loans) located in California and thus subject to § 580b, sought to gain by designing its

17   database system in a manner that overlooked information in its possession that would help it

18   comply with § 580b.  (Brancart Dec., Exhibit 14.)

19                      **b.    Ocwen's privacy objections should be rejected.**

20        Ocwen's privacy objections to these interrogatories should be rejected on three grounds.

21        First, the parties have stipulated (doc. 48) and the Court has entered (doc. 49) the

22   Northern District's standard protective order.   That order balances the rights of the parties,

23   protecting Ocwen and its customer's interests in privacy and Herrera's need for the information

24   sought.   Accounting for the protective order, the privacy interest that a potential class member

25   has in her name, address, and loan information is outweighed by Ms. Herrera's need for that

26   information to make her case.  If further protection is needed, then Ms. Herrera is open to

27   providing that protection.

28        Second, Ocwen's objection is based on its concern for its borrowers' privacy.  But

                                          -13-

1   potential class members, who may still be paying Ocwen under the mistaken impression that it

2   could obtain deficiency judgments against them, might dispute Ocwen's assertion that they

3   would put rather keep their names, contact, and loan information private than obtain damages.

4       Third, the information sought – name, contact, and loan information – is not particularly

5   sensitive in the first place.  Disclosure of name and contact information, and even social security

6   numbers (which Ms. Herrera is not seeking), is not unusual in the class action context.  *See e.g.*

7   *Belaire-West Landscape, Inc. v. Superior Court,* 149 Cal.App.4th 554, 561-562 (Cal.App. 2 Dist.

8   2007); *Khalilpour v. CELLCO Partnership,* 2010 WL 1267749, 3 (N.D.Cal.,2010).

9                    **c.   The form and format of the information sought.**

10      Ms. Herrera has lodged a proposed order concurrently with this motion.  The proposed

11  order, if adopted, will require Ocwen to respond to these interrogatories by producing an

12  electronic spreadsheet.  Since Ocwen appears to have this information in electronic form, it

13  makes sense to keep it that way.  Requiring Ocwen to transcribe or print-out the information

14  would, in turn, force plaintiff's counsel to then re-enter it into some form of spreadsheet so that it

15  could be analyzed.  That would waste effort, and re-entering the data could lead to data-entry

16  errors.

17      The spreadsheet would include each loan serviced by Ocwen that does belong to a

18  potential class member and each loan serviced by Ocwen that may belong to a potential class

19  member.  In other words, Ocwen can only exclude a loan from the spreadsheet if it is sure that

20  the loan does not belong to a potential class member.  Plaintiff's counsel can then use public

21  records to determine whether the "maybes" are, in fact, putative class members.  (Brancart Dec.

22  ¶¶ 5-6.) Ms. Herrera believes this method is more equitable than limiting the production to only

23  those loans where Ocwen can be sure the loan belongs to a potential class member.  Ocwen's

24  database-design choices should not defeat the claims of potential class members.

25          **2.   The witness-identification information sought by interrogatories 9**

26                **and 10 is relevant and should be produced.**

27      Ms. Herrera asks Ocwen to identify those who created the company's § 580b compliance

28  procedures (interrogatory 9) and to identify those persons with knowledge of the company's

                                   -14-

affirmative defenses (interrogatory 10). Ocwen provided no information in response, objecting

on relevance and burden grounds.

> **Interrogatory 9:** Please identify by name, job title, dates of employment, last known address, and phone number all the people involved in creating each procedure you have had in effect since June 25, 2008, in connection with California Code of Civil Procedure § 580b.
>
> **Ocwen's Answer:** Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Ocwen further objects on the grounds that this interrogatory is overbroad and burdensome. Ocwen further objects on the grounds that this interrogatory seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. In particular, the requested information regarding individual personnel (including their addresses, phone numbers, and other information) who were "involved" in creating various procedures at Ocwen is overbroad, burdensome, and has no bearing on the merits of plaintiff's claims or the issue of whether a class may be certified.
>
> **Interrogatory 10:** Please identify by name, job title, dates of employment, last known address, and phone number all the people with knowledge of facts supporting each of your affirmative defenses.
>
> **Ocwen's Answer:** Ocwen objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Ocwen further objects to this interrogatory is overbroad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence, particularly in so far as it requests detailed information regarding individual personnel (including their addresses, phone numbers and other information). Subject to and without waiving the foregoing General and Specific Objections, Ocwen states: Pursuant to Fed. R. Civ. P. 33(d), Ocwen will produce documents sufficient to evidence each of its affirmative defenses.

