1  BRIAN P. BROOKS (S.B. #172151)
   bbrooks@omm.com
2  ELIZABETH LEMOND McKEEN
   (S.B. #216690) emckeen@omm.com
3  DANIELLE N. OAKLEY (S.B. #246295)
   doakley@omm.com
4  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
5  Newport Beach, CA 92660
   Telephone:  (949) 760-9600
6  Facsimile:   (949) 823-6994

7  Attorneys for Defendant
   OCWEN LOAN SERVICING, LLC
8

9            UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  MERCEDES HERRERA,                    Case No.  C09-02843 TEH

14                  Plaintiff,           DEFENDANT OCWEN LOAN
                                         SERVICING, LLC'S OPPOSITION
15        v.                             TO PLAINTIFF'S MOTION TO
                                         COMPEL FURTHER DISCOVERY
16  LCS FINANCIAL SERVICES               RESPONSES
    CORPORATION and OCWEN
17  LOAN SERVICING LLC,                  Hearing Date:   August 4, 2010
                                         Time:           9:30 a.m.
18                  Defendants.          Courtroom:      F
                                         Judge:          Hon. James Larson
19
                                         [Declaration of Chomie Neil filed
20                                       concurrently herewith]

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION........................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ..................................................................... 1

ARGUMENT .................................................................................................................. 5

I.   PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO
     INTERROGATORIES 1-7 SHOULD BE DENIED FOR NUMEROUS
     REASONS................................................................................................................ 5

     A.   The Information Sought by Plaintiff's Interrogatories 1-7 is Not
          Reasonably Available to Ocwen ................................................................... 6

     B.   Any Benefit Of Compelling Ocwen To Provide Further Responses Is
          Far Outweighed By The Burdens To Ocwen................................................. 9

     C.   Providing Names, Payment Histories, and Other Loan Information
          Relating to Absent Individuals, Especially Those Who May Not Be
          Putative Class Members, Would Result in Severe Privacy Violations....... 12

II.  THE FURTHER INFORMATION PLAINTIFF SEEKS IN RESPONSE TO
     INTERROGATORIES 9 AND 10 IS OVERBROAD AND
     CUMULATIVE. ................................................................................................... 14

III. NO FURTHER RESPONSE IS REQUIRED TO PLAINTIFF'S
     REQUESTS FOR PRODUCTION RELATING TO COMMUNICATIONS
     BETWEEN OCWEN AND LCS ........................................................................... 15

IV.  OCWEN HAS ALREADY PROVIDED FULL RESPONSES TO
     PLAINTIFF'S REQUESTS FOR PRODUCTION 13 AND 14............................ 16

1   **CASES**                    **TABLE OF AUTHORITIES**

2                                                                      **Page**

3   *Beinin v. Ctr. for the Study of Popular Culture,*
      2007 U.S. Dist. LEXIS 22518 (N.D. Cal. Mar. 16, 2007) ........................... 15

4   *Belaire-West Landscape, Inc. v. Superior Court of Los Angeles County,*
      149 Cal. App. 4th 554 (2007) ................................................................. 13

5
    *Bird v. Hotel Corp., v. Super 8 Motels, Inc.,*
6     2007 U.S. Dist. LEXIS 7513 (D.S.D. Feb. 1, 2007) ..................................... 9

7   *Chatman v. Felker,*
      2009 U.S. Dist. LEXIS 4747 (E.D. Cal. Jan 23, 2009) ........................... 15, 17

8   *Coleman v. Am. Red Cross,*
      23 F.3d 1091 (6th Cir. 1994) ................................................................. 11

9   *Cusamano v. NRB, Inc.,*
      1998 U.S. Dist. LEXIS 15418 ............................................................... 10, 16

10
    *Deitz v. Comcast Corp.,*
11    2007 U.S. Dist. LEXIS 53188 (N.D. Cal. July 11, 2007) ............................. 8

12  *Dziennik v. Sealift, Inc.,*
      2006 U.S. Dist. LEXIS 33011 (E.D.N.Y. May 23, 2006) ................... 10, 13, 17

13  *Hatch v. Reliance Ins. Co.,*
      758 F.2d 409 (9th Cir. 1985) ................................................................. 13

14  *Hsieh v. Nicholson,*
      2007 WL 2438315 (N.D. Cal. Aug. 23, 2007) ........................................ 16

15
    *In re Wal-Mart Stores, Inc. Wage & Hour Litig.,*
16    2008 U.S. Dist. LEXIS 14756 (N.D. Cal. Feb. 13, 2008) ............................. 8

17  *Khalilpour v. CELLCO Partnership,*
      2010 WL 1267749 (N.D. Cal. Apr. 1, 2010) ............................................ 13

18  *Kirkman v. N. Carolina R.R. Co.,*
      220 F.R.D. 49 (M.D.N.C. 2004) .............................................................. 8

19  *Kolzlowski v. Sears, Roebuck & Co.,*
      73 F.R.D. 73 (D. Mass. 1976) .......................................................... 11, 17

20
    *Landry v. Union Planters Corp.,*
21    2003 U.S. Dist. LEXIS 10553 (E.D.La. June 9, 2003) ............................... 12

22  *Marker v. Union Fidelity Life Ins. Co.,*
      135 F.R.D. 121 (M.D.N.C. 1989) ....................................................... 11, 12

23  *Memry Corp. v. Kentucky Oil Techs.,*
      2007 WL 832937 (N.D. Cal. Mar. 19, 2007) .......................................... 16

24  *Munoz-Santana v. U.S. Immigration and Naturalization Serv.,*
      742 F.2d 561 (9th Cir. 1984) ................................................................. 11

25
    *Negotiated Data Solutions, LLC v. Dell, Inc.,*
26    2009 U.S. Dist. LEXIS 25026 (N.D. Cal. Mar. 17, 2009) ........................... 14

27  *Oppenheimer Fund, Inc. v. Sanders,*
      437 U.S. 340, 98 S.Ct. 2380, 57 L. Ed. 2d 253 (1978) ......................... 12, 17

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Palmer v. Stassinos,*
2005 U.S. Dist. LEXIS 41270 (N.D. Cal. May 18, 2005) .................................. 9, 13, 17

