William E. Kennedy (CSB #158214)
LAW OFFICE OF WILLIAM E. KENNEDY
2797 Park Avenue, Suite 201
Santa Clara, California 95050
(408) 241-1000 phone
(408) 241-1500 fax
willkennedy@pacbell.net

Chris Brancart (CSB #128475)
BRANCART & BRANCART
P. O. Box 686
Pescadero, CA 94060
(650) 879-0141 phone
(650) 879-1103 fax
cbrancart@brancart.com

Noah Zinner (CSB #247581)
HOUSING AND ECONOMIC RIGHTS ADVOCATES
P.O. Box 29435
Oakland, CA 94604-0091
(510) 271-8443 phone
nzinner@heraca.org

Attorneys for Plaintiff MERCEDES HERRERA and others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MERCEDES HERRERA,<br><br>Plaintiff,<br><br>vs.<br><br>LCS FINANCIAL SERVICES CORPORATION and OCWEN LOAN SERVICING LLC,<br><br>Defendants. | **Case No.: C09-02843 TEH**<br><br>**PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: May 2, 2011<br>Time: 10:00 a.m.<br>Courtroom: 12<br>Judge: Hon. Thelton E. Henderson |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................. 1

II. LOANS SUBJECT TO C.C.P. §580 ARE ASCERTAINABLE WITH MINIMAL INQUIRY ............................................................................ 1
    A. Owner Occupancy Status Can be Determined with Minimal Inquiry Through Reference to the Uniform Residential Loan Applications .................. 1
        1. For the Purposes of §580b, it is Only Necessary to Determine the Borrower's Occupancy Status at the Time the Loan Was Originated .... 3
        2. Minimal Inquiry Could Resolve Any Alleged Uncertainties over Owner Occupancy ........................................................... 4
    B. Purchase Money Status Can be Determined Through Reference to the Uniform Residential Loan Application and Public Databases ...................... 6
    C. Foreclosure Status Can be Determined Through Ocwen's Records and Public Databases .............................................................. 6

III. CLASS MEMBERS NEED NOT PROVE ACTUAL RECEIPT OF COLLECTION LETTERS ........................................................................ 7

IV. THE EXISTENCE OF ACTUAL DAMAGE CLAIMS IS NOT GROUNDS TO DENY CLASS CERTIFICATION .......................................................... 8

V. THE ALLEGED EXISTENCE OF ARBITRATION AGREEMENTS OR WAIVERS BY CLASS MEMBERS IS NOT GROUNDS TO DENY CLASS CERTIFICATION .. 9

VI. SETTLEMENT OF MULTIDISTRICT LITIGATION INVOLVING OCWEN IS NOT GROUNDS TO DENY CLASS CERTIFICATION ................................... 10

VII. OCWEN'S SPECULATIVE BONA FIDE ERROR DEFENSE IS NOT A REASON TO DENY CLASS CERTIFICATION ..................................................... 11

VIII. THE INDIVIDUAL REMEDIES AVAILABLE UNDER THE FDCPA IS NOT GROUNDS TO DENY CLASS CERTIFICATION ................................... 12

IX. THE PUTATIVE CLASS IS NOT A "FAIL SAFE" CLASS .............................. 12

X. THE EXISTENCE OF THREE VIOLATIVE LETTERS IS NOT GROUNDS TO DENY CLASS CERTIFICATION .......................................................... 13

XI. MS. HERRERA IS AN ADEQUATE CLASS REPRESENTATIVE ........................ 14

XII. CONCLUSION .................................................................. 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Abels v. JBC Legal Group, P.C.* 227 F.R.D. 541 (N.D.Cal.,2005) . . . . . . . . . . . . . . . . . . . . . . . 12

*Bartlett v Heibl*, 128 F. 3d at 497 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Benito v. Indymac Mortg. Services*, No. 2:09-CV-001218-PMP-PAL, 2010 WL 2089297 (D.Nev., May 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bittinger v. Tecumseh Products Co.*, 123 F.3d 877 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 10

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Coleman v. GMAC*, 220 F.R.D. 64 (N.D. Tenn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . 10

*Haynes v. Logan Furniture Mart, Inc*., 503 F.2d 1161 (7th Cir.1974) . . . . . . . . . . . . . . . . . . . . . 2

*Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523 (E.D.Wis. 2007) . . . . . . . . . . . . . . . . . . . 8

*Herkert v. MRC Receivables Corp.* 254 F.R.D. 344 (N.D.Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . 5

*In re Wilborn*, 404 B.R. 841 (Bkrtcy.S.D.Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Irwin v. Mascott*, 96 F.Supp.2d 968 (N.D.Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 13

*Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443 (D.Nev.,1994) . . . . . . . . . . . . . . 11

*Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620 (N.D.Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mahon v. Credit Bureau of Placer County, Inc.*, 171 F. 3d 1198 (9th Cir. 1999) . . . . . . . . . . . . 8

*Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2010 WL 4628593 (N.D. Ohio November 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503 (N.D.Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803 (E.D. Va. 1998) . . . . . . . . . . . . . . . . . . . . . 7

