

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 610 Newport Center Drive, 17th Floor | SAN FRANCISCO |
| BRUSSELS | Newport Beach, California 92660-6429 | SHANGHAI |
| CENTURY CITY | | SILICON VALLEY |
| HONG KONG | TELEPHONE (949) 760-9600 | SINGAPORE |
| LONDON | FACSIMILE (949) 823-6994 | TOKYO |
| LOS ANGELES | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

May 21, 2010

OUR FILE NUMBER
632,360-271

WRITER'S DIRECT DIAL
(949) 823-7150

WRITER'S E-MAIL ADDRESS
emckeen@omm.com

**VIA FEDEX**

William E. Kennedy, Esquire
Law Office of William E. Kennedy
2797 Park Avenue, Suite 201
Santa Clara, California 95050

Re: *Herrera v. LCS Financial Services Corporation et al.*

Dear Mr. Kennedy:

This letter responds to your letter of May 14, 2010, which purports to summarize the contents of our meet and confer conversation on May 10, 2010. As with prior correspondence, while this is an accurate reflection of some portions of our conversation, it is not as to others and it does not constitute a record of our call. I will summarize, below, what Ocwen's positions are as to the various issues you raised.

First, as you indicate, Ocwen has agreed to provide supplemental responses to Requests For Production Nos. 13 and 14. These supplemental responses are enclosed herewith, along with responsive documents that could be located through a reasonable search. As explained both in Ocwen's written responses to these requests and in our meet and confer conversations, Ocwen is unable to conduct a loan-by-loan review for specific communications. In particular, while Ocwen's system includes comments that summarize communications between Ocwen and borrowers, it is simply not possible for Ocwen to query this system (such as by conducting a key word search or the like).

Regarding Request Nos. 5 and 6, I have agreed to inquire as to what fields of data would have been transmitted from Ocwen to LCS, if any, relating to Ms. Herrera's loan.

Ocwen has agreed to produce documents that evidence and support its affirmative defenses and intends to do so soon. However, discovery is ongoing therefore Ocwen does not agree to your unilateral imposition of a time by which all such documents must be produced.

Exh. 11

O'MELVENY & MYERS LLP
William E. Kennedy, Esq., May 21, 2010 - Page 2

     Regarding Interrogatory Nos. 9 and 10, Ocwen's position remains as outlined in its written discovery responses and in my letter of April 22, 2010. Ocwen has committed to producing written documents that reflect its affirmative defenses, if any, as well as a witness to testify on behalf of the company regarding these issues. Your requests that Ocwen identify *all* the individuals who might have knowledge of a particular policy is overbroad, unnecessary and unproductive.

     Regarding Interrogatory No. 1, as we have discussed on numerous occasions, Ocwen does not have a field in its database that would permit it to identify whether any particular loan is a purchase money mortgage or a refinanced mortgage. As I also mentioned, while certain loan files include a loan application that would indicate whether a particular loan was a purchase money loan or a refinance, Ocwen does not always receive such a loan application for each loan. To the extent your letter suggests that Ocwen simply does not "keep" a copy of the application, it is misleading and incorrect.

     Contrary to what your letter indicates, Ocwen does have information regarding the owner-occupancy status of properties; however, that information is subject to varying degrees of reliability and cannot be used to definitively determine whether a particular property is or was ever owner occupied. Your assertion that "foreclosure information is not always placed into Ocwen's database," is confusing. The point I expressed on the call was that, for mortgage loans where Ocwen services the second lien but not the first lien (as was the case with Ms. Herrera's loan), Ocwen is often unaware of whether the first lien is in foreclosure, depending upon the status of the second lien.

     Your letter correctly points out that Ocwen cannot determine whether a loan is a purchase money loan or a refinance transaction from the data and files that are available to it and that it cannot always determine the foreclosure status of senior liens that it does not service. As I further indicated, while Ocwen has data regarding the purported occupancy status of the property, such information does not conclusively demonstrate whether the property was actually owner-occupied (particularly where borrowers may be incentivized to misrepresent such information in connection with a loan application in order to receive a lower interest rate at the time of origination). In order to determine whether any particular property was actually owner-occupied, an individualized factual and evidentiary analysis would be required.

     (Moreover, it is worth nothing that, while this threshold issue prevents Ocwen from responding to Interrogatory No. 1, as well as other interrogatories, it is by no means the only issue with respect to that interrogatory, which is facially overbroad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence.)

     Finally, the two proposals you made do nothing to address the concerns and issues raised by Ocwen. Your first suggestion, *i.e.,* that Ocwen perform a manual, loan-by-loan review of thousands of files in order to obtain additional information about whether certain loans were purchase money loans is no "compromise," it is simply a reiteration of your original request. As we have repeatedly explained, meeting this request would be not only unduly burdensome, it also would not even result in a solution precisely because many of the files in question (which your

O'Melveny & Myers LLP
William E. Kennedy, Esq., May 21, 2010 - Page 3

compromise would require us to manually review) still will not contain information sufficient to determine whether the loan is a purchase money mortgage or a refinance.

    Your second compromise is, as you note, unacceptable because of the grave privacy implications it would have with respect to the personal information of hundreds (if not thousands) of individuals who are, by definition, outside of your putative class definition (as well as the privacy of absent putative class members).

    Sincerely,

Elizabeth Lemond McKeen
for O'MELVENY & MYERS LLP

ELM:trg

cc:    Christopher Brancart, Esq.
       Andrew M. Steinheimer, Esq.
       Noah Zinner, Esq.

NB1:797247.1