IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERCEDES HERRERA,

                              Plaintiff,

        v.

LCS FINANCIAL SERVICES
CORPORATION and OCWEN
LOAN SERVICING, LLC,

                              Defendants.

NO. C09-02843 TEH

ORDER GRANTING MOTION
FOR CLASS CERTIFICATION

        This matter came before the Court on May 2, 2011, on the motion for class
certification filed by Plaintiff Mercedes Herrera ("Herrera" or "Plaintiff"). For the reasons set
forth below, Plaintiff's motion is GRANTED.

**BACKGROUND**

        Herrera alleges in her First Amended Class Action Complaint ("FAC") that Defendant
Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen"), violated federal and state law in its
efforts to collect the debt she incurred to purchase a home she subsequently lost in
foreclosure. She has identified 4,746 loans taken out by borrowers subjected to similar debt
collection efforts. She seeks to certify a class of these borrowers.

        In 2005, Herrera purchased a condominium in Fremont, California, using two home
mortgage loans from New Century Mortgage Corporation. The first mortgage was for
$348,000 and the second was for $87,000. The two mortgages were funded simultaneously
as purchase money loans. At some point in time, Ocwen began servicing the second
mortgage. Herrera eventually fell behind on her mortgage payments and the holder of the
first mortgage foreclosed on the condominium.

1    Following the foreclosure, Ocwen sent three debt-collection notices to Herrera.

2    Herrera alleges that these communications violated California's Rosenthal Fair Debt

3    Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*, which

4    incorporates by reference the provisions of the federal Fair Debt Collection Practices Act

5    ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Specifically, Herrera alleges that Ocwen violated 15

6    U.S.C. § 1692e and § 1692f, which outlaw deceptive or unfair debt collection efforts. The

7    three collection letters Ocwen sent to Herrera that allegedly violate the FDCPA are a Notice

8    of Default, an Account Statement, and a Notice of Assignment. The Notice of Default

9    allegedly violated the FDCPA because it (1) failed to inform Herrera that California law

10   precludes deficiency judgments following foreclosure; (2) implied that consequences would

11   flow from not paying; (3) implied personal liability for people not already in bankruptcy; and

12   (4) threatened foreclosure and other consequences. The Account Statement allegedly violated

13   the FDCPA because it (1) failed to inform Herrera of the state law against deficiency

14   judgments; (2) implied legal consequences as a result of nonpayment; and (3) implied that

15   payment was mandatory rather than voluntary. The Account Statement allegedly violated the

16   FDCPA because it failed to advise Herrera about the state law against deficiency judgments

17   and implied that payment was mandatory.

18       Herrera seeks to certify a class of similarly situated people who received at least one

19   of these letters from Ocwen after losing their California home in foreclosure. Membership is

20   further defined to include individuals whose loans are subject to California Code of Civil

21   Procedure section 580b ("section 580b"). Section 580b bars deficiency judgments to satisfy a

22   junior mortgage after the property securing the mortgage is sold in foreclosure where (1) the

23   junior mortgage was a purchase money loan for the purchase of a dwelling for not more than

24   four families; and (2) the borrower occupied the dwelling.

25       In discovery, Ocwen produced a spreadsheet of 4,746 loans that might satisfy

26   Herrera's criteria. To identify these loans, Ocwen used its own databases as well as

27   information contained in borrowers' Uniform Residential Loan Applications ("URLAs").

28

2

1    Plaintiff seeks to certify a class of the borrowers associated with these loans. Ocwen opposes

2    the motion.

3

4    **LEGAL STANDARD**

5           Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. A

6    party seeking to certify a class must demonstrate that it has met all four requirements of Rule

7    23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst.,*

8    *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) allows a class to be certified

9           only if (1) the class is so numerous that joinder of all members is impracticable;
            (2) there are questions of law or fact common to the class; (3) the claims or
10          defenses of the representative parties are typical of the claims or defenses of
            the class; and (4) the representative parties will fairly and adequately protect
11          the interests of the class.

12   Fed. R. Civ. P. 23(a). That is, the class must, at a minimum, satisfy the requirements of

13   numerosity, commonality, typicality, and adequacy. While Rule 23(a) is silent as to whether

14   the class must be ascertainable, courts have held that the rule implies this requirement. *In re*

15   *TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010). In addition, a

16   class must fall into one of the categories of class actions described in Rule 23(b). Fed. R. Civ.