These interrogatories ask Ocwen to identify witnesses who have knowledge of its § 580b policies and its affirmative defenses, topics that are may overlap. Ocwen argues that, while these topics are relevant, the identities of knowledgeable witnesses are not. This argument is contrary to Rule 26(b)(1) of the Federal Rules of Civil Procedure. The rule explicitly allows discovery of "the identity and location of persons who know of any discoverable matter." Accordingly, Ocwen's relevance objection should be overruled.

Ocwen also objects that locating these persons would be unduly burdensome. This is unlikely. As discussed above, it seems improbable that identifying witnesses, most of whom are probably its employees, could burden a company as well-resourced as Ocwen.

Finally, Ocwen objects to these interrogatories as overbroad. Not so. Each person who was involved in creating Ocwen's § 580b may have unique knowledge that bears on Ocwen's

-15-

1   bona fide error defense (i.e. whether its policies are "reasonably adapted" for compliance).

2   Likewise, the identity of each person with knowledge of Ocwen's affirmative defenses is within

3   the scope of discovery, each person may lead Ms. Herrera to the discovery of admissible

4   evidence.

5        Throughout the meet and confer conference and in their response to interrogatory 10,

6   Ocwen has taken the position that Ms. Herrera will get all the information she needs from the

7   documents Ocwen chooses to produce in support of its affirmative defenses and its Rule 30(b)(6)

8   corporate representatives.  But no litigant is required to trust their opponent, and discovery is not

9   limited to what the other party wants to disclose.  Nor is it a burden to be asked to produce more

10  than one's case-in-chief.  Ms. Herrera has a right to test Ocwen's defenses and to depose

11  witnesses with relevant knowledge under Rules 30 and 45 of the Federal Rules of Civil

12  procedure. Ocwen's objections to the contrary  should be overruled.

13              **3.**     **The Ocwen-LCS documents are relevant and should be produced.**

14       Request 5 asks Ocwen for documents related to Ms. Herrera or her loan that passed

15  between it and co-defendant LCS.  Request 6 asks for any agreements between LCS and Ocwen.

16  Ocwen objected that neither category of documents is relevant.  During the meet and confer

17  process, Ocwen's counsel said it would "inquire" into what "fields of data would have been

18  transmitted from Ocwen to LCS" in connection with Ms. Herrera's loan but has not agreed to

19  produce this information.  (Brancart Dec., Exhibit 11.)

20       **Request 5:**  All documents and ESI exchanged between you and defendant LCS that
21       relate to Mercedes Herrera, including those that relate to her foreclosure, her loan, the
         assignment of her loan by you to LCS, and to this lawsuit.

22       **Ocwen's Response:** Ocwen objects to this request on the grounds that it is overbroad.
         Ocwen further objects on the grounds that this request is not reasonably calculated to lead
23       to the discovery of admissible evidence, particularly in so far as this lawsuit concerns the
         content of communications between Ocwen and the plaintiff (or between LCS and the
24       plaintiff), not communications between Ocwen and LCS themselves.

25       **Request  6:**  A copy of all contracts in effect between you and defendant LCS from the
         time Mercedes Herrera's loan was assigned by you to LCS to the time this lawsuit was
26       filed.

27       **Ocwen's Response:**  Ocwen objects on the grounds that this request is overbroad and not
         reasonably calculated to lead to the discovery of admissible evidence, particularly in so
28       far as this lawsuit concerns the content of communications between Ocwen and the

1   plaintiff (or between LCS and the plaintiff), not the relationship between Ocwen and
2   LCS. As such, the requested documents have no bearing on the subject matter of this
    litigation.

3              **a.      Ocwen's relevance objection is premised on Ocwen's liability**
4                      **being the only issue in this case, which it is not.**

5          Ocwen believes that these documents are irrelevant because the issues in this case "turn[]

6   on the content of communication between plaintiffs and defendants. They do not turn upon

7   communications between defendants." (Brancart Dec., Exhibit 7.) "[P]laintiff's claims depend

8   upon whether the content in defendant's communications to plaintiff is false, deceptive, or

9   misleading within the meaning of the Rosenthal FDCPA or the federal FDCPA." (Id.) But

10  that's just Ocwen's liability, which is not the only issue in the case. Other factors will determine

11  Ms. Herrera's statutory damages, co-defendant LCS's liability, and both defendants' bona fide

12  error defenses. The requested documents could be, or could lead to, admissible evidence on any

13  or all of those issues. The documents related to Ms. Herrera and sent between Ocwen and LCS

14  may, for example, include the information either would have needed to know that Ms. Herrera's

15  loan was subject to § 580b. If LCS received, and then ignored, this information, it could show

16  that its procedures are not "reasonably adapted" to compliance with § 580b. It is also possible

17  that a contract or agreement between LCS and Ocwen might contain provisions with respect to §

18  580b loans.