*Ricotta v. Allstate Ins. Co.,*
211 F.R.D. 622 (S.D. Cal. 2002) ................................................................. 11

*Robbins v. NCO Financial Sys., Inc.,*
2006 U.S. Dist. LEXIS 89962 (N.D. Ind. Dec. 12, 2006) .............................. 10

*Sadler v. Midland Credit Mgmt., Inc.,*
2008 U.S. Dist. LEXIS 51198 (N.D. Ill. July 3, 2008) ................................. 7

*Sedona Corp. v. Open Solutions, Inc.,*
249 F.R.D. 19 (D. Conn. 2008) .................................................................... 16

*Valley Bank of Nevada v. Superior Court of San Joaquin County,*
15 Cal. 3d 652 (Cal. 1975) ........................................................................... 13

*Whittall v. Henry Schein, Inc.,*
2006 U.S. Dist. LEXIS 96622 (E.D. Cal. Apr. 5, 2006) ............................... 13

**STATUTES**

15 United States Code,
Section 6809(4)(A) .................................................................................... 12

15 United States Code,
Section 1692k(b)(1) .................................................................................... 10

15 United States Code,
Section 6801 ............................................................................................. 12

16 Code of Federal Regulations,
Section 313.3(o)(1)(i)(iii) ........................................................................... 12

16 Code of Federal Regulations,
Section 313.3(o)(2)(i) ................................................................................. 12

Cal. Civ. Code § 1788 *et seq.* ........................................................................... 4

California Code of Civil Procedure,
Section 580b ....................................................................................... passim

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure,
Section 23 ................................................................................................ 16

Federal Rules of Civil Procedure,
Section 26(b)(1) ....................................................................................... 12

Federal Rules of Civil Procedure,
Section 26(b)(2)(C)(ii) ............................................................................ 14

Federal Rules of Civil Procedure,
Section 26(b)(2)(C)(iii) ............................................................................. 9

Federal Rules of Civil Procedure,
Section 30(b)(6) ....................................................................................... 14

DEFENDANT OCWEN'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiff's motion to compel asks this Court to order defendant Ocwen Loan Servicing, LLC ("Ocwen") to provide information that, in various combinations:

- Ocwen does not have;

- consists of highly confidential, personal financial information of third-parties that is subject to federal and state privacy protections;

- is entirely irrelevant to the issue of class certification (which is the only discovery the Court has authorized); and

- Ocwen has already provided.

As explained more fully below, Ocwen has responded to plaintiff's voluminous and burdensome discovery requests in the most reasonable and complete way possible, consistent with its obligations under the Federal Rules of Civil Procedure and the Court's prior orders pertaining to discovery.  Ocwen has also fully engaged in a meet and confer process with plaintiff, providing supplemental responses in some instances — and in others, providing a clear rationale for its literal inability to provide the information that plaintiff seeks.  Because plaintiff has articulated no sound basis for compelling further responses to her oppressive discovery requests, her motion to compel should be denied in its entirety, as set forth more fully below.

## RELEVANT FACTUAL BACKGROUND

***Plaintiff's Default and Communications From Ocwen.***  Plaintiff alleges that she purchased a condominium in Fremont, California in late 2005, using the proceeds of two mortgage loans she obtained from New Century Mortgage Corporation.  (Am. Compl., Dkt. No. 16, at ¶¶ 8-9.)  As plaintiff admits, Ocwen did not originate plaintiff's loan; rather, Ocwen is the mortgage servicer that acquired the servicing rights to Ms. Herrera's second mortgage in February 2006.  (Am. Compl. ¶¶ 9, 11; July 14, 2010 Declaration of Chomie Neil ("Neil Decl.") filed concurrently herewith, ¶¶ 2, 10.)  As servicer, Ocwen issued billing statements and collected payments on behalf of the investor-owner of plaintiff's second mortgage.

1    Plaintiff fell significantly behind on her mortgage payments and eventually

2    lost title through a non-judicial foreclosure by the first mortgage holder on June 19, 2008.

3    (Am. Compl. at ¶ 8.)  (Ocwen was not the servicer of Ms. Herrera's first mortgage loan

4    that foreclosed — only the second mortgage loan.)  In a letter dated July 1, 2008, less than

5    two weeks after the first lien holder's foreclosure (and *not* five months after the

6    foreclosure, as plaintiff's motion to compel erroneously asserts), Ocwen notified plaintiff

7    that she was in default of the terms of her second mortgage note.  (Ex. A to Am. Compl.)

8    Ocwen subsequently sent plaintiff an account statement dated July 17, 2008, listing the

9    total amount owing by plaintiff.  (Ex. B to Am. Compl.)  Plaintiff did not respond to either

10   communication.  Shortly afterwards, Ocwen was directed by the owner-investor of

11   plaintiff's loan that the servicing rights of that loan were being transferred to co-defendant

12   LCS Financial Services Corp. ("LCS").  (Neil Decl. ¶ 10.)  Ocwen was directed to transfer

13   servicing of the loan to LCS, and Ocwen sent a letter notifying plaintiff that LCS would

14   begin servicing her loan.  (*Id.*; Ex. D to Am. Compl.)

15   **Ocwen's Data And Records.**  Ocwen acquires servicing rights to mortgage

16   loans, in some cases directly from the originator, but in many cases from an assignee other

17   than the originator.  (Neil Decl. ¶ 2.)  In connection with this process, Ocwen is provided

18   with certain information about the loan to enable it to receive payments and apply those

19   payments properly to the loan.  This information typically includes the loan balance,

20   borrower name, and next payment due date, as well as related information (such as the

21   interest rate, as well as tax and insurance related information).  (*Id.* ¶ 3.)  This data is

22   transferred electronically and is maintained in Ocwen's internal loan servicing system.