*Newman v. CheckRite Cal., Inc.*, No. Civ. S-93-1557, 1996 WL 1118092 (E.D. Cal. August 2,1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nichols v. Northland Groups, Inc*., Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867 (N. D. Ill. March 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311 (C.D.Cal.1998) . . . . . . . . . . . . . . . . 5

*Parker v. Risk Management Alternatives, Inc.* 206 F.R.D. 211 (N.D.Ill. 2002) . . . . . . . . . . . . . 12

*Peoples v. Sebring Capital Corp.*, No. 01 C 5676, 2002 WL 406979 (N.D.Ill. May 15, 2002) . 2, 4, 6, 12

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                   C09-02843 TEH

*Powell v. Advanta Bank*, No. 00 C 7234, 00 C 5942, 2001 WL 1035715 (N.D. Ill. September 10, 2001) ................................................................... 2, 6

*Ramirez v. Greenpoint Mortg. Funding, Inc.* 268 F.R.D. 627 (N.D.Cal. 2010) ............. 15

*Reyes v. Premier Home Funding, Inc.*, 640 F.Supp.2d 1147 (N.D. Cal. 2009) ............. 14

*Sadler v. Midland Credit Management, Inc.*, No. 06 C 5045, 2009 WL 901479 (N.D.Ill. March 31, 2009) ................................................................... 8

*Savino v. Computer Credit, Inc.*, 960 F.Supp. 599 (E.D.N.Y.1997) ........................ 7

*Schwarm v. Craighead* 233 F.R.D. 655 (E.D.Cal. 2006) .................................. 11

*Sledge v. Sands*, 182 F.R.D. 255 (N.D.Ill. 1998) ....................................... 12

*Wells v. McDonough*, 188 F.R.D. 277 (N.D.Ill.1999) ..................................... 4

*Wilkerson v. Bowman*, 200 F.R.D. 605 (N.D.Ill. 2001) ................................... 4

*Wyatt v. Creditcare, Inc.*, No. 04-03681-JF, 2005 WL 2780684 (N.D. Cal. Oct. 25, 2005) ..... 9

**Federal Statutes**

15 U.S.C. § 1692k(c) ................................................................. 11

**Federal Rules**

 Federal Rule of Civil Procedure 23(c)(4)(B) ......................................... 11

Federal Rule of Civil Procedure 23 ................................................... 10

**California Cases**

*Brown v. Jensen*, 41 Cal. 2d 193 (1953) ............................................ 3, 4

*Don Veasey Constr. Co. v. Stout Family P'ship,* No. E030879, 203 Cal. App. Unpub. LEXIS 3286 (Cal . App. 4th Dist. Apr. 2, 2003) ................................................. 4

*Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35 (1963) ................................... 4

*Union Bank v. Wendland*, 54 Cal. App. 3d 393 (1976) ................................... 4

**California Statutes**

Code of Civil Procedure §580b ................................................ 1-4, 12-14

Civil Code §1632 ..................................................................... 14

I.   **INTRODUCTION**

The putative class consists of Californians who held mortgages subject to Code of Civil Procedure §580b which were foreclosed, yet still received one of the three collection letters received by plaintiff Mercedes Herrera demanding payment of a deficiency.  Ocwen has asserted numerous objections, but most fundamentally claims that its records are inadequate to determine which loans are subject to section 580b.  The caselaw contradicts this assertion, as multiple courts have certified classes based on loan records such as the Uniform Residential Loan Application.  Further, other records Ocwen maintains, as well as real estate online databases, can aid in ascertaining the class if found to be necessary.  Thus, Ocwen's objections to the ascertainability of the class fall short.  Ocwen asserts many other objections to certification which have no merit.   Accordingly, the class should be certified.

II.  **LOANS SUBJECT TO C.C.P. §580 ARE ASCERTAINABLE WITH MINIMAL INQUIRY**

Ocwen asserts that the records it keeps are inadequate to ascertain which class members have loans which are subject to Code of Civil Procedure §580b ("§580b"), and that therefore the class is not ascertainable.  In particular, Ocwen argues that the necessity of ascertaining 1) which loans relate to owner-occupied properties, 2) which loans were purchase money loans, and 3) which properties were foreclosed, requires substantial individual inquiry inconsistent with class treatment.  Plaintiff will address these issues in turn.

      A.  **Owner Occupancy Status Can be Determined with Minimal Inquiry Through Reference to the Uniform Residential Loan Applications**

Ocwen does not dispute that the Uniform Residential Loan Application ("URLA") for each of the 4,745 borrowers it included in the spreadsheet produced to plaintiff's counsel indicates that the property was to be the borrower's "primary residence" as opposed to an "investment" or even a "secondary residence."  Ocwen nonetheless argues that the owner-occupied designation on the URLA is not reliable.  Courts have consistently determined,

however, that information contained in the URLA is sufficiently reliable to support class certification. In *Peoples v. Sebring Capital Corp.*, No. 01 C 5676, 2002 WL 406979, *9 (N.D.Ill. May 15, 2002), the court certified a TILA class despite defendant's argument that each class member was required to show that the primary purpose of the loan was for consumer use and not for business use.[1]

> It appears that the nature of the loan can be determined on the basis of Sebring's own business records. See *Haynes*, 503 F.2d at 1165 n. 4. The uniform residential loan application includes the amount of the loan, whether the property will be a primary or secondary residence or an investment, the applicant's occupation, the amount and sources of income, and a schedule of other real estate owned. In most cases, this document alone will decide the commercial purpose issue.