17   P. 23(b). Here Plaintiff seeks to certify a class under Rule 23(b)(3), which requires a court to

18   find both that common questions of law or fact "predominate" over individual questions, and

19   that "a class action is superior to other available methods for fairly and efficiently

20   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

21          The party seeking certification must provide facts to satisfy these requirements;

22   simply repeating the language of the rules in its moving papers is insufficient. *Doninger v.*

23   *Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). A district court must conduct a

24   "rigorous analysis" of the moving party's claims to determine whether the requirements of

25   Rule 23 are met. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72

26   L.Ed.2d 740 (1982).  However, although the court is "at liberty" to consider evidence that

27   relates to the merits if such evidence also goes to the requirements of Rule 23, *Hanon v.*

28   *Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992), the court may not consider whether

United States District Court
For the Northern District of California

3

1  the party seeking class certification has stated a cause of action or is likely to prevail on the

2  merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732

3  (1974). If a district court concludes that the moving party has met its burden of proof, then

4  the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

5

6  **DISCUSSION**

7       Herrera moves for certification of a class of all individuals who "held a mortgage loan

8  secured by property in California," where (1) "[t]he mortgage loan was subject to California

9  Code of Civil Procedure § 580b in that the loan was (a) a purchase money loan for the

10 purchase of a dwelling for not more than four families, and (b) for property which was

11 owner-occupied"; (2) "[t]he real property which secured the loan was sold in foreclosure";

12 and (3) "Defendant Ocwen sent either a Notice of Default, an Account Statement, or a Notice

13 of Assignment . . . after June 25, 2008." Mot. at 1-2. Because Herrera requests certification

14 under Rule 23(b)(3), she presents evidence showing the predominance of common issues and

15 the superiority of a class action in addition to evidence aimed at Rule 23(a)'s requirements of

16 numerosity, commonality, typicality, adequacy, and ascertainability.

17      Ocwen challenges class certification on several grounds. It argues that individualized

18 issues predominate, and that a class action is not the superior method for adjudicating

19 Plaintiff's claims. It also argues that the proposed class is not ascertainable, Plaintiff cannot

20 demonstrate commonality among class members, Plaintiff's claim is not typical of those of

21 absent class members, and Plaintiff is not an adequate class representative.

22      The Court begins by examining the requirements of Rule 23(a). If those requirements

23 are met, the Court will move on to the predominance and superiority inquiries under Rule

24 23(b)(3).

25

26

27

28

**United States District Court**
For the Northern District of California

4

**I. Rule 23(a)**

**A. Numerosity**

To satisfy Rule 23(a)(1), Plaintiff must show that "the class is so numerous that joinder of all members is impracticable." Plaintiff contends that 4,746 loans serviced by Ocwen meet this criterion for class membership. While Ocwen disputes whether class members can be identified, it does not dispute the impracticability of joinder. The Court agrees with Plaintiff that joinder of thousands of class members would be impracticable. The numerosity requirement is therefore satisfied.

**B. Ascertainability**

"An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. at 299. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 U.S. Dist. LEXIS 3410, at *24 (N.D. Cal. Jan. 15, 2010). "A class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. at 299 (quoting *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.1998)). "It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not 'so daunting as to make the class definition insufficient.'" *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008) (quoting *Lau v. Arrow Fin. Servs., L.L.C.*, 245 F.R.D. 620, 624 (N.D. Ill 2007)).

Ocwen contends that members of the proposed class cannot be identified without addressing the merits of each class member's claim, and that the class is not administratively ascertainable. The Court will address these arguments in turn.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

### 1. Whether the Class Definition Depends on the Merits

Ocwen argues that because there can be no liability unless a plaintiff's loan is "subject to" section 580b, membership in the class cannot be addressed without considering the merits of plaintiffs' claims. According to the class definition, a loan is "subject to" section 580b if it is "(a) a purchase money loan for the purchase of a dwelling for not more than four families, and (b) for property which was owner-occupied." These are objective criteria that do not require a determination of the merits of individual claims. The essence of the rule invoked by Ocwen holds that "the class should not be defined in terms of whether its members were treated 'properly,' 'adequately,' 'reasonably,' or 'constitutionally,' because then class membership depends on a determination of the merits as to each potential class member." 5 James W. Moore, *Moore's Federal Practice* § 23.21[3][c] (3d ed. 2010). No analogous determination is involved in figuring out whether borrowers took out purchase money loans for property they occupied. The cases Ocwen cites involve class definitions that incorporate legal standards of liability. *See Eversole v. EMC Mortg. Corp.*, No. 05-124-KSF, 2007 U.S. Dist. LEXIS 38892, at *15-*16 (E.D. Ky. May 29, 2007) (defining the class according to whether a promissory note was breached); *Bostick v. St. Jude Med., Inc.*, No. 03-2636 BV, 2004 U.S. Dist. LEXIS 29997, at *48-*49 (W.D. Tenn. Aug. 17, 2004) (defining the class to include people with "compensable" injuries). They are inapposite because here the class definition does not involve standards of liability or require a determination of the merits of individual claims.