19             **b.      Ocwen's remaining objection, if valid, does not excuse**
20                      **compliance.**

21         Ocwen has also called these requests overbroad. But this objection does not bar

22  production. Answering parties cannot rest on a breadth objection, but must respond to the extent

23  not objectionable. In other words, Ocwen must, at least, respond to the extent the request calls

24  for relevant documents.

25             **4.     The § 580b-Correspondence and Related Documents sought by**
26                     **requests 13 and 14 should be produced.**

27         This discovery seeks communications about § 580b and related documents sent to Ocwen

28  by borrowers (request 13) and anyone else (request 14). Ocwen objected to both requests on

                                              -17-

relevance grounds.  It also objected to the borrower-request because it was not limited to the

class period.  At the close of the meet and confer process Ocwen produced a handful of

responsive, but heavily redacted, letters.  (Brancart Dec., Exhibit 18.)  Ocwen said that these

letters were what if could find after a "reasonable" search.  (Brancart Dec., Exhibit 11.)

**Request 13:**  All documents and ESI that reflect borrowers contacting you regarding California Code of Civil Procedure § 580b since June 25, 2008, including the communications themselves.

**Ocwen's Response:** Ocwen objects to this interrogatory (sic) to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen further objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence, particularly in so far as other borrowers' communications with Ocwen, if any, regarding the statute, have no bearing on plaintiff's claims.  Ocwen further objects to this request to the extent it is overbroad by failing to limit the "borrowers" described in the letter (sic) to members of plaintiff's proposed putative class.  Ocwen further objects to the request on the grounds that it is burdensome; Ocwen cannot search communications from individual borrowers without doing a loan-by-loan file review, and certainly cannot undertake such a review with respect to the literally hundreds of thousands of loans it services, particularly in light of the lack of relevance the requested communications have to plaintiff's claim.

**Ocwen's Supplemental Response:** Ocwen Objects to this interrogatory (sic) to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen further objects to this request to the extent it is not reasonably calculated to lead to the discovery of admissible evidence, particularly in so far as other borrowers' communications with Ocwen, if any, regarding the statute, have no bearing on plaintiffs' claims.  Ocwen further objects to this request to the extent it is overbroad by failing to limit the "borrowers" described in the request to members of the plaintiff's proposed putative class.  Ocwen further objects to the request on the grounds that it is burdensome; Ocwen cannot search communications from individual borrowers without doing a loan-by-loan file review, and certainly cannot undertake such a review with respect to the literally hundreds of thousands of loans it services, particularly in light of the lack of relevance the requested communications have to plaintiff's claims. Subject to and without waiving the foregoing objections, Ocwen will produce documents that reflect borrowers contacting Ocwen regarding California Code of Civil Procedure Section 580b since June 25, 2008 that Ocwen is able to locate through a reasonable search.

**Request 14:** All documents and ESI that reflect persons or entities other than borrowers contacting you regarding California Code of Civil Procedure § 580b since June 25, 2008, including the communications themselves.

**Ocwen's Response.**  Ocwen objects to this interrogatory (sic) to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen objects to this interrogatory (sic) on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence and has no relevance to the claim or defense of any party, nor the subject matter of this litigation.

**Ocwen's Supplemental Response:** Ocwen objects to this interrogatory (sic) to the

extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Ocwen objects to this interrogatory (sic) on the grounds that it seeks information not reasonably calculated to lead to the discovery of admissible evidence and has no relevance to the claim or defense of any party, nor the subject matter of this litigation.

Subject to and without waiving the foregoing objections, Ocwen will produce documents that reflect entities other than borrowers contacting Ocwen regarding California Code of Civil Procedure Section 580b since June 25, 2008 that Ocwen is able to locate through a reasonable search.