23   (*Id.*)  Ocwen also receives copies of the note and mortgage from the originators or the

24   loan assignees, as well as other documents that may include loan modification

25   agreements, title insurance policies, and correspondence.  (*Id.* ¶ 4.)  In connection with an

26   originator or assignee's transfer of loan information and loan files to Ocwen for servicing,

27   Ocwen frequently requests that the transferring entity provide Ocwen with any available

28   information about whether each loan is a purchase money mortgage or a refinancing

transaction, but in a vast majority of cases, Ocwen is *not* provided with data regarding whether a loan is a refinancing transaction or a purchase money mortgage. (*Id.* ¶ 3.) Though Ocwen does have such data for a handful of loans secured by real property in Texas, it does not posses such data for loans secured by property in California. (*Id.*)

In some instances, the loan files Ocwen receives may include the mortgagor's loan application (as was the case with plaintiff's loan file). (*Id.* ¶ 4.) Loan applications may indicate whether the mortgagor claimed that the loan was for the purchase of her home or for a refinance transaction. (*See id.* ¶ 8.) However, Ocwen does not have the ability to search these documents via an automated electronic process. (*Id.* ¶¶ 6-7.) Certain documents, such as the note, mortgage and loan application may be "tagged" as part of the process of scanning documents into its electronic databases, and for such documents, Ocwen is able to determine whether they are likely to exist in a particular electronic file (though this does not account for errors in the tagging process). (*Id.* ¶ 6.) Thus, in order to determine whether any particular loan file secured by a property in California definitively includes a loan application, and to ascertain the content of that application, including whether the mortgagor indicated her loan was for a purchase money mortgage or refinance transaction, Ocwen would need to undertake a file-by-file review of each potential such loan in Ocwen's servicing portfolio. (*Id.* ¶¶ 6-8.) Because Ocwen does not have a borrower's loan applications in each of its files, such a loan-by-loan review would not completely or accurately identify borrowers whose mortgages were for the purchase of their home.

After receiving either electronic or hard-copy versions of loan related documents from originators or loan assignees, Ocwen maintains the hard-copy documents in offsite storage; in its ordinary course of business, Ocwen refers only to its electronic data when servicing loans. (*Id.* ¶ 5.) The electronic copies of these documents are not text searchable, *id.* ¶ 6, and therefore cannot be analyzed within a database. In order definitively ascertain what documents are in these files and to analyze the content of those documents, the files and documents must be reviewed individually; Ocwen is not aware of

any software-based or automated process to conduct aggregate analyses on the content of these files and documents. (*Id.* ¶¶ 6, 8.)

***The Present Lawsuit.*** On or about June 25, 2009, plaintiff filed a complaint against Ocwen and LCS, alleging that Ocwen violated California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* (the "Rosenthal FDCPA") by requesting payment on her defaulted second mortgage loan following the foreclosure as to the first lien. (Compl., Dkt. No. 1.) This theory was rejected by the Court. (*See* Dkt. No. 15.) After her original complaint was dismissed, plaintiff filed an amended complaint alleging that Ocwen's communications to plaintiff following foreclosure on her first mortgage were misleading and otherwise unlawful because they failed to inform plaintiff that pursuant to California's anti-deficiency statute, Cal. Civ. Code § 580b ("Section 580b"), no deficiency judgment could be taken against plaintiff following the foreclosure on plaintiff's property, and because these communications improperly implied that failure to make payment "would result in legal consequences" for plaintiff even though no deficiency judgment was possible against plaintiff. (Am. Compl., ¶¶ 14-18.)[1] Based on these allegations, plaintiff seeks to represent a class consisting of all California residents (a) who took out a loan "subject to" Section 580b, where (b) the real property secured by the loan was sold in foreclosure, and (c) Ocwen sought to collect on the loan following the foreclosure "in a manner which violated the Fair Debt Collections Practices Act, and therefore violated" the Rosenthal FDCPA.

***Plaintiff's Disputed Discovery Requests.*** On February 22, 2010, the Court ordered that discovery would be limited to issues pertaining to class certification. (Dkt. No. 47.) On this same day, plaintiff served voluminous discovery requests seeking information that was not only irrelevant to class certification — such as Ocwen's net worth — but also seeking information that has no bearing on plaintiff's claims against

---

[1] Contrary to plaintiff's assertion, Ocwen ***does not*** concede that Section 580b applies to plaintiff's second mortgage. Rather, Ocwen assumed that the statute applied for the limited purpose of its motion to dismiss plaintiff's original and amended complaints.

Ocwen, such as information concerning the entire payment history associated with absent putative class members' loans. (*See* Pl.'s Interrog. Nos. 1, 8.) Ocwen responded to plaintiff's requests to the extent possible and participated in a lengthy meet and confer process over several weeks in an attempt to reach a reasonable compromise with plaintiff, including by supplementing several responses. However, with respect to certain requests, no agreement could be reached. As set forth below, plaintiff's motion to compel further responses to such requests should be denied in its entirety, for numerous reasons.

## ARGUMENT

I.    **PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES 1-7 SHOULD BE DENIED FOR NUMEROUS REASONS.**

> **Interrogatory 1**:[2]  For each purchase money mortgage loan that you have attempted, since June 25, 2008, to collect on after the property securing the loan was foreclosed upon, please identify (a) the name of the borrower, (b) the loan number or other identifying number, (c) the current repayment status, (d) the payment history, (e) the date of foreclosure, and (f) the amount of money you collected if any, after foreclosure.

> **Interrogatory 2**:  For each purchase money mortgage loan that, , [sic] since June 25, 2008, you assigned, sold, or transferred to a third party debt collector (including defendant LCS) after the property securing the loan was foreclosed upon, please identify (a) the borrower, (b) the loan number or other identifying number, (c) the date of sale, assign, or transfer, (d) the third party debt collector, (e) the date of foreclosure, (f) whether you notified the third party debt collector that § 580b applied to the loan, (g) if so, the date you notified the third party debt collector, and (h) the amount of money you have received in connection with each loan, if any, from the third party debt collector since the loan was assigned, sold, or transferred.

> **Interrogatory 3**:  For each loan identified in response to interrogatories 1 and 2, please state when and how you became aware that the property securing the loan had been foreclosed on.