*Powell v. Advanta Bank*, No. 00 C 7234, 00 C 5942 2001 WL 1035715 (N.D. Ill. September 10, 2001) provides another example of a court rejecting the argument that individual issues predominated in a TILA class action where a URLA was available for class members. The court stated:

> The loan application on file with Advanta will indicate the purpose of the loan . . . For example, the Uniform Residential Loan Application requires each borrower to state the purpose of the loan and whether the property will serve as the borrower's "primary residence." By law, these documents are required to be preserved and should be contained in each loan file.

*Id.* at *2, and fn. 2.

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.,* 198 F.R.D. 503, 506 (N.D.Ill. 2001) involved similar facts. There, the court certified a FDCPA class, stating:

> The point seems to be that there would have to be some effort going into the determination of whether the loans of the absent class members were for consumer purposes, thus covered, or business purposes, thus not covered. However, the mortgage loan file will contain the requisite information, easily ascertained from a few standard forms. "Even if it is necessary to review the contracts individually to eliminate business purchases, 'such a task would be neither herculean, inhibiting, nor for that matter ... unique.'"

*Id.,* quoting *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n. 4 (7th Cir.1974).

---

[1] The "owner-occupied" (as opposed to investment use) element of C.C.P. §580b is akin to the "consumer use" requirement of the FDCPA and the Truth in Lending Act ("TILA"). Like §580b, the FDCPA and TILA only apply to consumer, not business transactions. 15 U.S.C. § 1692a(5) (FDCPA), 15 U.S.C. § 1602(h)(TILA)

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                    C09-02843 TEH

2

### 1. For the Purposes of §580b, it is Only Necessary to Determine the Borrower's Occupancy Status at the Time the Loan Was Originated

The process of ascertaining owner-occupancy status is further simplified because the anti-deficiency protections of §580b attach at the time a loan is consummated, and thus a borrower's subsequent occupancy status is entirely irrelevant to a creditor's ability to seek a deficiency judgment on the loan. Ocwen's contention that class members would have to establish that they occupied the property through the life of the loan is incorrect.

It is solely the borrower's original intended purpose that defines whether their loan is protected by §580b. In *Brown v. Jensen*, 41 Cal. 2d 193 (1953), the California Supreme Court unambiguously held that §580b protections permanently affix at the time a loan is entered into:

> The broad protection provision (Code Civ. Proc., § 580b) for purchase money trust deeds stands on a reasonable footing. A purchase money trust deed is not like an ordinary trust deed and note upon which only one action may be brought under section 726. Under section 726, as above stated, it is held that whether there is a security is determined as of the time the action is commenced and if the security is lost or has become valueless, an action on the note will lie because the events which caused it to become valueless were beyond the control of the trustor and were not contemplated at the time the money was loaned and the trust deed given. ***With purchase money trust deeds, however, the character of the transaction must necessarily be determined at the time the trust deed is executed. Its nature is then fixed for all time*** and as so fixed no deficiency judgment may be obtained regardless of whether the security later becomes valueless.

*Id.* at 197 (emphasis added). Since the nature of the loan is fixed for all time at the point when the security instrument, i.e. the trust deed, is executed and the loan is entered into, the Court's holding in *Brown* dictates that a borrower's subsequent decision to move, by choice or necessity, will not strip them of their §580b protections.[2]

Additionally, the conclusion that a borrower's subsequent use of a property which they

---

[2] A similar result was reached by *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F.3d 872, 874-5 (7th Cir. 2000). There, the Seventh Circuit interpreted the FDCPA to apply to mortgages entered into for person use, although the property had been converted to business use at the time of the FDCPA violations. In interpreting the statute, the court noted that "[t]he original creditor is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what current use the debtor is making of the loan." *Id.* at 875. The court noted that the Ninth Circuit had assumed the same result in *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068-69 (9th Cir.1992). *Id.*

intended to purchase as a primary residence is irrelevant to coverage under §580b is supported by the statutory purpose of the statute. Section 580b was intended to shift the risk of inadequate security for purchase money mortgages to the lender. *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 42 (1963). By so doing, §580b was intended to maintain stability in the housing markets by discouraging risky lending based on inflated property values. *Id.* Underlying this policy goal is the understanding that the lender knows the value of the security and in deciding to give the loan, assumes the risk that it will become inadequate. *Brown*, 41 Cal. 2d 197. A statute designed to discourage this particular category of risky loans from being made is necessarily based on the facts as they lie at the time the loan is made, when the relative risks of the transaction would affect the decisions of the parties involved.