### 2. Administrative Ascertainability

As to administrative ascertainability, Ocwen contends that it is not feasible to determine whether a loan is subject to section 580b (i.e., whether the subject loan was a purchase money mortgage and whether the attached property was owner occupied), whether the property securing the loan was foreclosed upon, or whether each borrower actually received one of the subject communications. These arguments are addressed below. One portion of the class definition that Ocwen does not challenge on ascertainability grounds is

United States District Court

For the Northern District of California

1    whether the class member's dwelling housed four or fewer families. According to Plaintiff,

2    URLAs contain a field for "No. of Units" and can therefore be used to identify members of

3    the class. The Court agrees.

4

5    **a. Purchase Money Mortgage**

6         In its opposition, Ocwen argues that determining which class members' loans were

7    purchase money loans would "require an arduous, individualized inquiry." Opp'n at 16:11-

8    12. This argument is premised upon the idea that URLAs are unreliable for determining class

9    membership. Yet Ocwen has failed to persuade the Court that URLA data are inaccurate.

10   URLA forms prompt borrowers to indicate whether a loan is a purchase money or refinance

11   loan. Ocwen argues that because Herrera's own loan application is inaccurate with respect to

12   her social security number, employment history, income, and property ownership history, all

13   other information contained in all loan applications is suspect. The Court rejects this

14   argument. Other courts have deemed the information contained within URLAs a sufficient

15   basis upon which to certify a class. *See Peoples v. Sebring Capital Corp.*, No. 01 C 5676,

16   2002 WL 406979, at *9 (N.D. Ill. Mar. 15, 2002); *Powell v. Advanta Bank*, No. 00 C 7234,

17   00 C 5942, 2001 WL 1035715, at *2 (N.D. Ill. Sept. 10, 2001); *Miller v. McCalla, Raymer,*

18   *Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D. Ill. 2001). Ocwen's

19   assertion that URLAs are unreliable fails to persuade the Court to abandon loan applications

20   as sources of accurate information. Ocwen's counsel states that "[m]any files contain

21   multiple loan applications for the same loan that contain contradictory statements of loan

22   purpose (i.e. purchase money or refinance) and occupancy status." Neil Decl. ¶ 11. Yet

23   counsel did not say how many files fall into this category. Furthermore, the issue of multiple

24   loan applications did not prevent Ocwen from responding to Herrera's discovery request with

25   a spreadsheet identifying loans "for which the loan application stated that the purpose of the

26   loan was for a purchase-money mortgage." Mot. Ex. B. It is Ocwen's own "policy to make

27   no calls and send no written communications to California mortgagors whose loans were

28   purchase-money loans." Oakley Decl, Ex. 5 at 6:21-22 (Response to Interrogatories Nos . 3-

                                                  7

7). What was ascertainable to Ocwen in the course of adhering to its own policy is ascertainable for the purposes of identifying members of the class.

Any genuine concern regarding conflicting information contained in URLAs can be resolved by using publicly available real estate databases that list mortgages and property transfer dates. As Herrera points out, for purchase money loans, the dates on the loans and the property acquisition dates would correspond. This is not the kind of multi-variable inquiry involving subjective questions that barred class certification in *Hanni*, 2010 U.S. Dist. LEXIS 3410. At most, the inquiry here would involve some review of individual records pursuant to objective criteria. Accordingly, the Court finds that whether a borrower's loan was a purchase money loan is ascertainable.

**b. Owner Occupied**

Section 580b applies to loans for "dwelling[s] occupied, entirely or in part, by the purchaser." Cal. Civ. Proc. § 580b. This requirement is also incorporated in the class definition, which includes borrowers who took out loans "for property which was owner-occupied." Ocwen argues that this language requires Herrera to show that class members occupied the property "***throughout the life of the loan***," a showing that is administratively unascertainable. Opp'n at 6:27 (emphasis in original). Ocwen provides no authority or persuasive argument in support of this interpretation of the class definition or the statute.[1]

Ocwen further argues that, at a minimum, section 580b and the class definition require some actual occupancy of the property at issue. Herrera argues that the purpose of the loan – residential or commercial – is fixed at the time the loan is entered into regardless of whether the borrower ever actually occupied the property. Either way, however, this is an ascertainable class characteristic. URLAs indicate whether a borrower intends for a property

_____

[1]If section 580b is to provide any protection to borrowers, Ocwen must be incorrect. Section 580b protects certain borrowers from deficiency judgments after foreclosure. *Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 41 (1963). The statute applies where a home loan outlives the borrower's property rights. To require borrowers to occupy property they do not own throughout the life of a junior loan would nullify the protections of section 580b, and cannot be the intent of the statute.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

to be a "primary residence." In light of this, other courts have held that URLAs are an adequate means of distinguishing between commercial and residential loans for the purpose of certifying a class. *See, e.g.*, *Miller*, 198 F.R.D. at 506; *Peoples*, 2002 WL 406979, at *9. If URLAs should be found to be inadequate, however, other means exist for ascertaining whether class members actually occupied the property. As the court noted in *Peoples*, "if there is genuine confusion over [the purpose of the loan], class members can be asked a single question to determine whether they are entitled to relief." 2002 WL 406979, at *9 (quoting *Wilkerson v. Bownam*, 200 F.R.D. 605, 610 (N.D. Ill. 2001)). Here that question would be whether the owner ever occupied the subject dwelling. This is hardly the kind of "significant inquiry" that renders a class definition insufficient. *See Deitz v. Compcast Corp.*, No. C 06-06352 WHA, 2007 U.S. Dist. LEXIS 53188, at *25-*26 (N.D. Cal. July 11, 2007). Accordingly, the Court finds that the class is ascertainable with respect to whether the subject property was owner occupied.