### a.      All the requested communications are relevant, not just those that borrowers sent in after the class period began.

Ocwen argues that *only* communications sent by borrowers during the class period are relevant.  Not so.  All the requested documents are relevant, and Ocwen's time-limitation is improper.

Those that come from potential class members are relevant to class certification, at least. Those that come from third parties, like attorneys or public interest groups (like Ms. Herrera's counsel, Housing and Economic Rights Advocates) are relevant because they allow Ms. Herrera to follow-up on that communication by identifying and interviewing witnesses and requesting further documents from Ocwen to determine how it reacted.  This information could speak to damages or Ocwen's bona fide error defense.

Ocwen's temporal limitation is also improper.  It might make sense if the letters were only useful for counting class members, but one factor that informs the determination of statutory damages is the frequency of the defendants' violations.  Since violations from prior to Ms. Herrera's class period count, older letters are relevant.

### b.      Ocwen's burden objection would "defeat the purpose of the discovery rules."

Both Ms. Herrera and the plaintiff in *Sears* requested prior complaints.  Neither Ocwen nor *Sears* denied having responsive documents, but objected on burden grounds because their own filing systems were designed in ways that "conceal[] rather than disclose[] relevant records, or make[] it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition." *Sears*, 73 F.R.D. at 75-76. Sears

-19-

created the burden it sought to rely on by organizing complaints by the last name of the complainant.  Ocwen does so by, apparently, failing to make any searchable index of the documents at all.  That failure should not be excused for a company as sophisticated as Ocwen.

    **c.**  **Ocwen should not be allowed to rest on its "reasonable search."**

  The letters Ocwen produced following its "reasonable search" are not enough.  Ms. Herrera maintains that she is entitled to all responsive communications.  As argued above, Ocwen cannot rely on a burden of its own making to defeat *or limit* the discovery of relevant documents.  The *Sears* court required the retailer to perform a "file by file" review to locate responsive documents.  This Court should do the same.

    **d.**  **Ocwen's redactions are improper.**

  As set forth in Exhibit 18, Ocwen redacted all identifying information from the letters it produced.  It even redacted the contact information from a letter written by an attorney.  Ms. Herrera is entitled to that information.  The individuals who wrote those letters are potential class members and witnesses.  These document are, of course, subject to the protective order already in place.

  **D.**  **CONCLUSION**

  Ms. Herrera asks the Court to grant her motion and enter the proposed order lodged with this motion.

  Dated: June 26, 2010.

          Respectfully Submitted

          BRANCART & BRANCART

          /s/ Christopher Brancart
          _____
          Christopher Brancart
          Attorneys for plaintiff

1

## CERTIFICATE OF SERVICE

2

On June 26, 2010, I served a true and correct copy of the following attached document:

3

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL FURTHER DISCOVERY RESPONSES BY DEFENDANT OCWEN LOAN SERVICING, LLC; DECLARATION OF CHRISTOPHER BRANCART; EXHIBITS

4

5

upon the following person(s):

6

7

| | |
|---|---|
| Ms. Elizabeth Lemond McKeen<br>O'Melveny & Myers, LLC<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>fax: 949-823-6994<br>emckeen@omm.com | Mr. Mark E. Ellis<br>Ms. Kimberly E. Lewellen<br>Ellis, Coleman, Poirier, LaVoie &<br>Steinheimer, LLP<br>555 University Avenue, Suite 200 East<br>Sacramento, CA 95825<br>fax: 916-283-8821<br>mellis@ecplslaw.com<br>klewellen@ecplslaw.com |
| Mr. William E. Kennedy<br>Law Offices of William E. Kennedy<br>2797 Park Avenue, Suite 201<br>Santa Clara, CA 95050<br>fax: 408-241-1500<br>willkennedy@pacbell.net | Mr. Noah Zinner<br>Housing and Economic Rights Advocates<br>PO Box 29435<br>Oakland, CA 94604<br>fax: 510-868-4521<br>nzinner@heraca.org |

8

9

10

11

12

13

14

15

in the following manner(s):

16

| | |
|---|---|
| xx | BY ELECTRONIC TRANSMISSION OF THE "NOTICE OF ELECTRONIC FILING:" By electronically filing the document(s) (Certain counsel are "Filing Users," as indicated above). |

17

18

19

Executed on June 26, 2010, at Loma Mar, California

20

/s/ Christopher Brancart

21

22

23

24

25

26

27

28

-21-