> **Interrogatory 4**:  For each loan identified in response to interrogatories 1 and 2, please identify by case or other

---

[2] Plaintiff's recitation of Ocwen's responses to plaintiff's interrogatories and requests for production, including for Interrogatories 1-2, 4-7, 10 and Requests for Production 13-14, contain errors. Ocwen's actual responses, which contain the correct text, are attached as Exs. 3-5 to plaintiff's motion.

number, date of filing, and type (i.e. civil complaint, notice of lien, acceleration, notice of default) all legal process initiated by you after the date the property securing the loan was foreclosed upon.

**Interrogatory 5**: For each loan identified in response to interrogatory 1, please describe how your efforts to collect on that loan changed following the foreclosure on the property securing the loan.

**Interrogatory 6**: For each loan identified in response to interrogatory 1, please describe each method used by you to attempt to collect on the loan after the property securing the loan was foreclosed on.

**Interrogatory 7**: For each loan identified in response to interrogatories 1 and 2, please state whether you contend that the borrower on the loan received any notice from you that no deficiency judgment could be obtained with respect to the loan.

Plaintiff's request to compel Ocwen to provide further responses to Interrogatories 1-7 should be denied, first, because each is predicated on Ocwen's ability to identify whether particular loans in its servicing portfolio are "subject to" Section 580b — an ability that Ocwen simply does not have. Further, even if Ocwen could identify such loans, plaintiff's motion to compel should nonetheless be denied for the additional reason that these interrogatories are not only overbroad and burdensome, they also seek highly sensitive and confidential financial information about third parties that is subject to federal and state privacy laws, on the one hand, and entirely irrelevant to the issue of class certification, on the other.

A.    **The Information Sought by Plaintiff's Interrogatories 1-7 is Not Reasonably Available to Ocwen.**

Plaintiff herself concedes that in order to respond to Interrogatories 1-7, Ocwen needs to be able to determine whether the loans are "subject to" Section 580b. (Pl.'s Mot. at 9-10.) Plaintiff further concedes that in order to make the legal judgment as to whether a loan could be "subject to" Section 580b, one must determine whether the loan proceeds at issue were used to finance the purchase of the home or were instead obtained as part of a refinance transaction. (*Id.*) But as explained above, Ocwen does not

possess the data necessary to definitively determine whether the loans it services are associated with purchase money mortgages or whether they are associated with refinance transactions.

Plaintiff's contention that Ocwen "appears to have this information" is misleading, at best. (Pl.'s Mot. at 4:9-16.) Plaintiff suggests that Ocwen possesses such information because it was able to obtain a copy of plaintiff's own loan file. But, to be clear, Ocwen was able to search for and provide a comments log and transaction history for plaintiff's loan because Ocwen had plaintiff's name and address by virtue of the complaint she filed in this action. (*See, e.g.*, Ex. A to Am. Compl.) In other words: Ocwen knew where to look. But with respect to information for other unspecified borrowers, Ocwen does not have a field in its database that enables it to identify which loan files are purchase money mortgages "subject to" Section 580b. (Neil Decl. ¶ 3.) And while Ocwen does have some information regarding whether a loan file includes a loan application, in order to definitively determine whether a particular loan file secured by a property in California includes a loan application, and to ascertain whether in the application the borrower claimed that she intended to use her funds for the purchase of a home as opposed to a refinance, Ocwen would need to undertake a file-by-file review. (*Id.* ¶¶ 6-8.) Even so, the search would not completely or accurately identify borrowers whose mortgages were for the purchase of their homes because more than 13% of its California loan files do not even contain loan applications. (*Id.* ¶ 6.)

In circumstances like those present here, where it is not possible to ascertain the identity of the putative members of the class because Ocwen does not have the information necessary to determine which loans in its servicing portfolios meet the criteria of plaintiff's proposed class definition, courts have repeatedly refused to grant class certification rather than require defendants to search their records in vain for information that does not exist or would require a file-by-file review to obtain. *See Sadler v. Midland Credit Mgmt., Inc.*, Case No. 06 C 5045, 2008 U.S. Dist. LEXIS 51198, *15-*19 (N.D. Ill. July 3, 2008) (class certification denied because "certain information necessary to

DEFENDANT OCWEN'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL

1   determine whether an individual is part of the class" was not in defendant's files at all and

2   identifying even partially useful information would "require an exhaustive, individualized

3   inquiry") (quotations, citations omitted); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,

4   No. C 06-2069 SBA, 2008 U.S. Dist. LEXIS 14756, *24-*26 (N.D. Cal. Feb. 13, 2008)

5   (class certification denied where information necessary to ascertain whether person

6   putative class member was "not contained in any of the electronic databases at issue, but

7   [could] only be determined by an individual review of each potential class member's

8   personnel file" and where some information was not available at all); *Deitz v. Comcast*

9   *Corp.*, No. C 06-06352 WHA, 2007 U.S. Dist. LEXIS 53188, *25-*26 (N.D. Cal. July 11,

10  2007) (class certification denied where plaintiff proposed a class of persons who, *inter*

11  *alia*, had "cable-ready television set(s) or a video cassette or DVD recorder or player"

12  because "[i]t would be impossible to determine without significant inquiry which

13  [putative class members] owned such devices"); *Kirkman v. N. Carolina R.R. Co.*, 220

14  F.R.D. 49, 53 (M.D.N.C. 2004) (certification denied even though court "would eventually

15  be able to ascertain potential class members through detailed title searches" because such

16  a procedure would not be administratively feasible).

17         For the same reasons that class certification was denied in the preceding

18  cases, there is no basis here to compel Ocwen to engage in the costly and likely futile

19  review of its files and databases for information demanded by plaintiff.  Plaintiff

20  "acknowledges that Ocwen may not possess complete information" but absurdly urges the

21  Court to order Ocwen to provide information for loans unless Ocwen is "sure the loan

22  does not belong to a potential class member."  (Pl.'s Mot. at 10:13-16, 14:19-24.)  In other

23  words, plaintiff asks the Court to compel Ocwen to produce information that is admittedly

24  overbroad and irrelevant, including information concerning borrowers who are, by

25  definition, not members of the putative class.  But neither the Rules of Civil Procedure nor

26  the Court's civil minutes require Ocwen to search its records and produce information that

27  is irrelevant to class certification or to any issue in the case, nor do they require Ocwen to

28  violate the privacy rights of absent individuals.