To support its argument, Ocwen cites two cases, none of which are relevant to the issue of whether a borrower's subsequent change of address eliminates the anti-deficiency protections of §580b. *Union Bank v. Wendland*, 54 Cal. App. 3d 393 (1976), concerned a refinance loan, not purchase money loans like those alleged in the class complaint. *Don Veasey Constr. Co. v. Stout Family P'ship,* No. E030879, 203 Cal. App. Unpub. LEXIS 3286 (Cal . App. 4th Dist. Apr. 2, 2003), concerned a construction loan on a commercial property. Plaintiff's proposed class consists only of borrowers of purchase money loans on primary residences, loans that are clearly within the scope of §580b.

### 2.   Minimal Inquiry Could Resolve Any Alleged Uncertainties over Owner Occupancy

Even if it is determined that additional inquiry, beyond referencing the URLA, is necessary to determine whether the property securing the loans qualifies as "owner-occupied," the courts have indicated that such inquiry is no bar to class certification. Thus, in *Peoples*, *supra,* 2002 WL 406979 at *9, the court stated that "[f]inally, if there is genuine confusion over this issue [consumer versus business use], class members can be asked a single question to determine whether they are entitled to relief." *Id.* at *9, (quoting *Wilkerson v. Bowman*, 200 F.R.D. 605, 610 (N.D.Ill. 2001), *citing Wells v. McDonough*, 188 F.R.D. 277, 279 (N.D.Ill.1999)

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                    C09-02843 TEH

4

– persons who have business debt can be "weeded out [of FDCPA class] by asking the class members one question."). In determining class acertainability, "[i]t is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not "so daunting as to make the class definition insufficient." *Herkert v. MRC Receivables Corp.* 254 F.R.D. 344, 348 (N.D.Ill. 2008)(FDCPA case) *quoting Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D.Ill. 2007).

Courts have frequently certified classes defined by residency in a geographic area, even in cases involving release of hazardous substances where presumably there was a need to show *actual* residency by class members in the affected zone. Indeed, many of these cases involved classes much larger than the putative class here. *See O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal. 1998)(surveying cases).

It is also significant that Ocwen conducts investigations of owner-occupancy and makes internal notations in its records as to whether the properties are in fact owner-occupied. See Neil Decl. ¶6 ("Ocwen was unable to verify the fact that plaintiff resided at the property, and Ocwen's mortgage-servicing system listed her property as not owner-occupied.") and Kennedy Decl. filed herewith ("Kennedy Decl. II"), Exh. A, McKeen 5/21/10 letter, p. 3, ¶3  (". . . Ocwen does have information regarding the owner-occupancy status of properties; however, that information is subject to varying degrees of reliability and cannot be used to definitively determine whether a particular property is or was over owner occupied.") Those cases where Ocwen investigated and confirmed that the property was owner-occupied should be treated to be conclusively owner-occupied – further simplifying the process of ascertaining the class.

In sum, the caselaw firmly holds that information on the URLA is adequate to establish owner-occupancy for purposes of class certification. To the extent that additional inquiry is needed, it can be accomplished by obtaining the information from class members through a simple questionnaire. Further, it appears that Ocwen maintains records as to owner occupancy apart from the URLA.

### B. Purchase Money Status Can be Determined Through Reference to the Uniform Residential Loan Application and Public Databases

The URLA form also indicates whether the loan is a purchase money loan, or a refinance loan. As discussed in the *Peoples* and *Powell* cases above, the URLA is sufficient to establish owner-occupancy. Accordingly, the URLA should be deemed sufficient to establish purchase money status as well.

Further, there is an additional method to verify that a loan is purchase money. This can be accomplished by reviewing publicly available real estate databases such as Sitex. Kennedy Decl. II ¶3, Exh. B. (Sitex report for Ms. Herrera) Sitex lists mortgages secured by the property, and also lists transfer dates. For purchase money loans, the dates on the loans and the property acquisition dates would correspond.

### C. Foreclosure Status Can be Determined Through Ocwen's Records and Public Databases

Ocwen argues that its records – at least as to those loans where it did not service both the first and second loan – are not reliable to determine whether a foreclosure has taken place because they rely on third parties to provide this information:

> Additionally, while Ocwen has foreclosure information for loans where it services the first lien mortgage, Ocwen does not always have foreclosure information in those situations in which it services only the junior lien. In such instances, Ocwen maintains information in its databases that provide information about whether a foreclosure has taken place; however, this information is not always definitive or reliable, as it depends upon foreclosure information being communicated to Ocwen accurately and thoroughly by third parties.

Neil Declaration, ¶6.

This argument fails because Ocwen has control over which data vendor it will rely on to obtain this data. Ocwen has provided no reason to believe that the vendor it chose would provide inaccurate information. To the extent it did not take steps to make sure the information it purchased was accurate, it should not profit from its own unreliable records. *Irwin v. Mascott*, 96 F.Supp.2d 968, 973 (N.D.Cal. 1999)("that defendants do not maintain information that allows a precise determination of the nature of each purchase should not be a bar to proceeding under

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                          C09-02843 TEH

6

the FDCPA.")