**c. Foreclosure**

In order for a borrower to be a member of the proposed class, Ocwen must have sent that borrower one of the three subject communications after the property securing the loan was sold in foreclosure. Ocwen argues that the timing of foreclosure relative to the sending of these communications is unascertainable. The Court disagrees.

As an initial matter, Ocwen acknowledges that it held both the first and second loan with respect to 1,660 loans associated with the putative class. Because Ocwen was directly involved in the foreclosures with respect to these loans, the dates of these foreclosures are certainly ascertainable by Ocwen.

With respect to the remaining 3,085 loans, Ocwen contends that the information in its possession is not necessarily reliable. Yet Ocwen has a "policy for obtaining knowledge about the foreclosure status of a senior lien." Oakley Decl, Ex. 5 at 5:27-28 (Response to Interrogatories Nos . 3-7).

1

2

3

4

5

6

> Once a loan becomes 115 days delinquent, Ocwen obtains information about the payment and potential foreclosure status of the senior lien. Ocwen obtains the customer's credit report and tracks the status of the senior lien (including whether the senior lien is in foreclosure) and the date of the customer's last payment on the senior lien. In the event Ocwen is unable to obtain information about the status of a senior lien in a customer's credit report, Ocwen obtains senior-lien information through CIS. In the event neither a credit report nor a CIS search revealed the status of the senior lien, Ocwen obtains a property report.

7   *Id.* at 6:1-8.

8       Ocwen makes two arguments regarding the reliability of the information it collected

9   through this process. First, it contends that the public records upon which it relied to indicate

10   whether a foreclosure had taken place are inadequate. However, Ocwen offers no facts in

11   support of this assertion and does not say how many loans identified in discovery are affected

12   by this problem. Ocwen's unsupported assertions regarding the unreliability of its own

13   information cannot defeat class certification.

14       Ocwen also challenges its foreclosure information because it is based in part upon

15   data provided by third parties. Ocwen's counsel submitted a declaration stating that "this

16   information is not always definitive or reliable, as it depends upon foreclosure information

17   being communicated to Ocwen accurately by third parties." Neil Decl. ¶ 12. This objection is

18   akin to the one made by defendants in *Spencer v. Hartford Fin. Serv. Grp., Inc.*, 256 F.R.D.

19   284, 307 (D. Conn. 2009). There plaintiffs sought to exclude from the proposed class persons

20   who were represented by a plaintiffs' broker in the course of settling claims to be paid by

21   defendant insurance companies. The defendant insurance companies kept databases designed

22   to keep track of who had and had not retained plaintiffs' brokers, yet defendants argued that a

23   claimant could have been working with a broker without the insurance companies'

24   knowledge. They argued that the arduous process of finding errors in the database rendered

25   the class administratively unascertainable. Yet the insurance companies had offered no

26   evidence of any errors, and the court in *Spencer* found defendants' arguments to be

27   speculative and no bar to class certification. *Id.* Ocwen's arguments as to the reliability of its

28   own foreclosure information are also speculative. The record shows Ocwen's diligence in

United States District Court

For the Northern District of California

1   obtaining accurate foreclosure information, going so far as to obtain property reports where

2   other information was insufficient. Ocwen relied upon this information in the course of

3   adhering to its policy of "ceas[ing] all outgoing communications with the mortgagor" after

4   the property securing a loan has been foreclosed. Oakley Decl. Ex. 5 at 6:16-20 (Response to

5   Interrogatories Nos. 3-7). Ocwen has offered the Court no reason to question the foreclosure

6   information it collected. While it raises factual scenarios under which some of its information

7   might not be accurate, these factual scenarios are not supported by evidence in the record.

8   They are speculative and do not defeat class certification.

9        Should Ocwen raise a genuine question regarding whether its own foreclosure

10  information is accurate as to certain borrowers, public online databases can easily determine

11  foreclosure dates. *See* Kennedy Decl. Ex. B (Docket #95). Class members can be ascertained

12  from these databases by reference to objective criteria. These limited inquiries are not

13  comparable to the "detailed title searches . . . across more than 300 miles of land" that

14  contributed to the denial of class certification in *Kirkman v. North Carolina Railroad*

15  *Company*, 220 F.R.D. 49, 53 (M.D.N.C. 2004). Accordingly, whether and when a class

16  member's property was foreclosed is an ascertainable class characteristic.