**B.      Any Benefit Of Compelling Ocwen To Provide Further Responses Is Far Outweighed By The Burdens To Ocwen.**

Any supposed benefit of compelling Ocwen to further respond to Interrogatories 1-7 is far outweighed by the burden that would be associated with doing so, particularly given the grossly overbroad nature of these requests and the utter irrelevance of the information sought. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). Putting aside that Ocwen cannot reasonably ascertain which loans are purchase money loans and that the discovery rules should not require it to make a legal judgment as to which loans are "subject to" Section 580b in order to comply with its discovery obligations, these disputed interrogatories have no reasonable bearing on plaintiff's claims or on the issues associated with class certification.

For example, Interrogatories 1 and 2 seek borrower names, loan numbers, current loan repayment status, loan payment history, the date of loan foreclosure, the amount of money collected by Ocwen since the foreclosure on their loan, among other information (*see* Pl.'s Proposed Order at 2 (further requesting borrower and property address information), Pl.'s Interrogs. 1-7, Pl.'s Ex. 1 at 2-4). But whether an absent individual's payments were timely in a particular month has no relevance whatsoever to plaintiff's claims or the issue of class certification. Moreover, courts have repeatedly refused to compel the production of exactly this kind of information prior to the certification of a class. *Palmer v. Stassinos*, Case No. 5:04-cv-3026 RMW (RS), 2005 U.S. Dist. LEXIS 41270, *10-*11 (N.D. Cal. May 18, 2005) (refusing to compel further information regarding putative class members in an action alleging violation of the FDCPA, including the putative class members' name, address, and amount for dishonored checks which defendant attempted to collect); *see also Bird v. Hotel Corp., v. Super 8 Motels, Inc.*, No. CIV. 06-4073, 2007 U.S. Dist. LEXIS 7513, *8-*10 (D.S.D. Feb. 1, 2007) (refusing to compel production of the "name, current address, current telephone number, franchise address, and franchise telephone number for each franchisee that has ever operated under the same or essentially similar franchise agreement" because such

1    information is "not helpful or necessary to establish or decide certification of the class");

2    *Robbins v. NCO Financial Sys., Inc.*, NO. 2:06 cv 116, 2006 U.S. Dist. LEXIS 89962,

3    *13-*15 (N.D. Ind. Dec. 12, 2006) (refusing to compel production of putative class

4    members' names, addresses, and complete file pre-certification because such information

5    was not necessary to resolving class certification in an action alleging violations of the

6    FDCPA); *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) MDG), 2006 U.S. Dist. LEXIS

7    33011, *3 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery

8    of class members' identities at the pre-certification stage").

9            Plaintiff contends that the payment history and other information sought by

10   Interrogatories 1 and 2 would be relevant to the issue of "damages," arguing that her

11   damages will depend "in part on the number and frequency of Ocwen's" purportedly

12   unlawful debt collection practices. (Pl.'s Mot. at 4:19-21). However, under applicable

13   FDCPA jurisprudence, it is the frequency of unlawful attempts to collect against plaintiff

14   that matter, and not those against persons who may not even be members of the putative

15   class. *See* 15 U.S.C. 1692k(b)(1); *Cusamano v. NRB, Inc.*, No. 96 C 6876, 1998 U.S.

16   Dist. LEXIS 15418, at *7-*8 (information with respect to frequency of unlawful

17   collection attempts not relevant to determination of damages with respect to plaintiff).

18           Plaintiff asserts that the information sought by Interrogatories 2-7—such as

19   when Ocwen became aware that a property subject to Section 580b was foreclosed upon,

20   whether legal processes were initiated against a loan subject to Section 580b, how

21   Ocwen's collection methods changed following the foreclosure of a loan subjection to

22   Section 580b, or whether Ocwen notified borrowers that no deficiency judgments could

23   be obtained on loans subject to Section 580b — is relevant to Ocwen's affirmative

24   defenses, liability, and the determination of damages. (Pl.'s Mot. at 4-9.) But Ocwen has

25   already agreed to provide responsive information and documents that evidence its policies

26   and procedures as to these issues. (*See* Pl.'s Ex. 3, Ocwen's Responses to Pl.'s Interrogs.

27   9-10 and Pl.'s Ex. 4, Ocwen's Responses to Pl.'s Requests for Production Nos. 7, 9, 16.)

28   Ocwen should not be compelled to produce individual loan-by-loan information to

1    evidence such policies and procedures.  Plaintiff's request that Ocwen "describe" various

2    occurrences on a loan-by-loan with respect to the loans of potentially hundreds, if not

3    thousands, of absent individuals (whose identity cannot be reliably determined as

4    discussed above) is the very essence of abusive discovery.

5             For this same reason, courts repeatedly decline to grant discovery where

6    complying with the requests would require file-by-file review of thousands of files, even

7    in cases where accurate and full responses to plaintiff's requests could eventually be

8    obtained.  *Munoz-Santana v. U.S. Immigration and Naturalization Serv.*, 742 F.2d 561,

9    (9th Cir. 1984) (holding that district court abused its discretion when it required defendant

10   to manually or electronically search filing system where the review expenses were

11   significant and benefits were small); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1098 (6th

12   Cir. 1994) (no abuse of discretion where court declined to compel party to search every

13   file in its headquarters for relevant documents); *Ricotta v. Allstate Ins. Co.*, 211 F.R.D.

14   622, 624 (S.D. Cal. 2002) (refusing to compel discovery that would require defendant to

15   examine 50,000 claims files); *Marker v. Union Fidelity Life Ins. Co.*, 135 F.R.D. 121,

16   124-25 (M.D.N.C. 1989) (refusing to require party to produce litigation histories, though

17   marginally relevant, where new software would need to be developed to identify the

18   relevant claim files and each claim file would have to be retrieved and reviewed).  Here,

19   the same result should obtain, particularly where any file-by-file review is not likely to

20   yield a completely accurate result.