Ocwen also argues that in some cases, it only has information that a "Notice of Default" and "Notice of Sale" occurred, but does not have information that a foreclosure sale actually occurred. In such cases, foreclosure sale information can be easily ascertained from public online databases such as Sitex. Kennedy Decl. II, Exh. B. Ocwen cannot rely on its own failure to obtain this information.

Finally, Ocwen acknowledges that it held both the first and second loan with respect to 1,660 of the 4,745 loans. Opposition Errata, p. 10, line 14-17 ("Of the 4,745 loans identified by plaintiffs, Ocwen serviced only the second lien on 3,085 of them). With respect to these loans, there can be no doubt that Ocwen know a foreclosure took place, since it was directly involved in the foreclosure.

### III. CLASS MEMBERS NEED NOT PROVE ACTUAL RECEIPT OF COLLECTION LETTERS

Ocwen next argues that it is necessary for class members to prove that they actually received the collection letters in issue. This position has been soundly rejected in numerous cases. *Irwin, supra*, 96 F.Supp.2d at 976 ("Defendants say that proof of whether each plaintiff actually received a notice in violation of the FDCPA would require individual investigation and defeat commonality. A debt collector violates the FDCPA by sending a notice containing unlawful provisions. Whether the notice is received is irrelevant to the issue of liability. [fn] Even if receipt of the collection letter were required, there is an evidentiary presumption that a properly posted letter has been received by the addressee"); *Newman v. CheckRite Cal., Inc*., No. Civ. S-93-1557, 1996 WL 1118092, at *5 (E.D. Cal. August 2,1996)("As this court has noted before, whether the notice is actually received by plaintiffs is irrelevant on the issue of whether the FDCPA was violated."); *Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 805 (E.D. Va. 1998)(FDCPA liability does not require showing the consumer read or received the dunning letter); *Savino v. Computer Credit, Inc.*, 960 F.Supp. 599, 605 (E.D.N.Y. 1997) (rejecting as "contrary to the applicable law" the debt collector's argument that consumer was barred from

1  receiving damages because he did not receive the letter); *Sadler v. Midland Credit Management,*
2  *Inc.*, No. 06 C 5045, 2009 WL 901479 *2 (N.D.Ill. March 31, 2009)(same); *Nichols v. Northland*
3  *Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867 at *8 (N. D. Ill. March 31,
4  2006)(same); *Bartlett v Heibl*, 128 F. 3d at 497, 499 (7th Cir. 1997)(same); *Hazelwood v. Bruck*
5  *Law Offices SC*, 244 F.R.D. 523, 525 (E.D.Wis. 2007)(same) *See also, Mahon v. Credit Bureau*
6  *of Placer County, Inc.*, 171 F. 3d 1198, 1201 (9th Cir. 1999)("proper and timely mailing of a
7  document raises a rebuttable presumption that it is received by the addressee.").

8  Although actual receipt of the violative letters is legally irrelevant, Ocwen nonetheless
9  contends that it sent the collection letters to foreclosed addresses, and therefore it is unlikely that
10 class members in fact received them. This contention ignores that fact that consumers would
11 likely file a Change of Address forms with the Post Office to receive forwarded mail. Further,
12 based on Ms. Herrera's experience, it appears that Ocwen updated foreclosed borrower's
13 addresses for its continuing collection efforts. On August 18, 2008, Ocwen mailed a Notice of
14 Assigment to Ms. Herrera at her post-foreclosure address (Fremont Blvd.). Ocwen had mailed
15 prior correspondence to the foreclosed property (Cherry Lane). FAC, Exhs. A, B. and D. All
16 correspondence was actually received by Ms. Herrera. *See* Herrera Decl. dated 2/18/11 (Docket
17 #81), ¶7.

### IV. THE EXISTENCE OF ACTUAL DAMAGE CLAIMS IS NOT GROUNDS TO DENY CLASS CERTIFICATION

Ocwen argues that the putative class' claims for emotional damages bar class certification. In response, plaintiff agrees not to pursue a class claim for emotional damages, and will pursue this claim only on an individual basis.

In *Hazelwood, supra*, the court certified a FDCPA class which included actual damages claims, after noting that plaintiffs had withdrawn their claim for emotional distress.

> Defendant argues that the various questions affecting individual members predominate. For the following reasons, I disagree. As previously suggested, the predominant issue in the case is whether defendant's letter violated the FDCPA, and this issue is common to all class members. None of the issues that defendant suggests relate to individuals defeats class certification. First, defendant asserts that different individuals may incur different

> amounts of damages. However, it is unlikely that the actual damages suffered by class members will vary significantly (plaintiffs have agreed to withdraw their claim for damages for emotional distress), and even if not all individuals incur identical amounts of damages, this possible variation does not defeat class certification. [citation]

244 F.R.D. at 525.

Ocwen also argues that some of the class members who made payments may have done so for reasons other than the fact that payment was demanded from them. In other words, Ocwen claims that some class members may want Ocwen to keep the money paid. This can easily be ascertained from class members simply by asking them whether they would like Ocwen to keep their money once they are informed of the fact that the deficiency balance is legally unenforceable.