17

18  **d. Receipt of Communications**

19       Ocwen argues that class claims depend upon proof of whether a plaintiff actually

20  received the collection letters at issue, and that this proof would render the class

21  unascertainable. Yet actual receipt of a notice alleged to violate the FDCPA is irrelevant to

22  liability under the statute. In *Irwin v. Mascott*, the court explained that

23            [a] debt collector violates the FDCPA by sending a notice
              containing unlawful provisions. Whether the notice is received is
24            irrelevant to the issue of liability. Even if receipt of the collection
              letter were required, there is an evidentiary presumption that a
25            properly posted letter has been received by the addressee.

26  96 F. Supp. 2d 968, 976 (N.D. Cal. 1999). *Contra Sadler*, 2008 U.S. Dist. LEXIS 51198, at

27  *19-*20 (identifying the question of whether plaintiffs actually received notices alleged to

28  violate the FDCPA as "critical information" that is not ascertainable on a class-wide basis);

11

*see Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 n.2 (2d Cir. 1992) (noting in dicta that at least one court has indicated that the FDCPA's statute of limitations begins running at the time of receipt, not the time of mailing). In *Newman v. CheckRite California, Inc.*, a case involving the same FDCPA sections at issue in this case, the court granted class certification on the question of liability despite the fact not all class representatives had actually received the allegedly illegal notices. No. Civ. S-93-1557 LKK, 1996 WL 1118092, at *5 (E.D. Cal. Aug. 2, 1996). As the court noted, "whether the notice is actually received by plaintiffs is irrelevant on the issue of whether the FDCPA was violated." *Id.* This conclusion is supported by the Ninth Circuit's interpretation of a different provision of the FDCPA. In *Mahon v. Credit Bureau of Placer County, Inc.*, the Ninth Circuit held that 15 U.S.C. § 1692g, an FDCPA provision that requires debt collectors to "send" a written notice to consumers, does not require that the consumer receive the notice in order for the debt collector to have violated the FDCPA. 171 F.3d 1198, 1202 (9th Cir. 1999). The court observed that "[n]owhere does the statute require receipt of the Notice." *Id.* Ocwen argues that the instant case is distinguishable because it involves 15 U.S.C. § 1692e and § 1692f, which outlaw the "use" of deceptive or unfair means of debt collection. Yet like § 1692g, these statutory sections contain no requirement that the allegedly unlawful communications be received. Thus the "simple act of mailing letters with allegedly misleading information constitutes a 'use' of such prohibited language," *Sadler v. Midland Credit Mgmt., Inc.*, No. 06 C 5045, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009), and actual receipt is irrelevant to liability under the FDCPA. Whether Ocwen sent letters to class members is ascertainable and Herrera has properly identified a class.

## C. Commonality

To demonstrate commonality under Rule 23(a)(2), class members' circumstances must "share a common issue of law or fact," *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990), and be "sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Id.* It is not necessary that members of the

proposed class "share every fact in common or completely identical legal issues." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Rather, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The requirement of commonality "has been construed permissively." *Id.*

According to Herrera, class members share common questions of fact and law because Ocwen sent them at least one of the three communications it sent to Herrera. Herrera contends that each of these letters constitute a demand for payment of a deficiency, and that the common issue is whether such a demand violates the FDCPA.

Ocwen argues that commonality is defeated by "inherently individualized issues" concerning whether class members are subject to section 580b and whether their property was foreclosed. As explained above, is not clear that any individualized inquiry will be required in this case. Even if some individual inquiry is required, it will consist of limited, straightforward factual determinations that would not preclude a finding of commonality. Class members' claims share a factual and legal basis – Ocwen sent each member at least one of three communications that might have violated the FDCPA.

With regard to whether any of the class members received the allegedly illegal letters, the above analysis shows that actual receipt of Ocwen's communications is not necessary to state a claim under the FDCPA. Ocwen argues that the combination of letters each plaintiff received, the timing of those letters, and their impact in light of whether class members had filed for bankruptcy preclude a finding of commonality. But if "it is not required that a plaintiff read the notice and be misled by it for there to be a violation of the FDCPA," *Newman*, 1996 WL 1118092, at *5, then the circumstances under which a plaintiff read (or did not read) the letter are also irrelevant. Claims under the federal FDCPA are assessed from the perspective of the "least sophisticated debtor." *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1989). "If the least sophisticated debtor would 'likely be misled' by a communication from a debt collector, the debt collector has violated the Act." *Guerrero v.*