21            In such circumstances, the burdens clearly outweigh any benefit to plaintiff.[3]

22   Contrary to plaintiff's suggestion, this analysis is not changed by the fact that Ocwen has

23   the financial wherewithal to conduct the requested reviews.  "[T]he proper test is not

24   whether one's opponent has the ability to pay, but whether the cost is substantial *vel non*

25   . . . The fact that defendant is a large company and plaintiff is a person of modest means

---

[3] The authorities cited by plaintiff do not dictate a different result.  *Kolzlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976) is unpersuasive because, in that case, the defendant had already provided -- in another context -- similar discovery responses to those plaintiff sought to compel.  *Id.* at 76.

DEFENDANT OCWEN'S OPPOSITION TO
                                                PLAINTIFF'S MOTION TO COMPEL

1    is not a decisive factor in resolving discovery disputes.  The Court does its duty by

2    heeding the admonition to act 'in an evenhanded manner that will prevent use of

3    discovery to wage a war of attrition as a device to coerce a party, whether financial weak

4    or affluent.'"  *Marker*, 125 F.R.D. at 124-125 (citing *Oppenheimer Fund, Inc. v. Sanders*,

5    437 U.S. 340, 98 S.Ct. 2380, 57 L. Ed. 2d 253 (1978) and Fed. R. Civ. P. 26(b)(1) 1983

6    advisory committee's note).

7        **C.**    **Providing Names, Payment Histories, and Other Loan Information
8    Relating to Absent Individuals, Especially Those Who May Not Be
     Putative Class Members, Would Result in Severe Privacy Violations.**

9            It is not merely Ocwen's interests that are at stake via this motion; it is also

10   the privacy rights of absent individuals who may have no interest in having their names,

11   addresses and personal financial information concerning the details of their defaulted

12   home mortgage loans and ultimate foreclosures shared with plaintiff's counsel —

13   particularly where such absent individuals are not even members of plaintiff's proposed

14   class and are not owed any fiduciary duty by plaintiff's counsel.  As set forth below, the

15   Court need not compel Ocwen to produce such information which is protected by both

16   state and federal privacy laws.

17           Personally identifiable financial information such as "information a

18   consumer provides on a loan application, account balance information, payment history,

19   overdraft history, the fact that an individual has been or is a client of the financial

20   institution, any information about a consumer if it is disclosed in a manner to indicate that

21   the individual is or has been a consumer of the financial institution" is subject to the

22   privacy protections afforded under the Gramm-Leach-Bliley Act ("GLBA").  15 U.S.C.

23   § 6801; *Landry v. Union Planters Corp.*, No. 02-3617 Section "C" (3), 2003 U.S. Dist.

24   LEXIS 10553, *14-*16 (E.D.La. June 9, 2003) (citing 15 U.S.C. § 6809(4)(A) and 16

25   C.F.R. § 313.3(o)(1)(i)(iii) and 313.3(o)(2)(i)).  This is exactly the kind of information

26   that plaintiff seeks in her interrogatories, and exactly the kind of information that courts

27   have refused to compel financial institutions to disclose.  *Landry*, 2003 U.S. Dist. LEXIS

28   10553, *8-*10, *18, *22 (declining to require defendant mortgage company to produce

1  notes and loan agreements because "personal identification data such as names, addresses,

2  and phone numbers[] has no bearing on the merits of class certification issues").

3       The sensitive financial information plaintiff demands is also subject to the

4  privacy protections afforded under the article I, section 1 of the California constitution.

5  *See Whittall v. Henry Schein, Inc.*, No. CIV S-05-1629 WBS GGH, 2006 U.S. Dist.

6  LEXIS 96622, *10-*11 (E.D. Cal. Apr. 5, 2006) (refusing to allow discovery into the

7  payment records of absent individuals) (citations omitted); *Valley Bank of Nevada v.*

8  *Superior Court of San Joaquin County*, 15 Cal. 3d 652, 656-57 (Cal. 1975) (even where

9  relevant and available, information shared with bank is subject to heightened expectations

10 of privacy).[4]

11      To the extent plaintiff contends that she requires this information in order to

12 identify putative class members, courts have repeatedly rejected this argument and held

13 that such discovery is not available pre-class certification.  *See, e.g., Hatch v. Reliance*

14 *Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (affirming denial of motion to produce names

15 of similarly situated investors to support plaintiff's class certification motion); *Dziennik v.*

16 *Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 U.S. Dist. LEXIS 33011, *3 (E.D.N.Y.

17 May 23, 2006) (refusing to allow discovery of class members' identities at the pre-

18 certification stage); *Palmer*, 2005 U.S. Dist. LEXIS 41270, at *12-*13 (same).  Plaintiff's

19 further contention that the April 20, 2010 protective order adequately protects the privacy

20 interests of absent individuals is unavailing.  While the protective order is intended to

21 safeguard Ocwen and plaintiff's confidential information, it does not, for example, limit

22 Ocwen's liability for sharing the confidential private information of its customers with

23 plaintiff's counsel, nor would it prevent plaintiff's counsel from contacting individuals

24 about whom it received private, financial information.  *Whittall*, 2006 U.S. Dist. LEXIS

25 96622, *13 n.5 ("The court recognizes that a protective order is in place to prohibit

26

27  _____

[4] Neither *Khalilpour v. CELLCO Partnership*, No. C 09-02712 CW (MEJ), 2010 WL
1267749 (N.D. Cal. Apr. 1, 2010) nor *Belaire-West Landscape, Inc. v. Superior Court of*

28 *Los Angeles County*, 149 Cal. App. 4th 554 (2007), cited by plaintiff, implicated the
disclosure of financial information.

1   widespread dissemination of the requested information.  Nevertheless, the mere existence

2   of a protective order does not automatically trump privacy privileges").  (*See* Dkt. No.

3   49.)  Plaintiff has provided no reason for this Court to disregard the privacy rights of

4   numerous individuals, as would be required by granting plaintiff's motion.

5            For the above reasons, plaintiff's motion to compel further responses to

6   Interrogatories 1 - 7 should be denied.

7   **II.    THE FURTHER INFORMATION PLAINTIFF SEEKS IN RESPONSE TO
           INTERROGATORIES 9 AND 10 IS OVERBROAD AND CUMULATIVE.**

8

9            **Interrogatory 9**:  Please identify by name, job title, dates of
           employment, last known address, and phone number all the
10          people involved in creating each procedure you have had in
           effect since June 25, 2008, in connection with California Code
11          of Civil Procedure § 580b.