Finally, the fact that Ms. Herrera paid no money in response to Ocwen's demands and therefore is not eligible for actual damages in the form of restitution does not render her atypical. *Irwin v. Mascott*, 96 F. Supp. 2d 968, 977 (N.D. Cal. 1999); *Wyatt v. Creditcare, Inc.*, No. 04-03681-JF, 2005 WL 2780684, at *4-5 (N.D. Cal. Oct. 25, 2005)("Although it appears that Wyatt did not make an interest payment to Defendants and therefore is not entitled to actual damages, the fact that other prospective class members may be entitled to actual damages does not render Wyatt's legal claims atypical of those of the class.")

## V. THE ALLEGED EXISTENCE OF ARBITRATION AGREEMENTS OR WAIVERS BY CLASS MEMBERS IS NOT GROUNDS TO DENY CLASS CERTIFICATION

Ocwen argues that class certification is inappropriate because the defenses available to it are individualized and preclude classwide application. Opposition at p. 13. Specifically, Ocwen asserts that "with respect to many putative class members," it "may be entitled to raise the defense that the borrowers have agreed to resolve their disputes with Ocwen by arbitration." *Id*. In other cases, Ocwen claims, absent class members may have entered into settlement and release agreements or loan modifications that Ocwen may be entitled to enforce. *Id.* The alleged existence of such affirmative defenses does not make certification of the class inappropriate.

That some members of the putative class may have signed arbitration clauses is not a

basis to deny certification. *Coleman v. GMAC*, 220 F.R.D. 64, 91 (N.D. Tenn. 2004); *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460 (S.D.N.Y. 1989) (certifying class despite the fact that some but not all class members had signed arbitration agreements). A subclass can be created at a later stage of the litigation. *Id.*; *see also Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2010 WL 4628593, *4 n.1 (N.D. Ohio November 4, 2010) (claim that some putative class member's claims fell within the scope of arbitration agreements did not preclude certification in FDCPA case ["Any arbitration-related defenses that Midland and MCM have to claims of certain class members may be dealt with pursuant to Fed.R.Civ.P. 23 at a later stage in the litigation, through the creation of subclasses, or by eliminating some members of the class."]). Indeed, Ocwen does not give any estimate of the number of potential class members who may have mortgages with mandatory arbitration clauses. In any event, that number is likely quite small – as of 2004, both Fannie Mae and Freddie Mac implemented bans on investing in mortgages containing mandatory arbitration clauses. (See http://realtytimes.com/rtpages/20040210_arbitration.htm and http://adrresources.com/adr-news/212/mortgages-mandatory-arbitration-fannie-mae-usa [last viewed April 8, 2011].) Any class members whose mortgages contain such clauses can be dealt with via a sub-class or carve-out.

Similarly, that some members of the putative class may have released certain claims is not a basis to deny certification. That putative class members' claims may be subject to varied defenses, including alleged releases of liability, is not a basis to deny class certification. *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997). *See also Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) ("the presence of individual issues of compliance with the statute of limitations here does not defeat the predominance of the common questions")

### VI. SETTLEMENT OF MULTIDISTRICT LITIGATION INVOLVING OCWEN IS NOT GROUNDS TO DENY CLASS CERTIFICATION

Ocwen also argues that the pending settlement of a Multidistrict Litigation case in which

it is anticipated that up to 2,664 putative class members will waive their claims is a reason to deny class certification. The individuals who waive their claims will be easily ascertainable and can be efficiently excluded from the class. If anything, a reduction in the class size will make administration of this action more manageable, not less so.

### VII. OCWEN'S SPECULATIVE BONA FIDE ERROR DEFENSE IS NOT A REASON TO DENY CLASS CERTIFICATION

Ocwen attempts to profit by its own error by stating that it will raise a bona fide error defense to a portion of the class. Ocwen contends that a systematic error caused one of the three challenged collection letters to be unintentionally generated. However, Ocwen asserts facts that establish that this defense is unavailing because Ocwen will not be able to meet its burden of proof. The FDCPA is a strict liability statute. *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1450 (D.Nev.,1994). The burden of proving the elements of the bona fide error defense set forth in 15 U.S.C. § 1692k(c) falls on the defendant. Specifically, the statute requires defendant to show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

The declaration of Chomie Neil, however, states that Ocwen does not know who was affected by the alleged glitch: "Ocwen is not aware of how many other borrowers may have been affected by this inadvertent error by the servicing system." Without knowing which files were affected by the alleged glitch, and which were not, Ocwen will not be able to meet its burden.

Even if Ocwen were aware of who was affected, this group could be organized into a subclass, and Ocwen could attempt to prove the elements of the bona fide error defense with respect to the subclass only. *Schwarm v. Craighead* 233 F.R.D. 655, 664 (E.D.Cal. 2006)("The court has discretion to create subclasses when appropriate." *citing* Fed.R.Civ.P. Rule 23(c)(4)(B)).