13

*RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (quoting *Swanson*, 869 F.2d at 1225). The standard is an objective one, which "'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous.'" *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (internal citation omitted). This objective standard is inconsistent with an analysis that focuses upon the timing of notices and the circumstances under which they are received. This Court has already rejected a similar argument made by Ocwen in its motion to dismiss. Ocwen contended that the Notice of Default could not have misled Herrera with respect to Ocwen's right to foreclose because Herrera had already lost her home in foreclosure. Order Denying Defendants' Motion to Dismiss 7-8, Dec. 22, 2009, ECF No. 33. This Court dismissed that argument, stating that "[w]hether the notice was deceiving or misleading *from Herrera's perspective* is irrelevant, as the least sophisticated debtor standard is objective." *Id.* at 8 (emphasis in original). This same standard renders irrelevant the timing of Ocwen's communications with class members, and the circumstances under which class members received them.

Finally, Ocwen points out that it did not send all class members all three letters, nor did it send all class members one of the same letters. In support of its argument that this defeats commonality, Ocwen relies upon *Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421 (E.D. La. 1997). In *Byes*, five communications allegedly violated the FDCPA, but none of the five communications was sent to all class members. 173 F.R.D. 421 (E.D. La. 1997). In denying class certification, the court based its holding on a typicality analysis. *Id.* at 424-25. As to commonality, it found that "in the broadest sense, there is the common issue of whether [the defendant] violated the FDCPA by sending the letters." *Id.* at 424. This Court agrees and finds a common question in whether the communications sent to class members – regardless of which letters they got and the timing of those letters – violated the FDCPA.

14

**D. Typicality**

Under the "permissive standards" of Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks and citation omitted). However, "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Herrera argues that she satisfies the typicality requirement. Her loan, like class members' loans, is subject to section 580b as a purchase money loan for owner-occupied property. And each class member received at least one of the three letters Ocwen sent to Herrera.

Ocwen argues that Herrera's claim is not typical of the claims of putative class members for several reasons. First, it notes that while Herrera's property was already foreclosed when she got the letters, some of the properties securing class members' loans may never have been sold in foreclosure. Second, it contends that Herrera's experience with respect to the communications she received from Ocwen is not typical of the class. Third, Ocwen argues that Herrera will be preoccupied with unique defenses. Fourth, it contends that Herrera's damages claims are not typical of the damages claims of the class. These arguments will be addressed in turn below.

**1. Foreclosure**

Ocwen argues that Herrera's claim is not typical of the class because her property was foreclosed while some properties held by members of the class might not have been foreclosed. As discussed above, the class definition excludes from the class borrowers whose

15

real property was not foreclosed. Thus Ocwen has not identified a difference between Herrera's claim and the claims of class members.

### 2. Communications

Ocwen contends that only a small subset of the putative class received the same three communications that Herrera received at the same time she received them. It also argues that some of the class members may not have actually received any of the letters Herrera received, destroying typicality. As the Court explained in detail above, (1) actual receipt of a communication is irrelevant to FDCPA liability and (2) the circumstances surrounding the receipt of a communication are irrelevant under the FDCPA's least sophisticated borrower standard. The question here is whether Ocwen's collection notices violated the FDCPA. While Ocwen did not send all class members the same combination of communications, any communication Ocwen did send to any class member was also sent to Herrera. Thus none of the conduct challenged here is unique to Herrera. She and class members share a similar injury caused by the same course of conduct. Herrera's claim is therefore typical of the claims of the class.

### 3. Unique Defenses

Ocwen argues that typicality is destroyed because it may have a bona fide error defense as to borrowers who were unintentionally sent a Notice of Default. Typicality is not present where the named plaintiff is subject to unique defenses that are central to the litigation. *See Hanon*, 976 F.2d at 508. However, Ocwen has not established that it has a bona fide error defense with respect to Herrera, see Neil Decl. ¶ 17, much less that this defense will be central to this case. Therefore Herrera's claims are typical of the class with respect to potential defenses.

**4. Damages**

Ocwen argues that because Herrera's damages claims are atypical, her motion for class certification should be denied. First, Ocwen contends that Herrera's claim for emotional distress damages destroys typicality. As noted above, Herrera has abandoned her class claim for emotional distress damages. Second, Ocwen points out that Herrera herself does not seek actual damages while some class members might seek actual damages. It argues that this difference destroys typicality. Yet courts have found typicality where a named plaintiff not entitled to actual damages seeks to represent a class of people who may be entitled to actual damages. *Irwin*, 95 F. Supp. 2d at 977 ("The fact that [class representatives] may also have a right to statutory damages, injunctive relief and declaratory relief, but may not have a right to actual damages, does not render their claims atypical."); *Wyatt v. Creditcare, Inc.*, No. 04-03681 JF, 2005 WL 2780684, at *4 (N.D. Cal. Oct. 25, 2005) ("Although it appears that [the class representative] did not make an interest payment to Defendants and therefore is not entitled to actual damages, the fact that other prospective class members may be entitled to actual damages does not render Wyatt's legal claims atypical of those of the class."). The fact that Herrera cannot pursue actual damages does not render her legal claims atypical of the claims of class members who may be entitled to actual damages. Accordingly, the Court finds that Herrera has satisfied the typicality requirement.