12          **Interrogatory 10**:  Please identify by name, job title, dates of
           employment, last known address, and phone number all the
13          people with knowledge of facts supporting each of your
           affirmative defenses.

14          In response to Interrogatories 9 and 10, Ocwen has already agreed to

15  produce the policies and procedures evidencing its affirmative defenses, including policies

16  relating to its bona fide error defense, and has also agreed to designate corporate witnesses

17  under Rule 30(b)(6) as appropriate to testify about its policies, procedures and affirmative

18  defenses.  (*See* Pl.'s Ex. 8.)  This information is more than sufficient to allow plaintiff to

19  "test Ocwen's defenses and to depose witnesses with relevant knowledge," which is

20  plaintiff's stated rationale for demanding further responses to the above, overbroad

21  interrogatories.  (*See* Pl.'s Mot. at 16:1-12.)  Plaintiff's demand for the identities of "*all*

22  the people involved" in creating its policies and "*all* the people with knowledge" of

23  Ocwen's affirmative defenses is thus unnecessarily cumulative, and not within the scope

24  of permissible discovery.  *See* Fed. R. Civ. P. 26(b)(2)(C)(ii); *Negotiated Data Solutions,*

25  *LLC v. Dell, Inc.*, No. C09-80012FMISC JF (HRL), 2009 U.S. Dist. LEXIS 25026, at *11

26  (N.D. Cal. Mar. 17, 2009) (quashing deposition subpoena where third party had produced

27  responsive documents because the deposition would be cumulative and served only to

28  confirm the previous production); *Beinin v. Ctr. for the Study of Popular Culture*, No. C

DEFENDANT OCWEN'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL

1  06-2298 JW (RS), 2007 U.S. Dist. LEXIS 22518, at *11 (N.D. Cal. Mar. 16, 2007)

2  (denying motion to compel information redacted from emails because the information was

3  "cumulative at best.").  Given, Ocwen's prior responses to these interrogatories, which

4  clearly demonstrate that Ocwen is committed to providing plaintiff with appropriate,

5  substantive discovery as to both its policies and procedures as well as its affirmative

6  defenses, plaintiff's motion to compel should be denied.

7  **III.  NO FURTHER RESPONSE IS REQUIRED TO PLAINTIFF'S REQUESTS FOR PRODUCTION RELATING TO COMMUNICATIONS BETWEEN OCWEN AND LCS.**

8

9  **Request for Production 5**:  All documents and ESI exchanged between you and defendant LCS that relate to Mercedes Herrera, including those that relate to her foreclosure, her loan, the assignment of her loan by you to LCS, and to this lawsuit.

10

11

12  **Request for Production 6**:  A copy of all contracts in effect between you and defendant LCS from the time Mercedes Herrera's loan was assigned by you to LCS to the time this lawsuit was filed.

13

14

15  In response to Request for Production 5, which seeks documents and

16  information exchanged between Ocwen and LCS that relate to plaintiff, Ocwen has agreed

17  to conduct a good faith inquiry into any data fields that may have been transmitted

18  between Ocwen and LCS in connection with the investor-owner's transfer of the loan to

19  LCS. (*See* Pl.'s Ex. 11.)  With respect to Request for Production 6, which seeks any

20  contract in effect between LCS and Ocwen from the time that plaintiff's loan was

21  "assigned" by Ocwen to LCS to the time the lawsuit was filed, Ocwen did not "assign"

22  any loan to LCS—the loan was transferred by the investor-owner from Ocwen to LCS.

23  More importantly, as repeatedly explained to plaintiff, no contract exists between LCS

24  and Ocwen during the relevant period.  (Neil. Decl. ¶ 10.)  Accordingly, Ocwen has

25  agreed to provide the documents in its possession, custody, or control responsive to

26  plaintiff's requests; no further response is required. *See, e.g., Chatman v. Felker*, No. CIV

27  S-03-2415 JAM KJM P, 2009 U.S. Dist. LEXIS 4747, at *7 (E.D. Cal. Jan 23, 2009)

28  (defendant's response that "[a]fter a reasonable search and diligent inquiry, Responding

1   Party does not have information responsive to this request" sufficient).[5]  Plaintiff's request

2   to compel further responses to Requests 5 and 6 should therefore be denied.

3   **IV.    OCWEN HAS ALREADY PROVIDED FULL RESPONSES TO**
        **PLAINTIFF'S REQUESTS FOR PRODUCTION 13 AND 14.**

4

5           **Request for Production 13**: All documents and ESI that
            reflect borrowers contacting you regarding California Code of
6           Civil Procedure § 580b since June 25, 2008, including the
            communications themselves.

7           **Request for Production 14**: All documents and ESI that
            reflect persons or entities other than borrowers contacting you
8           regarding California Code of Civil Procedure § 580b since
            June 25, 2008, including the communications themselves.
9

10          In response to Requests for Production 13 and 14, Ocwen has already

11  produced documents that reflect borrowers or entities contacting Ocwen regarding Section

12  580b since June 25, 2008 that Ocwen could locate after a reasonable and diligent search.

13  Ocwen searched for communications from borrowers or other entities relating to Section

14  580b in the files of Ocwen's Office of the Ombudsperson, the location where Ocwen

15  maintains its files relating to escalated customer service issues (Neil Decl. ¶ 11) — in

16  other words, Ocwen searched those repositories where the documents are likely to be.