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                              C09-02843 TEH

11

## VIII. THE INDIVIDUAL REMEDIES AVAILABLE UNDER THE FDCPA IS NOT GROUNDS TO DENY CLASS CERTIFICATION

Ocwen argues that since consumers affected by FDCPA actions may bring individual actions under the FDCPA, class treatment is not the superior way to adjudicate the putative class members' claims. Courts have rejected this argument which, if successful, would invalidate all class actions despite a congressional intent to allow them. *Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D.Ill.1998)( "Under CBC's reasoning, it would be impossible to bring a FDCPA class action if there was a chance a possible class member incurred a business debt. Only those classes whose claims revolve around debts which on their face could definitively be associated with personal purposes could be certified under the FDCPA. Such a finding would be contrary to the clear remedial goals of the FDCPA."); *Peoples v. Sebring Capital Corp.*, *supra,* 2002 WL 406979, at *9 ("'The need to show that the transactions involved are consumer transactions is inherent in every [TILA] class action. If that need alone precluded certification, there would be no class actions under [the TILA].' [cite]. Such a result would be inconsistent with the TILA's express provision for class actions.")

Ocwen's argument has found little support in the courts, which have certified FDCPA cases despite the availability of individual remedies. *Abels v. JBC Legal Group, P.C.* 227 F.R.D. 541, 547 (N.D.Cal. 2005)("Case law affirms that class actions are a more efficient and consistent means of trying the legality of collection letters"); *Parker v. Risk Management Alternatives, Inc.* 206 F.R.D. 211, 213 (N.D.Ill. 2002)("Courts have repeatedly held that it is appropriate to certify similar FDCPA claims for class action treatment.")

## IX. THE PUTATIVE CLASS IS NOT A "FAIL SAFE" CLASS

Ocwen argues that because the class definition makes reference to §580b, plaintiff has defined a "fail safe" class. The prohibition on fail-safe class definitions "preclude[s] classes where 'defining the purported class ... requires addressing the central issue of liability to be decided in the case.'[citation omitted]" Stated differently, a fail-safe definition means "the class definition precludes the possibility of an adverse judgment against class members; the class

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                                                     C09-02843 TEH

12

members either win or are not in the class." *In re Wilborn*, 404 B.R. 841, 860 (Bkrtcy.S.D.Tex. 2009).

The class definition does not describe a fail-safe class because class members must do more than merely show they held a loan subject to §580b in order to prevail. The plaintiff class must prove that the letters they received violate the FDCPA. Indeed, it is this determination which is the "central issue of liability" here. Accordingly, the class definition is not "fail safe."

## X. THE EXISTENCE OF THREE VIOLATIVE LETTERS IS NOT GROUNDS TO DENY CLASS CERTIFICATION

Ocwen next argues that the fact that it sent three potentially violative letters, not one, bars class certification. Plaintiff contends, however, that each letter independently violates the FDCPA, insofar as each contains a demand for payment without disclosure of the voluntary nature of the deficiency. See Order Denying Defendants' Motions to Dismiss First Amended Complaint, p. 10, line 25-27 ("It is plausible that the least sophisticated debtor could be misled by a letter stating that her debt is "due and owing" when that debt is subject to California's anti-deficiency law, and the letter does not advise the debtor as to the significance of section 580b."). In the event that the court determines that the letters are only violative by virtue of their cumulative effect (as Ocwen suggests), then subclasses can be formed based on particular combinations of the three letters.

In *Irwin v. Mascott*, *supra*, at 982-983, the court certified a FDCPA class which consisted of recipients of *10* letters and *multiple* FDCPA violations.

> Such claims are premised upon the allegation that it is the policy and practice of defendants to cause collection letters in the forms of Exhibits 1-10 (attached to the Complaint) to be sent to residents of California in an attempt to collect dishonored checks, in violation of the FDCPA and the CUBPA, by demanding unauthorized amounts, by contradicting and overshadowing the violation notice, by demanding amounts which cannot lawfully be recovered, by falsely representing that a communication is from an attorney, by falsely representing that the California Penal Code has been violated, by threatening to communicate false information to a credit reporting agency, and by using false representations or deceptive means in an attempt to collect a debt. 15 U.S.C. §§ 1692e, e(2), e(3), e(4), e(5), e(7), e(8), e(10), f and f(1).

As Ocwen points out, plaintiff alleges that the Notice of Default (Exh. A to FAC)

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION            C09-02843 TEH

13

contains additional violations, not found in the other two letters. If the court finds that the demand for payment without advising as to the significance of §580b does not violate the FDCPA, but that other language in the Notice of Default is violative, a subclass can be formed of individuals who received the Notice of Default.

Ocwen also points out that one of the statements in the letter would only be violative to individuals who did not file bankruptcy. If the Notice of Default is found by court to be otherwise compliant, individuals who filed bankruptcy could be eliminated from the class.