**E. Adequacy**

The legal adequacy of a class representative is determined by the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Courts have looked to such factors as honesty, conscientiousness and other affirmative personal qualities to determine whether a named individual is a proper class representative." *Armour v. City of Anniston*, 89 F.R.D. 331, 332 (N.D. Al. 1980). Yet "unsavory character or credibility problems will not

justify a finding of inadequacy unless related to the issues in the litigation." *Byes*, 173 F.R.D. at 427.

Ocwen does not argue that Herrera or her counsel have a conflict of interest with putative class members, nor does it question whether she will prosecute this class action vigorously on behalf of absent class members. Ocwen's adequacy arguments focus on Herrera's credibility. Ocwen claims that Herrera perjured herself in her loan application and in this litigation.

With regard to Herrera's loan application, the Court cannot conclude on the record before it that Herrera lacks the integrity necessary to be an adequate class representative. In her declaration and deposition, Herrera states that she provided a loan broker with correct information concerning her loan. The loan broker filled out the loan documents and told Herrera where to sign. Herrera's conversations with the loan broker were in Spanish, but the loan documents she was given to sign were in English. Under these circumstances, the Court cannot find that Herrera lacks credibility such that she should be prevented from representing a class of plaintiffs.

Ocwen also argues that Herrera perjured herself in discovery. Herrera signed a declaration indicating she had read her discovery responses and that they were accurate. In fact, these responses were read to her in Spanish. Ocwen has raises no question about the integrity of Herrera's answers, merely the means by which she verified them. This can hardly be said to undermine Herrera's integrity or credibility with respect to this litigation.

Ocwen's concerns about Herrera's integrity are insufficient to bar class certification. The Court is aware of no disqualifying conflicts of interest between Herrera and other class members, and it is satisfied that she and her counsel will prosecute the case vigorously. The Court therefore concludes that Herrera is an adequate class representative, and therefore all four requirements of Rule 23(a) have been met.

## II. Rule 23(b)(3)

Since Herrera has satisfied the four prongs of Rule 23(a), the Court now turns to the two requirements of Rule 23(b)(3): whether common questions predominate, and whether adjudicating the case as a class action is superior to other methods. Both requirements were added to the Federal Rules "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment) (ellipsis in *Amchem Prods.*).

### A. Predominance

Predominance, which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," is a "far more demanding" standard than Rule 23(a)'s commonality requirement. *Amchem Prods.*, 521 U.S. at 623-24. Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling a dispute on a representative rather than on an individual basis." *In re Infineon Tech. AG Sec. Litig.*, 266 F.R.D. 386, 395 (N.D. Cal. 2009).

Ocwen argues that individualized questions predominate in light of issues relating to (1) whether a person is a member of the class; (2) damages; and (3) Ocwen's defenses. While some individualized inquiry might be required to address these issues, they do not predominate over the central and common issue in this case – whether the communications Ocwen sent to putative class members violate the FDCPA.

United States District Court

For the Northern District of California

19

**1. Class Membership**

As discussed above, it may be necessary to conduct some individualized inquiry to determine the limits of the class. Specifically, it may be necessary to: (1) cross-reference some class members' loans with publicly available real estate databases to determine whether the loan was a purchase money loan and whether the property was foreclosed; and (2) submit a questionnaire to class members in order to determine whether they actually occupied the subject property. The Court need not conduct individualized inquiry with respect to whether Ocwen's communications were actually received.

These inquiries do not predominate – the central question of this litigation is whether the communications sent by Ocwen violate the FDCPA. As explained in detail above, Ocwen has offered the Court no reason to question the accuracy of most, if not all, class members' loan applications with regard to whether the loans were purchase money loans. Similarly, Ocwen has only speculated about potential problems with the data contained in its foreclosure database. Even if some individualized inquiry were necessary to discern facts regarding some class members' loans, this inquiry, along with a single yes-or-no question to determine whether class members ever occupied the property they bought, does not predominate over the central question of whether Ocwen's communications violate the FDCPA.

**2. Damages**

Ocwen argues that individualized issues regarding damages predominate. While emotional distress damages could involve intensive individualized inquiry, Herrera has abandoned her class claim for emotional distress damages. Ocwen also points out that some class members may seek actual damages, the assessment of which could involve limited individualized inquiry. However, individual damages issues typically do not bar class certification where common questions predominate over individual questions as to liability. 5 James W. Moore, *Moore's Federal Practice* § 23.45[2][a] (3d ed. 2010); *see also Hazelwood v. Bruck Law Offices SC*, 244 F.R.D. 523, 525 (E.D. Wis. 2007) (holding that common

questions as to whether a collection letter violated the FDCPA predominated over individual questions regarding class members' actual damages). Here the predominant issue is liability under the FDCPA, and this issue is common to the class.