17  Nothing more is required of Ocwen under the Federal Rules of Civil Procedure.  *See, e.g.,*

18  *Hsieh v. Nicholson*, No. C06-5281 PJH (BZ), 2007 WL 2438315 (N.D. Cal. Aug. 23,

19  2007) (denying motion to compel based on showing that defendant conducted a

20  reasonable search and inquiry); *Memry Corp. v. Kentucky Oil Techs.*, No. C04-03843,

21  2007 WL 832937 (N.D. Cal. Mar. 19, 2007) (plaintiff's independent examination of hard

22  drive mirror image not required after defendant's reasonable search for responsive

23  documents); *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19 (D. Conn. 2008)

24

25  [5] Plaintiff's requests are also not suitable for a motion to compel because they seek
    information that is irrelevant to her claims and Ocwen's defenses. *See Cusamano v. NRB,*
26  *Inc.*, No. 96 C 6876, 1998 U.S. Dist. LEXIS 15418 (N.D. Ill. Sept. 23, 1998) (finding that
    evidence relating of administrative actions by third parties and defendant's actions with
27  respect others consumers was irrelevant to plaintiff's claims and the applicability of
    defendant's bona fide error defense with respect to plaintiff).  Communications between
    Ocwen and LCS likewise do not make class certification under Rule 23 more or less
28  likely.  *See* Fed. R. Civ. P. 23.

DEFENDANT OCWEN'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL

1  (broader search unnecessary where original search was restricted to emails for employees

2  involved in the project at issue).  Plaintiff's dissatisfaction with the production is

3  insufficient justification for a motion to compel.  *See, e.g.*, *Chatman v. Felker*, No. CIV

4  S-03-2415 JAM KJM P, 2009 U.S. Dist. LEXIS 4747, at *7 (E.D. Cal. Jan 23, 2009)

5  (court will not "compel [defendant] to conduct discovery in the manner plaintiff prefers").

6         Plaintiff's reliance on *Kozlowski* is misguided.  Unlike Ocwen, which has

7  conducted a reasonable and diligent search of likely files, the responding party in

8  *Kozlowski* did not even search the records where it knew the requested complaints existed.

9  *See* 73 F.R.D. at 74-76.  Further, unlike in *Kozlowski*, compelling Ocwen to search

10  unspecified and unascertainable individual loan files for additional communications

11  relating to Section 580b would be cumulative and burdensome, especially because it is not

12  possible to electronically query the comments logs and transaction histories that

13  summarize communications between Ocwen and borrowers, necessitating a file-by-file

14  review.  (Neil Decl. ¶ 9.)  Ocwen is not required to conduct such a burdensome review

15  where Ocwen has already produced responsive documents and the additional search

16  would likely add no value.  *See Chatman*, 2009 U.S. Dist. LEXIS 4747, at *7.

17         Plaintiff is also not entitled to unredacted copies of documents that Ocwen

18  has already produced, for the sole admitted purpose of identifying potential class members

19  and witnesses.  Such identifying information is irrelevant to Rule 23 certification issues.

20  *See, e.g.*, *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 354 n.20 (1978) (class member

21  identities are seldom relevant under the discovery rules); *Palmer v. Stassinos*, No. 5:04-

22  cv-3026 RMW (RS), 2005 U.S. Dist. LEXIS 41270, at *13 (N.D. Cal. May 18, 2005) ("it

23  does not appear that the identities of putative class members are required to enable

24  plaintiffs to file a motion for class certification"); *Dziennik v. Sealift, Inc.*, No. 05-CV-

25  4659 (DLI) (MDG), 2006 U.S. Dist. LEXIS 33011 at *3 (E.D.N.Y. May 23, 2006)

26  ("Courts have ordinarily refused to allow discovery of class members' identities at the

27  pre-certification stage").  Additionally, explained in section I.C above, information that

28  would be revealed by producing unredacted versions of the documents—for example, that

1    the borrowers referenced in the letters maintained an account with Ocwen—is subject to

2    privacy protections under the GLBA and California Constitution.

3            Finally, plaintiff complains that in responding to Requests for Production 13

4    and 14, Ocwen improperly limited its response to communications received since June 25,

5    2008.  This assertion ignores that the scope of her original requests were limited to

6    communications beginning on that date.  (*See* Pl.'s Mot. at 18:5-19:21; Pl.'s Ex. 4 at

7    5:13-19.)  Accordingly, no further response is required and plaintiff's motion with respect

8    to Requests for Production 13 and 14 should be denied as moot.

9                                        **CONCLUSION**

10           For the foregoing reasons, Ocwen respectfully requests that the Court deny

11   plaintiff's motion to compel in its entirety.

12

13   Dated:  July 14, 2010                     BRIAN P. BROOKS
                                               ELIZABETH LEMOND MCKEEN
14                                             JILLIAN B. ALLEN
                                               O'MELVENY & MYERS LLP
15

16
                                               By: /s/ Elizabeth Lemond McKeen
17                                                   Elizabeth Lemond McKeen
                                               Attorneys for Defendant
18                                             OCWEN LOAN SERVICING, LLC

19

20

21

22

23

24

25

26

27

28

DEFENDANT OCWEN'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL

1

## CERTIFICATE OF SERVICE

2

3

4      On July 14, 2010, I served a true and correct copy of the following document:

5      **DEFENDANT OCWEN LOAN SERVICING, LLC'S**
       **OPPOSITION TO PLAINTIFF'S MOTION TO**
6      **COMPEL FURTHER DISCOVERY RESPONSES**

7

☒

8      by electronically filing and serving same on all parties listed below via the
       court's CM/ECF system.

9

10     Christopher Brancart, Esq.              William Eric Kennedy, Esq.
       **Brancart & Brancart**                 **Law Office of William E.**
11     P.O. Box 686                            **Kennedy**
       Pescadero, CA  94060                    2797 Park Avenue, Suite 201
12     (cbrancart@brancart.com)                Santa Clara, CA  95050
                                               (willkennedy@pacbell.net)
13

14     Andrew M. Steinheimer, Esq.             Noah Zinner, Esq.
       Mark E. Ellis, Esq.                     **Housing and Economic Rights**
15     Kimberly E. Lewellen, Esq.              **Advocates**
       **Ellis, Coleman, Poirier, LaVoie &**   P.O. Box 29435
16     **Steinheimer**                         Oakland, CA  94604
       555 University Avenue                   (nzinner@heraca.org)
17     Suite 200 East
       Sacramento, CA  95825
18     (asteinheimer@ecplslaw.com)
       (mellis@ecplslaw.com)
19     (klewellen@ecplslaw.com

20         Executed on July 14, 2010, at Newport Beach, California.

21

22

23
                                    /s/ Elizabeth Lemond McKeen
24                                  Elizabeth Lemond McKeen

25

26

27

28