## XI.  MS. HERRERA IS AN ADEQUATE CLASS REPRESENTATIVE

Finally, Ocwen challenges Ms. Herrera's credibility in an attempt to establish that Ms. Herrera is not an adequate class representative. First, Ocwen makes the unfounded suggestion that Ms. Herrera was not truthful when she testified that she did not occupy her home. Ms. Herrera did, in fact occupy her home, as indicated in her declaration and her deposition testimony. Ms. Herrera also submits an additional declaration with ample proof of her residency to rebut this charge. Herrera Decl. filed herewith ("Herrera Decl. II") ¶¶2-7, Exhs. 1-10. Ocwen's assertion appears to be completely based on phone calls and unspecified "door knocks" made during a period of approximately 70 days in late 2007 and early 2008. Ocwen ignores the fact that according to its records, its representatives spoke to Ms. Herrera on multiple occasions in August and September of 2007. Kennedy Decl. II ¶4, Exh. C.

Ocwen also argues that the false information set forth on her credit application disqualifies her from serving as class representative. While Ms. Herrera did sign the application with false information, she did not originate or know of the false information. The circumstances of the transaction are set forth in Ms. Herrera's declaration and in her deposition. Herrera Decl. II, ¶11, Kennedy Decl. Exh. D. Ms. Herrera provided a loan broker with correct information concerning her loan. The loan broker filled in all the loan documents, then presented them *en masse* to Ms. Herrera for signatures. Although all conversations with the loan broker were in Spanish, all of the loan documents were in English only in violation of Civil Code §1632. *See Reyes v. Premier Home Funding, Inc.*, 640 F.Supp.2d 1147, 1157 (N.D. Cal. 2009)

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION        C09-02843 TEH

14

Ms. Herrera relied on the broker to fill out the forms accurately, but in several respects he did not.

Other courts have contemplated this precise issue and found that a class representative with misrepresentations on their loan application were nonetheless adequate. For example, *Benito v. Indymac Mortg. Services*, No. 2:09-CV-001218-PMP-PAL, 2010 WL 2089297, *5 (D.Nev. May 21, 2010) states:

> OneWest challenges Benito's status as an adequate representative for Subclass C because he lied on his loan application about his income, and thus there would be an individual defense against him not applicable to the class. That would not affect his status as a representative of Subclass C. The only issue in Subclass C is whether OneWest has a right to use the Nevada judicial system to foreclose or evict when it is not registered here. Whether Benito lied on his loan application will have no direct bearing on that question.

*See also Ramirez v. Greenpoint Mortg. Funding, Inc.* 268 F.R.D. 627, 639 (N.D.Cal. 2010).

Ocwen also argues that Ms. Herrera signed a verification to interrogatory responses which indicated that she had read the responses, but at deposition testified that she had read only some of the responses. Ms. Herrera's deposition explains the careful process by which she assured that the information provided in the interrogatory responses was accurate. In short, she met with her attorneys, provided them the information. The attorneys then read the responses to her in Spanish to make sure they were accurate. Herrera Decl. II ¶10.

## XII. CONCLUSION

Plaintiff has shown that membership in the class can be ascertained through defendants' records, supplemented if necessary with a minimal amount of inquiry. None of the many arguments against class certification posited by Ocwen constitute grounds to deny class certification. Accordingly, the class should be certified.

```
                              LAW OFFICE OF WILLIAM E. KENNEDY
                              BRANCART & BRANCART
                              HOUSING AND ECONOMIC RIGHTS ADVOCATES


Dated: April 13, 2011             /s/
                         By:  William E. Kennedy
                              Attorneys for Mercedes Herrera and the Proposed Class
```

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                    C09-02843 TEH

15

**PROOF OF SERVICE**

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and am not a party to the within action. My business address is 2797 Park Avenue, Suite 201, Santa Clara, CA 95050.

On the date shown below, I served the foregoing document(s) described as:

**PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

on the following parties in the manner indicated below:

| Attorney for LCS Financial Services: | Attorney for Ocwen Loan Servicing LLC |
|---|---|
| Ms. Kimberly E. Lewellen | Elizabeth Lemond McKeen |
| Ellis, Coleman, Poirier, LaVoie & Steinheimer | O'Melveny & Myers, LLC |
| 555 University Avenue, Suite 200 East | 610 Newport Center Drive, 17th Floor |
| Sacramento, CA 95825 | Newport Beach, CA 92660 |
| fax: (916) 283-8821 | fax: (949) 823-6994 |
| klewellen@ecplslaw.com | emckeen@omn.com |
| | |
| Noah Zinner | Chris Brancart |
| Housing and Economic Rights Advocates | Brancart & Brancart |
| P.O. Box 29435 | P.O. Box 686 |
| Oakland, CA 94604 | Pescadero, CA 94060 |
| fax: (510) 868-4521 | fax(650) 879-1103 |
| nzinner@heraca.org | cbrancart@brancart.com |

[X] **(BY ELECTRONIC SERVICE)** The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **April 13, 2011** at Santa Clara, California.

  /s/
William E. Kennedy

PLAINTIFF MERCEDES HERRERA'S REPLY TO OPPOSITION
TO MOTION FOR CLASS CERTIFICATION                                   C09-02843 TEH

16