### 3. Defenses

Ocwen contends that because it may raise various defenses with respect to some class members, individualized issues predominate over common ones. Specifically, it argues that three potential defenses – arbitration agreements, release of claims, and bona fide error – render class certification inappropriate.

The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification. Other courts presented with this issue have held that "class certification should not be denied merely because some class members may be subject to the defense that their claims are barred by valid documents releasing the defendant from liability." *Coleman v. GMAC*, 220 F.R.D. 64, 91 (N.D. Tenn. 2004); *see also Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The Ninth Circuit addressed this issue as it relates to a statute of limitations defense and held that "the presence of individualized issues of compliance with the statute of limitations here does not defeat the predominance of the common questions." *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976). The court reached this holding despite the potential need to inquire into when class members knew or should have known about an incident of alleged deceit. *Id.* As in *Cameron*, here potential individual questions do not negate the predominance of the common issue regarding Ocwen's liability under the FDCPA.

The existence of a potential bona fide error defense also does not bar class certification in this case. The bona fide error defense requires a defendant to prove "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In a declaration, Ocwen's counsel states that Ocwen is not

United States District Court

For the Northern District of California

21

United States District Court

For the Northern District of California

1    aware of how many borrowers may have been affected by an error in its servicing system.

2    Should Ocwen at some point determine which class members were affected by this error and

3    might be subject to the defense, a subclass can be created at that time. *See* Fed. R. Civ. P.

4    23(c)(5). For now, the possibility that the defense will be raised does not disturb the

5    predominant, common question of liability under the FDCPA.

6

7    **B. Superiority**

8          The final requirement for class certification is "that a class action [be] superior to

9    other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

10   P. 23(b)(3). The superiority inquiry "requires determination of whether the objectives of the

11   particular class action procedure will be achieved in the particular case," which "necessarily

12   involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*,

13   150 F.3d at 1023. Among the pertinent factors in assessing superiority are "the class

14   members' interests in individually controlling the prosecution or defense of separate actions"

15   and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). The

16   superiority inquiry focuses "on the efficiency and economy elements of the class action so

17   that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably

18   on a representative basis." *Zinser*, 253 F.3d at 1190.

19         Ocwen contends that the class action format would be unmanageable because of

20   individualized inquiries regarding class membership, damages, and defenses. As explained

21   above, these inquiries, if necessary, would be minimal. They would hardly be unmanageable

22   in the context of a class action. Ocwen further argues that individual class members are better

23   positioned than Herrera to litigate their own claims, and that individual claims are feasible

24   because the FDCPA provides for attorneys fees. However, "[c]ase law affirms that class

25   actions are a more efficient and consistent means of trying the legality of collection letters."

26   *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005). The fact is that

27                        plaintiffs may not know their rights are being violated, may not
                          have a monetary incentive to individually litigate their rights, and
28                        may be unable to hire competent counsel to protect their rights. A

> class action is judicially efficient in lieu of clogging the courts
> with thousands of individual suits. The FDCPA itself recognizes
> the propriety of class actions by providing special damages
> sections for class action cases.

*Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998). For these reasons, a class action is a superior method of adjudicating the claims of the class.

## III. Rule 23(g)

Having determined that Herrera has met Rule 23's requirements for class certification, the Court must also appoint class counsel. *See* Fed. R. Civ. P. 23(g) ("Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."). The record reflects that counsel have experience in handling complex litigation and have done extensive work prosecuting the claims in this action. The record also shows that they have a command of the applicable law and are willing to commit resources to representing members' claims. Accordingly, the Court appoints the law firms of Brancart & Brancart, Housing and Economic Rights Advocates, and Law Office of William E. Kennedy as Class Counsel.

## CONCLUSION

For the reasons set forth above, Herrera's motion for class certification is GRANTED. Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3). A class is hereby certified to include "all individuals" who "held a mortgage loan secured by property in California," where (1) "[t]he mortgage loan was subject to California Code of Civil Procedure § 580b in that the loan was (a) a purchase money loan for the purchase of a dwelling for not more than four families, and (b) for property which was owner-occupied"; (2) "[t]he real property which secured the loan was sold in foreclosure"; and (3) "Defendant Ocwen sent either a Notice of Default, an Account Statement, or a Notice of Assignment . . . after June 25, 2008." Plaintiff Mercedes Herrera is appointed Class Representative. The law

firms of Brancart & Brancart, Housing and Economic Rights Advocates, and Law Office of William E. Kennedy are appointed Class Counsel.

**IT IS SO ORDERED.**

Dated: 6/1/11

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

**United States District Court**

For the Northern District of California